IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACKELINE MARTINEZ-SANTIAGO, on behalf of herself and other persons similarly situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>PUBLIC STORAGE,<br><br>                    Defendant. | HONORABLE JEROME B. SIMANDLE<br><br><br>Civil Action<br>No. 14-302 (JBS/AMD)<br><br><br>**OPINION** |

APPEARANCES:

Andrew P. Bell, Esq.
LOCKS LAW FIRM LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
  - and -
James A. Barry, Esq.
Michael A. Galpern, Esq.
LOCKS LAW FIRM, LLC
801 N. Kings Highway
Cherry Hill, NJ 08034
  - and -
Charles N. Riley, Esq.
RILEY & SHAINE
900 N. Kings Highway
Cherry Hill, NJ 08034
      Attorneys for Plaintiff

Joshua A. Zielinski, Esq.
McELROY DEUTSCH MULVANEY & CARPENTER LLP
1300 Mount Kemble Avenue
Morristown NJ 07962
  - and -
Jamie D. Taylor, Esq.
Robert P. Donovan, Esq.
McELROY DEUTSCH MULVANEY & CARPENTER LLP
100 Mulberry Street
Three Gateway Center
Newark NJ 07102
      Attorneys for Defendant

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

Plaintiff Jackeline Martinez-Santiago brings this putative class action against Defendant Public Storage for violations of the New Jersey Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, et seq., and the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, et seq. She claims that the standard form contract used by Defendant for the lease of personal storage space is unconscionable and unenforceable because of its exculpatory and indemnification provisions, as well as a provision that limits the consumer's opportunity to challenge such provisions to one year after signing the lease. Before the Court is Defendant's motion to dismiss the First Amended Complaint. [Docket Item 13.]

As explained below, the Court finds that the one-year limit to bring claims arising from the lease, as written and as interpreted by Defendant, would be unreasonable, and that under a reasonable interpretation the Court finds that this action is timely. Substantively, Plaintiff states a claim under the TCCWNA and the CFA, and Defendant's motion to dismiss will accordingly be denied in large part and granted in part.

## II.  Background

On February 7, 2012, Plaintiff Jackeline Martinez-Santiago entered into a lease agreement with Defendant Public Storage for

2

storage space at Defendant's Sicklerville, N.J., facility for $63 per month. (Am. Compl. [Docket Item 10] ¶ 19.) Plaintiff simultaneously elected to purchase $2,000 of insurance coverage for her property, for an additional premium of $9 per month. (Am. Compl. Ex. B [Docket Item 10-2].)

The lease agreement contains three provisions challenged in this litigation. The first ("Paragraph 4") limits the time in which Plaintiff may bring a claim arising out of the lease agreement to one year after "the date of the act, omission, inaction or other event that gave rise to such a claim . . . ." (Am. Compl. Ex. A ("Lease Agreement") [Docket Item 10-1] at 2.) This provision also purports to extend the one-year limit to any defenses Plaintiff may seek to raise in any suit against her arising out of the lease agreement. (Id.) The second provision ("Paragraph 7") caps Defendant's liability at $5,000[1] and disclaims all liability for property damage or injury to Plaintiff or other persons from any cause, including Defendant's own negligence, however the liability limitation does not extend to losses "directly caused by Owner's [Defendant's] fraud, willful injury or willful violation of law." (Id.) The third contested provision, also in Paragraph 7, requires Plaintiff to indemnify Defendant "from any loss incurred by Owner [Defendant]

---

[1] Paragraph 5 of the agreement dictates that Plaintiff will not store more than $5,000 worth of personal property in the storage unit at any time. (Id.)

and Owner's Agents in any way arising out of Occupant's [Plaintiff's] use of the Premises or the Property, including, but not limited to, claims of injury or loss by Occupant's visitors or invitees." (Id.)

These provisions, in full, read as follows:

4. APPLICABLE LAW; JURISDICTION; VENUE; TIME TO BRING CLAIMS. This Lease/Rental Agreement shall be governed and construed in accordance with the laws of the state in which the Premises are located. If any provision of this Lease/Rental Agreement shall be invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement. The parties agree that in view of the limitations of value of the stored goods as provided in paragraph 5 below and the limitations as to Owner's liability as provided in paragraph 7 below, the value of any claim hereunder is limited to $5000 and, accordingly, any action for adjudication of a claim shall be heard in a court of limited jurisdiction such as a small claims court. Any claim, demand, or right of Occupant, and any defense to a suit against Occupant, that arises out of this Lease/Rental Agreement, or the storage of property hereunder (including, without limitation, claims for loss or damage to stored property) shall be barred unless Occupant commences an action (or, in the case of a defense, interposes such defense in a legal proceeding) within twelve (12) months after the date of the act, omission, inaction or other event that gave rise to such claim, demand, right or defense. By INITIALING HERE _____, Occupant acknowledges that he understands and agrees to the provisions of this paragraph.

. . . 7. LIMITATION OF OWNER'S LIABILITY; INDEMNITY. Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion,

4

unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. Occupant shall indemnify and hold Owner and Owner's Agents harmless from any loss incurred by Owner and Owner's Agents in any way arising out of Occupant's use of the Premises or the Property including, but not limited to, claims of injury or loss by Occupant's visitors or invitees. Occupant agrees that Owner's and Owner's Agents' total responsibility for any Loss from any cause whatsoever will not exceed a total of $5,000. By INITIALING HERE _____, Occupant acknowledges that he understands and agrees to the provisions of this paragraph.

(Id.)

Plaintiff listed Mr. Orlando Colon as an "Alternate Contact Name" on her lease agreement. (Id. at 1.) On February 12, 2012, Colon slipped on a patch of ice on a walkway directly in front of Plaintiff's storage unit. (Am. Compl. ¶ 23; Lease Agreement at 1 (listing Plaintiff's unit as No. B034); Ex. C [Docket Item 10-3] ¶ 8 (asserting that Colon fell on the walkway in front of unit No. B034).) Colon sued Public Storage for his injuries in New Jersey Superior Court, alleging negligence. (Am. Compl. ¶ 24.) On October 1, 2012, Public Storage filed an amended answer and third-party complaint naming Martinez-Santiago as a third-party defendant in Colon's lawsuit. (Id. ¶ 26.) Public Storage sought indemnification from Martinez-Santiago because Public Storage's potential liability arose from Colon's use of the premises, which brought the matter within the scope of the indemnification provision in Martinez-Santiago's lease agreement. (Id. ¶ 27.) Martinez-Santiago did not respond to the

5

lawsuit, and no attorney entered an appearance on her behalf.

Public Storage obtained a default judgment against her on

February 8, 2013. [Docket Item 10-7 (Am. Compl. Ex. G) at 40-

41.] On September 24, 2013, Martinez-Santiago, with the aid of

counsel, filed a motion to vacate default judgment and sought

permission to file a third-party answer and class-action

counterclaim out of time, along with a proposed third-party

answer and class-action counterclaim. [Id. at 3.] In the

supporting brief, Martinez-Santiago argued:

> [T]here is a meritorious defense in this case, as
> alleged in the proposed Third Party Answer and Class-
> Action Counterclaim. (See Proposed Answer and Class-
> Action Counterclaim, attached as Exhibit E.) As
> alleged in the attached pleading, the contractual
> language relied upon by the Defendant as forming the
> basis for its Third-Party Complaint, and the practices
> utilized in selling consumer contracts containing said
> clauses violates the New Jersey Truth in Consumer
> Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A.
> § 56:12-14, et seq. and is therefore unenforceable.
> Specifically, the clause violates the TCCWNA in that
> it (1) impermissibly shortens the Statute of
> Limitations for actions under the N.J. Consumer Fraud
> Act; (2) fails to disclose to consumers that specific
> portions of the contract are not enforceable under New
> Jersey law; and (3) wrongfully disclaims liability for
> Third Party Plaintiff's own negligence, and requiring
> consumers to hold harmless and indemnify Third Party
> Plaintiff for losses resulting from Third Party
> Plaintiff's own negligence.

[Id. at 8-9.] The class-action counterclaim [id. at 54-64], sets

forth the same causes of action in the Amended Complaint here.

Some passages of the Amended Complaint are identical to the

proposed class-action counterclaim submitted to the state court.

Public Storage settled Colon's suit and, before the Superior Court could rule on Martinez-Santiago's motion to vacate the default judgment against her, on September 27, 2013, Public Storage voluntarily dismissed the third-party complaint against Martinez-Santiago. (Am. Compl. ¶¶ 28, 30, 32-33.) The Amended Complaint does not state whether Martinez-Santiago ever indemnified Public Storage for any loss.

On December 3, 2013, Plaintiff filed this action in the Superior Court of New Jersey, Camden County, and Defendants removed the action to this Court.[2] [Docket Items 1 & 1-2.] Count One of the Amended Complaint alleges a violation of the TCCWNA. (Am. Compl. ¶¶ 57-61.) Count Two alleges a violation of the CFA. (Id. ¶¶ 62-70.) Count Three requests declaratory and injunctive relief, specifically an order: (1) declaring that Defendant "is estopped from requiring Plaintiff and class members to bring

---

[2] Defendant asserts that this Court has jurisdiction over this putative class action under 28 U.S.C. § 1332(d)(2) because minimal diversity exists among the hundred-plus class members and the amount in controversy exceeds $5 million. (Notice of Removal [Docket Item 1] ¶ 12.) Neither party pleads Plaintiff's state of citizenship, but Plaintiff lists her address on the lease agreement as being in Sewell, N.J. (Lease Agreement at 1.) In a supplemental letter after oral argument, Plaintiff represented to the Court that she has lived in New Jersey since 2008, after moving from Pennsylvania, to support the existence of jurisdiction here. [Docket Item 21 at 1.] Defendant is a "real estate investment trust organized under the laws of the state of Maryland" with its principal place of business in Glendale, California. (Notice of Removal ¶ 14.) The Court construes the Amended Complaint as asserting that Plaintiff is a citizen of New Jersey, and that putative class members who signed contracts in New Jersey are also citizens of New Jersey. Therefore, jurisdiction is proper under § 1332(d).

claims or defenses within twelve mo[n]ths of an event giving rise to such claim or defense," (2) declaring that Defendant "is estopped from requiring Plaintiff and class members to indemnify and hold Defendant harmless . . . for losses resulting from the negligence of Defendant and/or its agents," (3) prohibiting Defendant from offering or entering into contracts with illegal provisions, (4) requiring Defendant to provide notice to all class members that certain clauses in the lease agreements are "void and unenforceable" and that class members may sue Defendant on or before the statutory limitations period, and (5) requiring Defendant to notify all class members who may have indemnified Defendant that such indemnification is illegal. (Id. ¶ 72.) Plaintiff defines the putative class as:

> All persons, since September 7, 2007 (or such date as discovery may disclose), to whom form contracts, the preprinted portions of which were identical or substantially similar to the Agreement (Exhibit A), have been given, displayed, offered, signed and/or entered into, in New Jersey presented by or on behalf of Defendant or its agents.

(Id. ¶ 45.)

Defendant now moves to dismiss all claims. No issues of class certification are addressed in this motion.

### III. Standard of review

Under Fed. R. Civ. P. 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under

8

any reasonable reading of the complaint, the plaintiff may be entitled to relief." <u>Fleisher v. Standard Ins. Co.</u>, 679 F.3d 116, 120 (3d Cir. 2012).

## IV. Discussion

Defendant seeks dismissal of this action on the grounds that (1) the provisions of the lease agreement are lawful and enforceable and (2) Plaintiff has failed to allege that Defendant engaged in unlawful conduct under the CFA and, even if she did, she fails to allege a causal link between the unlawful conduct and her alleged injury. Defendant also argues that Plaintiff's claims are time-barred under the lease agreement, because they were filed more than one year after she entered into the agreement.

### A. Timeliness of the action

The Court begins with the contention that Plaintiff's claims are untimely. Defendant contends that the terms of the lease agreement require Plaintiff to bring all claims arising from the contract within one year of "the act, omission, inaction or other event that gave rise to such a claim . . . ." (Def. Mot. at 24, citing Docket Item 10-1 ¶ 4.) Defendant argues that because Plaintiff's claims arise from the language of the contract itself, the claims arose "when she signed and initialed the Contract on February 7, 2012." (<u>Id.</u>) Because Plaintiff did not file this lawsuit until December 3, 2013, or 22 months after

the she signed the agreement, Defendant concludes that the action is time-barred. (Id.)

Defendant acknowledges that N.J.S.A. 2A:14-1 establishes a default six-year statute of limitations for these TCCWNA and CFA claims, but argues that nothing in those statutes prohibits parties from contracting for a shorter limitations period, provided that the shorter period is reasonable. (Id. at 19-20.) Indeed, New Jersey courts, including courts in this District, have upheld reasonable contractual limitations provisions of one year or less when the applicable statutes of limitations exceeded those time frames. See Eagle Fire Protection Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 354 (1996) (upholding a one-year limitation provision in a surety bond when the claim otherwise would have been subject to a six-year statute of limitations); A.J. Tenwood Assocs. v. Orange Sr. Citizens Hous. Co., 200 N.J. Super. 515, 523-25 (App. Div. 1985) (stating that the six-year limitations period in N.J.S.A. 2A:14-1 "may be waived by express agreement of the parties," and upholding a one-year limitation provision); Winograd v. Carnival Corp., No. L-3690-08, 2011 WL 9318, at *2-*3 (N.J. Super. Ct. App. Div. May 28, 2010) (upholding a one-year limitations provision in a ticket contract and affirming the grant of summary judgment in favor of the defendant); Mirra v. Holland Am. Line, 331 N.J. Super. 86, 90, 92 (App. Div. 2000) (stating

10

that N.J.S.A. 2A:14-1 "does not prohibit parties to a contract from stipulating to a shorter time period" and upholding a limitations provision of 180 days); see also New Skies Satellites, B.V. v. Home2US Commc'ns, Inc., --- F. Supp. 2d ---, No. 13-200, 2014 WL 1292218, at *4 (D.N.J. Mar. 28, 2014) ("It is well settled that parties may contractually limit the time for bringing claims, despite a statute of limitations to the contrary") (citing Eagle Fire, A.J. Tenwood, and Order of United Comm. Travelers of Am. v. Wolfe, 331 U.S. 586, 608 (1947)).

Contract provisions limiting the period of time in which parties may bring suit are enforceable if reasonable. Eagle Fire, 145 N.J. at 354; Mirra, 331 N.J. Super. at 91. The New Jersey Supreme Court, in discussing reasonableness of limitations, has favorably quoted language from the Michigan Supreme Court explaining the inquiry:

> The boundaries of what is reasonable under the general rule require that the claimant have sufficient opportunity to investigate and file an action, that the time not be so short as to work a practical abrogation of the right of action, and that the action not be barred before the loss or damage can be ascertained.

Eagle Fire, 145 N.J. at 359 (quoting Camelot Excavating Co., Inc. v. St. Paul Fire & Marine Ins. Co., 301 N.W.2d 275, 277 (Mich. 1981)).

Here, Defendant's own argument in favor of barring these claims actually counsels in favor of finding the provision

unreasonable, not because the period of time is too short, per se, but because meritorious actions very easily could be barred by the limitation even before losses are incurred or damage sustained.

As Defendant would have it, a consumer who stored property at a Public Storage location might have to bring suit before he or she had any reason to invalidate the lease agreement. A consumer would have to decide to consult a lawyer upon signing the contract and proactively challenge the agreement on the off chance that, at some point 12 months or more into the future, he or she might be sued by, or need to sue, Public Storage and would need to attack the enforceability of the lease agreement. In reality, only consumers who were injured by Public Storage or sued by Public Storage within a year of signing a lease, as Plaintiff was -- or clairvoyants -- would choose to challenge to the agreement. Those who remained satisfied Public Storage customers for one year would have little or no incentive to file a lawsuit, and if they later found themselves sued by Public Storage, and wanted to argue in defense that provisions of the lease were unenforceable, they would be out of luck.

It is plainly unreasonable to start the limitations clock before the ink dries on the lease agreement and to force consumers to retain lawyers to review the fine print of a standard consumer contract as a matter of course before the

consumer has suffered any ascertainable loss. Under the
interpretation advanced by Defendant, a consumer potentially
would have to challenge the indemnification provision, for
example, before Public Storage ever sought indemnification from
her. The New Jersey Supreme Court would not endorse such an
interpretation or such a provision. See Eagle Fire, 145 N.J. at
359 ("a contractual limitation period would be unreasonable and,
therefore, unenforceable if the 'provision [had] been
constructed in such a way that plaintiff could not have
reasonably discovered its loss prior to the point at which the
limitation period ran'") (quoting Camelot, 301 N.W.2d at 282).

Therefore, the Court holds that the limitations provision
does not render this action untimely; Defendant's interpretation
would be unreasonable because the time to bring suit challenging
clauses for the tenant's liability and indemnification for
Public Service's negligence could expire before a tangible loss
is suffered. Because TCCWNA and CFA claims are governed by a
six-year statute of limitations, see N.J.S.A. 2A:14-1,
Plaintiff's claims are timely.

Even if the one-year limitations provision were preserved
by a more reasonable interpretation, Plaintiff's claims still
would be timely. Paragraph 4 of the lease agreement provides
that "[a]ny claim . . . shall be barred unless Occupant
commences an action . . . within twelve (12) months after the

13

date of the . . . event that gave rise to such claim . . . ." (Lease Agreement ¶ 4) (emphasis added). Here, Plaintiff raised these claims in response to the indemnification action by Public Storage in state court within one year of being named a third-party defendant. Although Defendant urges the Court to start the limitations clock from the signing of the lease agreement, contracts in New Jersey are to be given "a reasonable interpretation." Borough of W. Caldwell v. Borough of Caldwell, 26 N.J. 9, 25 (1958). For the reasons explained above, Defendant's interpretation of the relevant contractual language -- "after the date of the act, omission, inaction or other event that gave rise to such claim" -- to mean that Plaintiff's claim accrued the moment she signed her lease, is unreasonable. The only way to reasonably interpret this provision is to say that the limitations period began to run when Public Storage asserted a third-party complaint for indemnification against Martinez-Santiago, on October 1, 2012. In other words, when Public Storage sought to use the lease agreement against Martinez-Santiago, she had one year to bring claims challenging those provisions. She did. Plaintiff first raised these claims on September 24, 2013, in her proposed class-action counterclaim, attached to the motion to vacate default judgment -- within one year of Public Storage bringing its third-party complaint. The state court would have ruled on Plaintiff's motion but for

14

Defendant's voluntary withdrawal of the third-party complaint, which was a defense tactic outside Plaintiff's control. In the end, Plaintiff never had the opportunity to file the class-action counterclaim in the prior proceeding. On December 3, 2013, 67 days after the withdrawal, Plaintiff filed this putative class action in state court.

Statutes of limitations are subject to the "doctrine of substantial compliance, [which] allows for the flexible application of a statute in appropriate circumstances." Negron v. Llarena, 156 N.J. 296, 304 (1998). To successfully invoke the doctrine of substantial compliance to "'avoid technical defeats of valid claims,'" id. (quoting Cornblatt v. Barow, 153 N.J. 218, 239 (1998)), a party must show:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim[;] and (5) a reasonable explanation why there was not a strict compliance with the statute.

Negron, 156 N.J. at 305. Although the limitation at issue here is contractual, and not statutory, the doctrine of substantial compliance informs the Court's analysis of whether to bar these claims on technical grounds. See Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 617 (3d Cir. 1998) ("Time limitations analogous to a statute of limitations are subject to equitable modifications"). The one-year contractual limitation must be

15

given "a reasonable interpretation," Borough of W. Caldwell, 26 N.J. at 25, as explained above.

Relatedly, courts apply "equitable tolling" when the "rigid application" of a limitations period is "unfair." Miller, 145 F.3d at 618. A party seeking the benefit of equitable tolling "must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.'" Id. (quoting New Castle Cnty. v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997)). "Mere excusable neglect is not sufficient." Id.

Here, both analyses point toward permitting Plaintiff's claims to move forward. Plaintiff took steps to comply with the limitations provision, as interpreted herein, thereby serving the general purposes of the limitation provision. The timing of this action does not prejudice Defendant, because Plaintiff put Defendant on notice of the claims and filed the proposed defense and counterclaim within the limitations period and then commenced this action with reasonable diligence after Defendant withdrew the third-party complaint. If not for Defendant's withdrawal, the state court may have permitted the class-action counterclaim to be filed, and Plaintiff's claims likely would have proceeded to an adjudication on the merits. One reasonable explanation why there was not strict compliance with the limitation provision is that Public Storage deprived her of the opportunity to prosecute her defense of contractual invalidity

16

when it withdrew its demand for indemnification. She and her attorneys were then left to pursue the option of recasting her counterclaim as a complaint and refiling it. The period of two months to do so, after giving Public Storage notice of the claims, was reasonable, and therefore Plaintiff's claims are timely.

In summary, the one-year limitations provision that requires Plaintiff to bring all claims within one year of their accrual is unreasonable as interpreted by Defendant and does not bar this action; a consumer would have to be clairvoyant to challenge contractual fine print addressed to circumstances (like indemnification) that did not themselves arise when the contract was signed. Plaintiff's claims are governed by a six-year statute of limitations, N.J.S.A. 2A:14-1, and are timely. Even if the limitations provision is enforceable, the claims are timely because Plaintiff asserted the claims in state court within one year of the filing of the third-party complaint seeking indemnification from the consumer, which substantially complies with the terms of the limitation, and she was reasonably diligent in refiling this action promptly after Public Storage voluntarily dismissed its third-party complaint.

**B. Limitation on raising defenses**

Plaintiff argues that the limitations provision in the contract violates the TCCWNA because it limits her ability to raise a defense in any lawsuit arising from the agreement:

> . . . any defense to a suit against Occupant, that arises out of this Lease/Rental Agreement, or the storage of property hereunder . . . shall be barred unless Occupant . . . interposes such defense in a legal proceeding . . . within twelve (12) months after the date of the act, omission, inaction or other event that gave rise to such . . . defense.

(Lease Agreement ¶ 4.) Plaintiff argues that because Defendant is not bound by the one-year limitations period to bring suit, and thus may bring suit more than a year after the cause of action accrues, the lease agreement potentially requires Plaintiff to "interpose" a defense in a lawsuit before that suit has been filed. Plaintiff contends that such a provision is unconscionable. (Pl. Opp'n at 24-27.)

Defendant argues that the Court should not consider the limitation on defenses as a claim, because the Amended Complaint discusses only the limitation on bringing a claim within one year and does not specifically discuss the defenses aspect of that term, although the Amended Complaint quotes the provision in full, including the defenses language. (Reply at 9.) For support, Defendant cites In re Samsung Elecs. Am., Inc. Blu-Ray Class Action Litig., No. 08-0663, 2008 WL 5451024, at *3 n.3 (D.N.J. Dec. 31, 2008) (declining to consider an argument raised

18

in response to the defendant's motion to dismiss, because "[n]o allegation to that effect appears in the Complaint"). In that case, the court permitted the plaintiffs to "clarify" their Consumer Fraud Act claim related to compatibility and playability problems associated with Blu-ray players, but denied the plaintiffs' attempt to insert a new basis for the CFA claim on the grounds that the user manuals contained misleading and deceptive information. Id.

It is true that Plaintiff does not focus on the limitation on defenses in the Amended Complaint, but Plaintiff argues that the provision waives Plaintiff's rights and Plaintiff names the TCCWNA and quotes the full provision. Although Plaintiff's opposition focuses on a different part of the sentence than that highlighted in the Amended Complaint, Plaintiff is not injecting a new theory for a TCCWNA violation; she always challenged the enforceability of the limitation provision. Plaintiff is clarifying the TCCWNA claim based on the language of the agreement. Plaintiff's arguments in opposition will be considered in deciding the motion.

The TCCWNA provides in relevant part:

No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer . . . or enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at

19

the time the offer is made or the consumer contract is
signed . . . .

N.J.S.A. 56:12-15.

Plaintiff has stated a claim for a violation of the TCCWNA.
The Federal Rules of Civil Procedure and the New Jersey Court
Rules clearly establish legal rights and responsibilities of
litigants and dictate the timing to interpose or waive defenses.
These rules continue to govern civil litigation even beyond 12
months from the incident giving rise to the cause of action or
the defense. An action might not even be brought within one year
of "the date of the act, omission, inaction or other event that
gave rise to such . . . defense," (Lease Agreement ¶ 4), and
thus this provision, on its face, would appear to block the
right to raise defenses beyond 12 months. It is further
plausible that a complaint filed within one year of the act
giving rise to the cause of action or defense could be amended
multiple times, and, after one year, defenses to the amended
complaint would appear to be barred by the limitation provision.
For those reasons, the Amended Complaint states a claim that
this limitation on raising defenses is overbroad and would
violate a clearly established legal right of a consumer in the
litigation process.

Defendant's motion to dismiss this claim is denied.

C.   **N.J.S.A. 56:12-16**

Plaintiff alleges that the lease agreement violates N.J.S.A. 56:12-16, because the agreement states that some provisions may be invalid under state law without specifying which provisions are enforceable. This provision of the TCCWNA provides:

> No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey[.]

N.J.S.A. 56:12-16. Defendant contends that the claim is meritless because "the TCCWNA can only be violated if a contract contains a provision prohibited by state or federal law, and that violation must be of a right independent from the TCCWNA." (Def. Mot. at 23) (quotation marks omitted). Here, the agreement provides:

> Lease/Rental Agreements shall be governed and construed in accordance with the laws of the state in which the Premises are located. If any provision of this Lease/Rental Agreement shall be invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement.

(Lease Agreement ¶4.) Defendant argues: "[c]ontrary to the First Amended Complaint, this provision does not contain the language expressly prohibited under N.J.S.A. 56:12-16 'that any of its provisions is or may be void, unenforceable or inapplicable in

some jurisdictions.'" (Def. Mot. at 24.) Defendant also argues
that because no provisions of the agreement violate state or
federal law, there can be no violation of N.J.S.A. 56:12-16.

Defendant's arguments are not persuasive. Plaintiff has
independently stated a claim under the TCCWNA, as discussed
above, Part IV.B, and so Defendant's argument fails to the
extent it relies on the wholesale enforceability of the lease
agreement. The Court also disagrees with Defendant that the
savings clause here does not use the magic words of N.J.S.A.
56:12-16. The provision in the lease agreement plainly
communicates that some terms of the agreement may be invalid or
prohibited in the state in which the premises are located, in
which case the enforceable provisions of the agreement will
remain in force. Although Defendant is technically correct that
the language does not expressly state, in a simple, declarative
sentence, that some provisions may be invalid under state law,
the savings clause necessarily implies that assertion by
describing the consequences of that reality. Defendant cannot
escape the dictates of N.J.S.A. 56:12-16 by drafting a
conditional sentence rather than a declarative one about the
validity or enforceability of certain terms and proceeding
directly to the implications of that circumstance. See Vaz v.
Sweet Ventures, Inc., No. UNN-L-004619-10, 2011 N.J. Super.
Unpub. LEXIS 3189 (Super. Ct. Law Div. July 14, 2011) (denying a

22

motion to dismiss a claim based on N.J.S.A. 56:12-16 because the contract contained an unenforceable limitation on the defendant's liability and did not state which provisions are or are not void).

If N.J.S.A. 56:12-16 means anything, it must mean that the lease agreement needs to specify which provisions are unenforceable under New Jersey law. Because Plaintiff alleges that a provision of the lease agreement is unenforceable under the TCCWNA -- as explained above, Plaintiff states a claim that a provision of the agreement violates federal and/or state law -- Plaintiff also has stated a claim under N.J.S.A. 56:12-16 in the absence of any indication of which provisions are enforceable and which are not under New Jersey law.

### D. Liability for negligence

Plaintiff alleges in the Complaint that the exculpatory provision in Paragraph 7 violates the TCCWNA. (Am. Compl. ¶ 41.) The provision holds Defendant harmless for injuries or damage to property for any reason, including, but not limited to, Defendant's own negligence, but excluding fraudulent or willful conduct by Defendant:

> Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law.

23

(Lease Agreement ¶ 7.)

Defendant moves to dismiss this claim because exculpatory provisions for the defendant's own negligence have been upheld in New Jersey. The exculpatory provision at issue in this case was upheld by a judge in New Jersey Superior Court, Special Civil Part, in a proceeding with a pro se plaintiff. See Paruta v. Public Storage, No. SOM-DC-001704-2013 (Super. Ct. Law Div. Special Civ. Pt. June 19, 2013). Although not binding on this Court, Defendant offers the unpublished opinion as persuasive authority.

In Paruta, the pro se lessee brought suit against Public Storage after a pipe burst in his storage unit and damaged his personal property. In considering the exculpatory provision of the lease agreement, the court conducted a four-part inquiry outlined in Gershon v. Regency Diving Ctr., Inc., 368 N.J. Super. 237, 248 (App. Div. 2004),[3] and concluded that the exculpatory provision was enforceable. The court found that Public Storage was not a public utility, that it had no legal duty to perform (because Public Storage took no form of title to the plaintiff's property), and that the bargaining power was not so unequal as to make enforceable of the contract inequitable

---

[3] "In New Jersey, an exculpatory release will be enforced if (1) it does not adversely affect the public interest; (2) the exculpated party is not under a legal duty to perform; (3) it does not involve a public utility or common carrier; or (4) the contract does not grow out of unequal bargaining power or is otherwise unconscionable." Gershon, 237 N.J. Super. at 248.

(because consumers could shop around, and could purchase insurance). Paruta, at *4-*5. The court also concluded that the contract did not adversely affect the public interest because the exculpatory provision offered a "counteracting benefit for the public" by allowing storage units to be rented at more affordable prices than if Public Storage were fully liable for any loss. Because Public Storage was not liable for losses caused by fraudulent or willful behavior, and because consumers were offered insurance, the court found that the Gershon factors were met, and that Public Storage was "not liable for any acts of ordinary negligence by itself or its agents."

Exculpatory provisions are disfavored by New Jersey law because they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place. Marcinczyk v. State of N.J. Police Training Comm'n, 203 N.J. 586, 593 (2010). However, the New Jersey Supreme Court upheld an exculpatory provision that eliminated liability for a fitness center's own negligence if the consumer was injured in the course of using the amenities or equipment of the facility, or under the instruction or training or supervision of the staff. Stelluti v. Casapenn Enters., LLC, 203 N.J. 286, 293 (2010). The exculpatory provision in Stelluti also covered "slipping and/or falling while in the club, or on the club premises," but the plaintiff in that case was injured

when equipment malfunctioned, and the New Jersey Supreme Court expressly did not address the disclaimer of liability for injuries on the premises. Id. at 293, 313. The court stated:

> Although there is public interest in holding a health club to its general common law duty to business invitees—to maintain its premises in a condition safe from defects that the business is charged with knowing or discovering—it need not ensure the safety of its patrons who voluntarily assume some risk by engaging in strenuous physical activities that have a potential to result in injuries.

Id. at 311. Key to the Stelluti court analysis was the fact that the plaintiff had assumed risk in engaging in strenuous physical activity, where injuries were foreseeable. Id. at 310-11. The Stelluti court upheld the provision, but stated that the fitness center could not escape liability for reckless conduct or gross negligence.

Defendant also points to this Court's opinion in Sauro v. L.A. Fitness, No. 12-3682, 2013 WL 978807 (D.N.J. Feb. 13, 2013). There, the exculpatory provision itself was qualified as releasing the defendant from liability for active or passive negligence "to the fullest extent permitted by law." Defendant here argues that its exculpatory clause must be read in conjunction with the statement that the agreement "shall be governed and construed in accordance with the laws of the state in which the Premises are located," which appears in an entirely different provision. (Lease Agreement ¶ 4.)

26

Defendants also rely on Kane v. U-Haul, 218 F. App'x 163
(3d Cir. 2007), in which the Third Circuit upheld an exculpatory
clause in the context of a personal storage context, which
provided that the consumer bore the risk of loss for the
property, including for U-Haul's own negligence. Kane, 218 F.
App'x at 165. The court likened the lease to that for
"commercial property" and therefore found that there was no
unequal bargaining power, stating that the consumer had the
option to purchase insurance for the value of the property and
could have contracted with other storage facilities. Id. at 166-
67. The court also held the clause was not unconscionable,
because, among other reasons, bargaining power was not unequal,
there was no economic compulsion to sign the contract (no
evidence suggested that storage facilities were a necessity),
and no public interest was affected by the contract between
private parties when the consumer had the option to purchase
insurance. Id. at 167. The Third Circuit held the provision was
enforceable. Id. Here, in response, Plaintiff rightly observes
that Kane concerned damage to property, not personal injury on
the business premises. No insurance was offered to Plaintiff for
personal injury in this case, and therefore Kane is inapposite
on these facts.

Contrary to Defendant's argument, the cited New Jersey
cases do not answer the question of whether the standard duty of

27

care owed to business invitees may be waived in consumer

contracts. Plaintiff argues that the duty cannot be waived, that

a business is under a legal duty to perform up to the standard

of care required by common law. The Paruta opinion is the least

persuasive on this point, because New Jersey common law and

dicta in Stelluti suggest that businesses are under a legal duty

"to guard against any dangerous conditions on his or her

property that the owner either knows about or should have

discovered," Maisonave v. Newark Bears Prof'l Baseball Club,

Inc., 185 N.J. 70, 85 (2005), particularly when the invitee is

not engaged in risky conduct.[4] See Stelluti, 203 N.J. at 311

(stating there is a public interest in holding a business to its

general common law duty to business invitees, while

distinguishing the need to "ensure the safety of its patrons who

voluntarily assume some risk by engaging in strenuous physical

activities that have a potential to result in injuries").

Turning to the Gershon analysis, 237 N.J. Super. at 248,

the Court holds that Plaintiff sufficiently pleads that the

---

[4] Although the exculpatory provision was upheld in Paruta, that
case involved damage to personal property in storage. Paruta,
No. SOM-DC-001704-2013, at *1. The court held that Public
Storage was not under a duty to perform with respect to that
property, because the only "legal duty that could possibly apply
for defendant in the present matter is the higher standard of
care created by a bailment." Id. at *5. The court found that no
bailment had been created. Id. Because the facts of that case
did not involve personal injury on the premises, the court in
Paruta had no occasion to hold that Public Storage has no legal
duty to maintain its premises. Therefore, Paruta is not to the
contrary.

exculpatory release cannot be enforced. Although Public Storage is not a public utility or common carrier, and even assuming that the contract does not grow out of unequal bargaining power or is otherwise unconscionable, here Public Storage is under a legal duty to maintain its premises for business invitees. This duty was clearly established at the time that Plaintiff signed her lease. The exculpatory provision, on its face, provides that Public Storage is not liable for its own negligence, gross negligence or recklessness, even though, under common law, Public Storage has a duty to guard against any known dangerous conditions on its property or conditions that should have been discovered. The lease agreement only exposes Public Storage to potential liability when a loss is "directly caused by [Public Storage's] fraud, willful injury or willful violation of law." (Lease Agreement ¶ 7.) Walking outside of a storage unit is not a particularly risky or strenuous activity, which may be the subject of lawful exculpatory clauses, as was the case in Stelluti. Moreover, "there is a public interest in holding a [business] to its general common law duty to business invitees -- to maintain its premises in a condition safe from defects that the business is charged with knowing or discovering . . . ." Stelluti, 203 N.J. at 311. Businesses are in the best position to maintain their premises for the safe use of customers, and enforcing the exculpatory provision would give Public Storage

29

permission to be careless -- negligent, reckless -- in the maintenance of its property. Accordingly, the Court holds that the Amended Complaint states a plausible claim that the exculpatory provision is not enforceable, because Defendant has a legal duty to maintain its premises, and relieving businesses from that duty to business invitees allegedly adversely affects the public interest.

The general statement in Paragraph 4 of the lease agreement -- that the agreement "shall be governed and construed in accordance with the laws of the state in which the Premises are located" -- does not warrant dismissal of this claim. In Sauro, the waiver provision itself was limited to the extent permitted by law. Sauro, 2013 WL 978807, at *7. Here, the exculpatory provision is not so circumscribed. Although Paragraph 4 names New Jersey law as the "APPLICABLE LAW" that "govern[s]" the lease agreement and by which the lease is to be "construed" (Lease Agreement ¶ 4), Paragraph 4 does not purport to limit the reach of any specific provisions in the lease agreement. Therefore, the outcome reached in Sauro is not compelled here.

"[T]he TCCWNA is a remedial statute, entitled to a broad interpretation to facilitate its stated purpose." Shelton v. Restaurant.com, 214 N.J. 419, 442 (2013). The New Jersey Supreme Court, discussing the act's legislative history, observed that one of the wrongs that the TCCWNA sought to address was the

inclusion of provisions in consumer contracts that are not
enforceable but appear to be so, thereby discouraging consumers
from enforcing their rights:

> Far too many consumer contracts, warranties, notices
> and signs contain provisions [that] clearly violate
> the rights of consumers. Even though these provisions
> are legally invalid or unenforceable, their very
> inclusion in a contract, warranty, notice or sign
> deceives a consumer into thinking that they are
> enforceable and for this reason the consumer often
> fails to enforce his rights.

Id. at 431 (quoting Sponsors' Statement, Statement to Assembly
Bill No. 1660 (May 1, 1980)). Here, the exculpatory provision
purports to hold Public Storage harmless for most losses
incurred by consumers, except those that are the direct result
of Public Storage's fraud or willful conduct. Although Plaintiff
plausibly pleads that such a broad exculpatory provision is not
permitted under New Jersey law, the provision purports to be
enforceable in the lease agreement. Plaintiff states a valid
claim that this is the kind of provision that TCCWNA was
designed to address.

Defendant's motion to dismiss on this ground is denied.

**E. Initialing provisions of the agreement**

Plaintiff also appears to argue that requiring "consumers
to specifically acknowledge and initial" provisions of the
agreement violates the TCCWNA because it "deceive[s] Plaintiff
and members of the Class into thinking such illegal provisions
were valid" and persuades consumers "not even to try to enforce

their rights." (Am. Compl. ¶ 42.) Defendants correctly point out
that Plaintiff offers no legal support for this claim. Plaintiff
does not defend it in her opposition brief. To the extent this
is a claim in the Amended Complaint, it is dismissed.

### F. Indemnity provision

Plaintiff claims that the indemnification provision in the
contract is void and unenforceable under the TCCWNA. (Am. Compl.
¶ 41.) The indemnification provision reads:

> Occupant shall indemnify and hold Owner and Owner's
> Agents harmless from any loss incurred by Owner and
> Owner's Agents in any way arising out of Occupant's
> use of the Premises or the Property including, but not
> limited to, claims of injury or loss by Occupant's
> visitors or invitees.

(Lease Agreement ¶ 7.)

Defendant's motion to dismiss does not discuss the
indemnification provision in depth. However, Plaintiff, in her
opposition, defends her position that the provision is
unenforceable. (Pl. Opp'n at 11-13.) Plaintiff argues that the
provision is too broad, because it requires indemnification for
any loss arising in any way out of her (or her invitees') use of
the public storage facility. (Id. at 11-12.) Plaintiff observes
that the exception to the exculpatory provision -- which states
that Defendant remains liable for its own willful or fraudulent
conduct -- does not apply to the indemnification provision, and
therefore Plaintiff must indemnify Defendant for any loss, even
if it arises out of a claim for injury caused by Defendant's

32

negligent, reckless or intentional conduct. (Id. at 12.)

Defendant argues in reply that (1) Plaintiff's claim is raised for the first time in the opposition brief and should be disregarded, (2) the indemnification provision is triggered by the consumer's use of the premises, not by "Public Storage's willful, intentional, grossly negligent, or fraudulent acts," (3) no adjudication of liability was made in state court, and (4) Public Storage was not seeking indemnity for its own negligence. (Reply at 5-7.) These arguments are not persuasive.

First, Plaintiff alleges in the Amended Complaint that the indemnification provision is void and unenforceable under the TCCWNA. There is no reason to disregard this argument.

Second, it is clearly established that "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Ramos v. Browning Ferris Indus. of S. Jersey, Inc., 103 N.J. 177, 191 (1986); Azurak v. Corporate Prop. Investors, 175 N.J. 110, 112-13 (2003) (reaffirming Ramos and Mantilla v. NC Mall Assocs., 167 N.J. 262 (2001)). Defendant argues that it "was not seeking indemnity for its own negligence," but rather "filed a Third Party Complaint for contractual indemnification to recover any loss it may have incurred as a result of Plaintiff's or her guest's negligence." (Reply at 7.) Defendant's position is unsupportable. Colon sued

Public Storage for negligence. [Docket Item 10-3 ¶¶ 11-30.]
Public Storage then filed an amended answer and third-party
complaint alleging that "Santiago is required to indemnify
Public Storage in an amount to be proven at trial." [Docket Item
10-4 at 13-14.] Contrary to Defendant's current contention,
nothing in the third-party complaint expressly seeks
indemnification for Colon's or Plaintiff's own negligence;
Defendant appears to have sought indemnification for Colon's
claims arising from <u>Defendant's</u> alleged negligence.[5] Defendant
does not explain why Defendant would be liable for Colon's or
Plaintiff's negligence in the first place, necessitating
indemnification. Because New Jersey law does not permit a party
to indemnify against losses resulting from its own negligence
"unless such an intention is expressed in unequivocal terms,"
<u>Ramos</u>, 103 N.J. at 191, and because the provision here does not

---

[5] The third-party complaint states:

> On or about July 30, 2012, Plaintiff [Colon] filed
> this lawsuit, purporting to assert a claim against
> Public Storage for negligence. . . . Plaintiff was at
> the Public Storage Facility on February 12, 2012,
> allegedly for the purpose of accessing the storage
> unit Santiago rented from Public Storage. Pursuant to
> Paragraph 7 of the Agreement, Santiago is obligated to
> indemnify and hold Public Storage and its agents
> harmless from Plaintiff's claims and to reimburse
> Public Storage for any attorneys' fees and costs
> incurred in defending against Plaintiff's claims.

Third Party Complaint, <u>Colon v. Public Storage Props.</u>, No. CAM-
L-3353-12 ¶¶ 5-7 (Sept. 25, 2012) [Docket Item 10-4] (paragraph
numbers and formatting omitted).

unequivocally express an intention for such indemnification, Plaintiff states a claim that the indemnification provision is unenforceable against her.[6]

### G. Consumer Fraud Act claims

To state a claim under the CFA, a plaintiff must allege (1) unlawful conduct by the defendants, (2) an ascertainable loss on the part of the plaintiff, and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011). An unlawful act is "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation," among other practices not relevant here. N.J.S.A. 56:8-2. Plaintiff claims the unlawful acts are the exculpatory, limitation and indemnification provisions in the contract. (Pl. Opp'n at 21-22.) Plaintiff claims in the Amended Complaint that her ascertainable losses are "additional attorneys' fees and costs associated with filing pleadings and defending the Third Party Complaint brought by Defendant . . . ." (Am. Compl. ¶ 43.) Plaintiff does not mention attorneys' fees in her opposition to the motion to dismiss but rather argues that her ascertainable loss is the entire amount paid under the

---

[6] It is unclear what significance Defendant places on the fact that "no adjudication of liability was made in the State Court Action." (Def. Reply at 6.) Defendant asserted a claim against Plaintiff for indemnification in the state-court proceeding, which required her response.

contract. (Pl. Opp'n at 22.) At oral argument, counsel for
Plaintiff confirmed that Plaintiff was not abandoning her
argument that her attorneys' fees constitute an ascertainable
loss.

Plaintiff states a claim under the CFA. The challenged
indemnification provision, which permits Defendant to seek
indemnification, even for its own negligence, related to
incidents arising from a consumer's use (or the consumer's
invitee's use) of the property, is allegedly unlawful conduct
that is claimed to be misleading and unconscionable. See Turf
Lawnmower Repair, Inc. v. Bergen Record Corp., 139 N.J. 392, 416
(1995) ("To constitute consumer fraud . . . , the business
practice in question must be 'misleading' and stand outside the
norm of reasonable business practice in that it will victimize
the average consumer, and thus most clearly and directly involve
a matter of legitimate public concern."). The provision
plausibly has the capacity to mislead the average consumer,
because the average consumer may believe that such a provision
in a standard form contract is enforceable under New Jersey law.
That Public Storage would seek to make Martinez-Santiago
responsible for money Defendant owed to Colon based on
Defendant's alleged failure to clear snow and ice in front of
its own storage unit stands outside the norm of reasonable
business practice. The costs that Martinez-Santiago incurred

36

defending against the indemnification action plausibly constitute an ascertainable loss directly attributable to the allegedly unlawful conduct.

Defendant's motion to dismiss the CFA claim is denied.

## V. Conclusion

For the reasons explained above, this action is timely. Defendant's motion to dismiss the Amended Complaint is granted to the extent Plaintiff claims a violation of the TCCWNA based on the initialing of provisions of the lease agreement. In all other respects, Defendant's motion is denied. An accompanying Order will be entered.


**August 14, 2014**                         **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge