IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JACKELINE MARTINEZ-SANTIAGO, on
behalf of herself and other
persons similarly situated,

              Plaintiff,

    v.

PUBLIC STORAGE

              Defendant.

HONORABLE JEROME B. SIMANDLE

Civil No. 14-302 (JBS/AMD)

**OPINION**

APPEARANCES:

Andrew P. Bell, Esq.
James A. Barry, Esq.
Michael A. Galpern, Esq.
LOCKS LAW FIRM LLC
801 N. Kings Highway
Cherry Hill, NJ 08034
    -and-
Charles N. Riley, Esq.
RILEY & SHAINE
900 N. Kings Highway
Cherry Hill, NJ 08034
    Attorneys for Plaintiff

Christopher N. Tomlin, Esq.
John B. Kearney, Esq.
BALLARD SPAHR LLP
210 Lake Drive East
Suite 200
Cherry Hill NJ 08002
    -and-
John W. Keker, Esq.
Ashok Ramani, Esq.
Quyen L. Ta, Esq.
Reid P. Mullen, Esq.
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
    -and-

James B. Hardin, Esq.
Ward Lott, Esq.
NEWPORT TRIAL GROUP
4100 Newport Place, Suite 800
Newport Beach, CA 92660
    Attorneys for Defendant

**SIMANDLE**, Chief Judge:

## I.   INTRODUCTION

    This action is a putative class action brought under the Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 – 18, on behalf of persons in New Jersey who signed lease agreements with Defendant Public Storage for a storage unit since at least 2007. The TCCWNA makes it unlawful for a lessor to offer or enter into a written consumer contract "which includes any provision that violates any clearly established legal right of a consumer or responsibility of a . . . lessor" as established by state or federal law at the time the contract is signed. N.J.S.A. 56:12-15.

    Before the Court is Plaintiff Jackeline Martinez-Santiago's motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3). The principal issues are whether Plaintiff can satisfy the requirements of commonality and predominance under Rule 23 by identifying the plaintiffs whose "clearly established legal right[s]" were violated at the time they entered into the Public Storage contract; and whether the superiority requirement has been met. For the reasons set forth below, Plaintiff's motion will be

granted.

## II.  BACKGROUND

Plaintiff Jackeline Martinez-Santiago entered into a lease agreement with Defendant Public Storage for storage space at Defendant's Sicklerville, N.J., facility on February 7, 2012. (Am. Compl. [Docket Item 10] ¶ 19.) Plaintiff listed Mr. Orlando Colon as an "Alternate Contact Name" on her lease agreement. (Lease Agreement, Am. Compl. Ex. A [Docket Item 10-4] at 1.) After Colon slipped on a patch of ice on a walkway directly in front of Plaintiff's storage unit in February 2012, he sued Public Storage for his injuries in New Jersey Superior Court, alleging negligence. (Am. Compl. ¶ 24.)

Public Storage filed an amended answer and third-party complaint naming Ms. Martinez-Santiago as a third-party defendant in Colon's lawsuit. (Id. ¶ 26.) Public Storage sought indemnification from Martinez-Santiago because of a provision in the storage facility lease agreement which indemnified Public Storage from any loss incurred by Public Storage arising out of Martinez-Santiago's use of the facility, including "claims of injury or loss by Occupant's visitors or invitees." (Id. ¶ 27; Lease Agreement, Paragraph 7.)

In the Superior Court, Public Storage obtained a default judgment against Martinez-Santiago because she did not respond to the lawsuit. (Am. Compl. Ex. G [Docket Item 10-7] at 40-41.] On September 24, 2013, Martinez-Santiago, with the aid of counsel, filed a motion to vacate

default judgment and sought permission to file a third-party answer and class-action counterclaim out of time. [Id. at 3.] The proposed class-action counterclaim [id. at 54-64], sets forth the same causes of action in the present Amended Complaint here.

Public Storage settled Colon's suit and, before the Superior Court could rule on Martinez-Santiago's motion to vacate default judgment, voluntarily dismissed the third-party complaint against Martinez-Santiago. (Am. Compl. ¶¶ 28, 30, 32-33.)

On December 3, 2013, Martinez-Santiago filed this putative class-action in the Superior Court of New Jersey, Camden County, and Defendants removed the action to this Court. [Docket Items 1 & 1-2.]

Plaintiff challenges four provisions in the lease agreement with Public Storage: (1) the Indemnity Clause in Paragraph 7,[1] which requires the occupant of the storage unit to indemnify Defendant "from any loss incurred by Owner [Defendant] and Owner's Agents in any way arising out of Occupant's use of the Premises or the Property, including, but not limited to, claims of injury or loss by Occupant's visitors or invitees";[2] (2) the Exculpatory Clause, also in Paragraph

---

[1] The language is drawn from the 2012 Lease Agreement between Plaintiff Martinez-Santiago and Public Storage. (Lease Agreement, Am. Compl. Ex. A [Docket Item 10-1].)

[2] This section states, in full:

Occupant shall indemnify and hold Owner and Owner's Agents harmless from any loss incurred by Owner and Owner's Agents in any way arising out of Occupant's use

4

7, which releases Defendant from all responsibility for loss or damage to the occupant's property or injury to persons caused by, among other things, "Owner's [Public Storage's] and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law";[3] (3) the Limitations Clause, in Paragraph 4 of the lease agreement, which limits the time in which Plaintiff may bring a claim arising out of the lease agreement to one year after "the date of the act, omission, inaction or other event that gave rise to such a claim . . . ."; and purports to extend the one-year limit to any defenses Plaintiff may seek to raise in any suit against her arising out of the lease agreement;[4] and (4) the Severability Clause,

---

of the Premises or the Property including, but not limited to, claims of injury or loss by Occupant's visitors or invitees.
Lease Agreement ¶ 7.
[3] This section states, in full:
Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law.
Lease Agreement ¶ 7.
[4] This section states, in full:
Any claim, demand, or right of Occupant, and any defense to a suit against Occupant, that arises out of this Lease/Rental Agreement, or the storage of property hereunder (including, without limitation, claims for loss

5

also in Paragraph 4, which states generally that any provision under the lease agreement that is prohibited by any state law will be ineffective without invalidating the remainder of the contract.[5]

Plaintiff argues that all four provisions violate the TCCWNA. The TCCWNA makes it unlawful for a lessor to offer or enter into a written consumer contract "which includes any provision that violates any clearly established legal right of a consumer or responsibility of a . . . lessor" as established by state or federal law at the time the contract is signed. N.J.S.A. 56:12-15.

Plaintiff contends that the first three provisions are unconscionable and unenforceable under New Jersey contract law, the Federal Rules of Civil Procedure, and the New Jersey Court Rules, and therefore violate section 56:12-15. She also argues that the

---

or damage to stored property) shall be barred unless Occupant commences an action (or, in the case of a defense, interposes such defense in a legal proceeding) within twelve (12) months after the date of the act, omission, inaction or other event that gave rise to such claim, demand, right or defense.

Lease Agreement ¶ 4.

[5] This section states, in full:

Lease/Rental Agreements shall be governed and construed in accordance with the laws of the state in which the Premises are located. If any provision of this Lease/Rental Agreement shall be invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement.

Lease Agreement ¶ 4.

fourth provision, the Severability Clause, violates section 56:12-16 of the TCCWNA, which states that "[n]o consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey . . . ." N.J.S.A. 56:12-16.

In an earlier opinion, this Court denied Defendant's motion to dismiss, finding that Plaintiff had stated plausible claims for relief under the TCCWNA.[6] See Martinez-Santiago v. Public Storage, 38 F. Supp. 3d 500, 517 (D.N.J. 2014). In response to the Court's opinion, Public Storage revised its lease agreement on October 21, 2014. (Revised Lease Agreement, Def. Opp'n Ex. 14 [Docket Item 118-15].)

Plaintiff now moves for class certification on the TCCWNA claims under Fed. R. Civ. P. 23(b)(3) on behalf of the following class:[7]

> All natural persons who since September 7, 2007 entered into lease agreements with Defendant in the State of New Jersey. Excluded from the Class are Defendant, each of its parents, subsidiaries, authorized distributors and affiliates, and its legal representatives, officers, board members and the heirs, successors, and assigns of any excluded person.

---

[6] The Court also found that Plaintiff had stated a claim under the New Jersey Consumer Fraud Act ("CFA"), but Plaintiff does not move to certify a class under the CFA.

[7] Plaintiff first moved for class certification in September of 2014, but that motion was terminated by consent of both parties while they participated in the mediation process. The administrative termination was without prejudice to Plaintiff's right to re-file at a later date. [Docket Item 73.]

(Pl. Mem. of Law in Support of Mot. to Certify Class ("Pl. Br.") [Docket Item 99-1] at 2.) She seeks at least the minimum $100 statutory penalty under the TCCWNA for each class member. See N.J.S.A. § 56:12-17.

## III. CLASS CERTIFICATION MOTION

### A. Class Certification Standard

Class actions constitute an exception to the "'usual rule'" that litigation be "'conducted by and on behalf of the individual named parties only.'" Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590 (3d Cir. 2012) (quoting Wal-Mart Stores v. Dukes, 131 S. Ct. 2541, 2550 (2011) (quotation marks omitted)), Federal class actions are governed by Fed. R. Civ. P. 23. Rule 23(a) contains four threshold requirements applicable to all actions, and it is the plaintiff's burden to show that a class action is a proper vehicle for this lawsuit by establishing each element by a preponderance of the evidence. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (noting that "a party seeking to maintain a class action must affirmatively demonstrate his compliance" with Rule 23) (citations and quotation marks omitted); In re Hydrogen Peroxide Antitrust Lit., 552 F.3d 305, 307 (3d Cir. 2008).

The plaintiff must demonstrate that:

(1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality];

8

and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]. Hydrogen Peroxide, 552 F.3d at 309 n.6 (citing Fed. R. Civ. P. 23(a)). If all these requirements are met, the class certification analysis proceeds to the type of class.

Plaintiff seeks certification under Rule 23(b)(3), which requires showing, in addition to the four prerequisites above, that "(i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." Marcus, 687 F.3d at 591 (citing In re Cmty. Bank of N. Va., 622 F.3d 275, 291 (3d Cir. 2010)); Fed. R. Civ. P. 23(b)(3). A third and final "essential prerequisite" to class certification, "at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." Marcus, 687 F.3d at 592-93.

**B. Parties' Arguments**

The challenged provisions in the lease agreements used by Public Storage from September 24, 2007 to October 21, 2014 have nearly identical language. Plaintiff contends that although Defendant revised its lease agreement several times during this period, the agreements all suffer from the same defects in violation of the TCCWNA. Defendant does not argue otherwise. However, as explained below, the parties do dispute whether individuals who signed Defendant's revised lease agreement on or after October 21, 2014 should be included in

9

the class.

Plaintiff identifies four questions common to the class: whether Defendant violated the TCCWNA by (1) requiring consumers to hold Defendant harmless for injuries or damage to property for any reason, including but not limited to Defendant's own negligence and/or recklessness; (2) requiring consumers to indemnify Defendant for any loss arising out of consumers or their invitees' use of the facility; (3) improperly limiting consumers' rights to raise defenses in lawsuits arising from the lease agreement; and (4) improperly stating that some provisions may be invalid without specifying which provisions are unenforceable in New Jersey. (Id. at 1.)

The primary dispute before the Court is whether the proposed class satisfies the requirements of commonality, predominance, and superiority. With respect to the first three TCCWNA claims, Defendant argues that common questions of law do not predominate the class and Plaintiff therefore cannot satisfy Fed. R. Civ. P. 23(a)'s requirements of commonality and predominance. As noted above, the TCCWNA provides a remedy for individuals who can prove that the defendant's contract violated the consumer's "clearly established legal right." Defendant contends that Plaintiff has not shown what the clearly established right is and when during the putative class period the right became clearly established under New Jersey common law. (Def. Opp'n at 10-21.)

Defendant also argues that a class action is not the superior method for resolving these claims because "[r]esolving the class claims here would require this Court to issue broad, categorical pronouncements about the scope and enforceability of contractual exculpatory, indemnity, and limitations provisions under New Jersey common law – an approach contrary to the case-by-case, fact-specific analysis that New Jersey courts actually employ." (Def. Opp'n at 22.)

With respect to the fourth TCCWNA claim that the Severability Clause violates N.J.S.A. 56:12-16, Defendant does not challenge whether the commonality or predominance requirement has been met. Defendant argues only that a class action is not the superior method for resolving the claim because the Severability Clause does not violate the TCCWNA. (Id. at 23-24.)[8]

In the following sections, the Court examines whether each of the prerequisites of Rule 23 is satisfied. Hydrogen Peroxide, 552 F.3d at 310 ("[A] class may not be certified without a finding that each Rule 23 requirement is met.").

**C. Ascertainability**

Plaintiff must first demonstrate that the class is "currently and readily ascertainable based on objective criteria." Marcus v. BMW of N. Am., 687 F.3d 583, 592 (3d Cir. 2012). By insisting on the

_____

[8] The Court heard oral argument on October 26, 2015.

easy identification of class members, the requirement of
ascertainability eliminates serious administrative burdens,
protects absent class members by facilitating clear notice, and
protects defendants by ensuring that persons who will be bound by
the final judgment are clearly identifiable. Id. at 593.

In general, the ascertainability inquiry is "narrow" and "'only
requires the plaintiff to show that class members *can* be
identified.'" Byrd v. Aaron's Inc., 784 F.3d 154, 165 (3d Cir. 2015)
(citing Carrerra v. Bayer Corp., 727 F.3d 300, 308 n.2 (3d Cir. 2013).
Two requirements must be met. First, the class must be defined with
reference to objective criteria. Second, there must be a reliable
and administratively feasible mechanism for determining whether
putative class members fall within the class definition. Byrd v.
Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015); Hayes v. Wal-Mart
Stores, Inc., 725, F.3d 349, 355 (3d Cir. 2013) (citing Marcus, 687
F.3d at 593-94).[9] "If class members are impossible to identify
without extensive and individualized fact-finding or 'mini-trials,'
then a class action is inappropriate." Marcus, 687 F.3d at 593.

---

[9] The ascertainability analysis is closely tied to, but is separate
from, Rule 23(c)(1)(B)'s requirement that the class-certification
order include "(1) a readily discernible, clear, and precise statement
of the parameters defining the class or classes to be certified, and
(2) a readily discernible, clear, and complete list of the claims,
issues or defenses to be treated on a class basis." Wachtel ex rel.
Jesse v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 187-88 (3d Cir.
2006).

The Court finds the proposed class ascertainable. The class is defined by objective criteria, because it consists of all individuals since September 24, 2007 who signed a storage lease agreement with Public Storage in New Jersey. The mechanism for identifying class members also appears to be relatively straightforward, since it requires only an examination of Defendant's business records to find those individuals who entered into lease agreements during the class period to store personal property in New Jersey. No mini-trial or burdensome individualized fact-finding is necessary, since membership is determined solely by the existence of a lease agreement for New Jersey and the date upon it. Moreover, according to Plaintiff, Defendant has already produced a redacted list of putative class members in discovery (Pl. Br. at 20), which means that class members have largely been identified. Thus, the proposed class satisfies the requirement of ascertainability.

**D. Numerosity**

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impracticable." When examining the potential size of a class, "[p]recise enumeration of the members of a class is not necessary" and "[i]t is permissible to estimate class size." Zinberg v. Wash. Bancorp, Inc., 138 F.R.D. 397, 405 (D.N.J. 1990). "There is no minimum number of members needed for a suit to proceed as a class action" but generally, where the potential number of plaintiffs

13

is likely to exceed forty members, the Rule 23(a) numerosity requirement will be met. Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 595 (3d Cir. 2012) (citing Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)).

Defendant does not contest numerosity and has admitted that a total of 159,240 lease agreements were executed from September 24, 2007 to October 22, 2014. Since there are at least 159,240 potential class members, the numerosity requirement is satisfied.

### E. Commonality and Predominance

Commonality requires a plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In other words, the proposed class action contains a common contention capable of class wide resolution, "which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011). Relatedly, the predominance requirement for class actions arising under Fed. R. Civ. P. 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . Issues common to the class must predominate" over any questions affecting only individual members. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310-11 (3d Cir. 2008) (internal citations omitted). The "focus of the predominance inquiry is on whether the

14

defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan v. DB Investments, Inc.,667 F.3d 273, 298 (3d Cir. 2011).

In Rule 23(b)(3) cases such as this one, "the Rule 23(a)(2) commonality requirement and the 23(b)(3) predominance tests" may be considered in a single inquiry. See, e.g., Georgine v. Amchem Prods. Inc., 83 F.3d 610, 626 (3d Cir. 1996) ("Because 23(b)(3)'s predominance requirement incorporates the commonality requirement, we will treat them together."). Satisfying the "far more demanding" predominance inquiry pursuant to Rule 23(b)(3) necessarily satisfies the less exacting inquiry under Rule 23(a)(2). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997).[10]

The issues common to the entire class may be stated as such: whether three clauses in Defendant's lease agreements since February 7, 2007 violate section 56:12-15 of the TCCWNA because they violate a consumer's clearly established legal rights under New Jersey law; and whether the Severability Clause in those agreements violates section 56:12-16 of the TCCWNA because it fails to list the specific

_____

[10] Rule 23(b)(3) class actions need not be as cohesive as other forms of class actions, however, in light of the Rule 23(b)(3) class members' "opportunity to opt out." See Barnes v. Am. Tobacco Co., 161 F.3d 127, 142-43 (3d Cir. 1998) (noting the heightened cohesiveness required in Rule 23(b)(2) context).

provisions in the contract that are unenforceable under New Jersey law.

With respect to the first issue, the common questions may be stated more specifically: (1) whether Defendant's Indemnity Clause violates the TCCWNA by requiring the occupant to indemnify Defendant for any loss arising out of consumers or their invitees' use of the facility, including losses caused by Public Storage's own negligence; (2) whether Defendant's Exculpatory Clause violates the TCCWNA by requiring consumers to hold Defendant harmless for injuries or damage to property for any reason, including but not limited to Defendant's own negligence, gross negligence, or recklessness; and (3) whether the Limitations Clause violates the TCCWNA by limiting consumers' rights to raise defenses in lawsuits arising from the lease agreement to one year from the date of the occurrence giving rise to the claim.

The commonality and predominance requirements are satisfied because these questions are capable of classwide resolution. All four issues arise from provisions in the lease agreements signed by all class members during the class period, and resolving the question of whether these provisions violate clearly established law would resolve the TCCWNA claims of all class members. See Wal-Mart Stores, Inc., 131 S. Ct. at 2551 ("'What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" (quoting

16

Richard Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U. L. Rev. 97, 132 (2009))).

Moreover, Defendant's conduct – entering into a lease agreement containing these provisions – is common to all class members, and each class member was harmed in the same way in that each class member signed a lease that allegedly violated his or her clearly established legal rights. Although the lease agreements vary slightly until October 21, 2014 (when Public storage made voluntary improvements to the challenged language for all subsequent leases), they all contain provisions that violate the TCCWNA in the manner described above, and resolution of each class members' TCCWNA claims does not require individualized proof. <u>See</u> <u>Sharkus v. Blue Cross of Greater Pa.</u>, 431 A.2d 883, 886 (Pa. 1981) ("[A] class action may be maintained even when the claims of members of the class are based on different contracts where the relevant contractual provisions raise common questions of law and fact and do not differ materially."). Thus, common issues in this case predominate over those affecting individual class members. <u>See</u> <u>Sullivan v. DB Investments, Inc.</u>, 667 F.3d 273, 297 (3d Cir. 2011).

The Court is unpersuaded by Defendant's argument that predominance is not satisfied because it is unclear when certain rights became "clearly established" for purposes of the TCCWNA and class members may have different TCCWNA claims depending on when they

17

entered into the agreement. (See, e.g., Def. Opp'n at 14.) The predominance inquiry is animated principally by the concern that "the efficiencies gained by class resolution of the common issues [be] outweighed by individual issues presented for adjudication." In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 511 (D.N.J. 1997). Thus, predominance is satisfied when a legal claim is "capable of proof at trial through evidence that is common to the class rather than individual to its members." Hydrogen Peroxide, 552 F.3d at 311. Here, the questions of when the law became clearly established and whether each of the four provisions violated clearly established law for purposes of the TCCWNA are common to all class members, and the proof required is also common to the class. Because the claims involve the interpretation of a form contract, the focus is on the law at the time the agreements were signed, and not the conduct of individual class members; thus, the proof will not vary by class member. See In re Linerboard Antitrust Litig., 305 F.3d 145, 163 (2003) (particularly where the inquiry "necessarily focuses on defendant's conduct, that is, what defendants did rather than what plaintiffs did," the proof for these issues will not vary among class members) (citation omitted).[11]

---

[11] The Court likewise rejects Defendant's related argument that TCCWNA claims based on common law violations are generally unsuitable for classwide resolution. While certain common law actions, such as those

Rehashing the same arguments it made in its motion to dismiss, and citing some of the same cases, Defendant contends that certain provisions do not violate the TCCWNA because they do not violate clearly established law. (See Def. Opp'n at 12.) In its earlier 37-page opinion denying Defendant's motion to dismiss, the Court already held that Plaintiff has stated plausible claims under TCCWNA with respect to the Indemnity, Exculpatory, Limitations, and Severability Clauses. Martinez-Santiago v. Public Storage, 38 F. Supp. 3d 500, 509-17 (D.N.J. 2014). Defendant in essence seeks to relitigate these claims, but "Plaintiffs' burden at the class certification stage is not to prove the element of [the claim]." Hydrogen Peroxide, 552 F.3d at 311-12. Defendant is, of course, free to challenge the class members' TCCWNA claims on the merits at summary judgment, but at this stage of class certification, nothing more is required. The Court is satisfied that the commonality and predominance requirements have been met.[12]

_____

sounding in tort, may depend on highly individualized facts, that is not the case here. The relevant facts – the language in the lease agreement – are largely uniform throughout the class period. As noted above, the class claims may be resolved by determining when the common law rights at issue emerged, and the Court rejects the implication that such questions are simply too ambiguous for the Court to answer.
[12] Nor does the Court find it necessary to engage in a new analysis, as Defendant suggests, to determine whether the class as a whole has plausible claims under TCCWNA with respect to each of the clauses. Although the issues common to the entire class are slightly broader and pertain to whether the clauses on their face violate the TCCWNA,

The Court notes that while Plaintiff specifies a beginning date for the class period, she does not specify an end date, and the proposed class period is unbounded. In <u>In re Schering Plough Corp. ERISA Litig.</u>, 589 F.3d 585 (3d Cir. 2009), the Third Circuit noted that "nothing in <u>Hydrogen Peroxide</u> should be read to preclude an open-ended class period, as long as the period results from a proper application of law." <u>Id.</u> at 603. Plaintiff urges the Court to certify a class which also includes all individuals who have entered into

---

they are nonetheless still capable of being resolved through common proof, as the Court has already explained. Plaintiff has shown that the same alleged TCCWNA violations occurred throughout the class period with each version of the lease agreement, at least until October 21, 2014. Moreover, by entering into the contract with Public Storage, each class member was injured in the same way and is entitled to the same statutory damages.

Even were the Court to reexamine the underlying merits, it would find no reason to deviate from the analysis in its earlier opinion. At oral argument, for example, Defendant relied upon <u>Stelluti v. Casapenn Enters., LLC</u>, 1 A.3d 678 (N.J. 2010), to argue that at least for those post-<u>Stelluti</u> class members, Defendant's Exculpatory Clause does not violate TCCWNA. But as the Court previously noted, <u>Stelluti</u> involved a health club member who assumed some risk by engaging in strenuous physical activity that had a potential to result in injuries. The exculpatory clause in that case eliminated liability for the fitness center's own negligence if the consumer was injured in the course of using exercise equipment, or under instruction or training of staff. <u>Stelluti</u>, 1 A.3d at 293. <u>Stelluti</u> upheld the exculpatory clause because a business "need not ensure the safety of its patrons who voluntarily assume some risk," but did not alter the long-standing rule that a business owes a non-waivable duty of care to business invitees to guard against dangerous conditions on its property, where the invitees do not engage in risky behavior. <u>Id.</u> at 311; see <u>Martinez-Santiago</u>, 38 F. Supp. 3d at 513-514. The Exculpatory Clause at issue in this case is much broader than the one in <u>Stelluti</u>, and may still violate TCCWNA for all class members.

20

a revised lease agreement, revised by Public Storage on October 21,

2014 in response to this Court's opinion denying Defendant's motion

to dismiss. Paragraph 4 of the new Lease Agreement now reads:

> APPLICABLE LAW; JURISDICTION; VENUE; TIME TO BRING CLAIMS.
> This Lease/Rental Agreement shall be governed and construed
> in accordance with the laws of New Jersey. . . . Any claim
> or demand of Occupant that arises out of this Lease/Rental
> Agreement, or the storage of property hereunder whether
> or not such claim or demand is for loss to stored goods)
> shall be barred unless Occupant commences an action within
> twelve (12) months after the date of the act, omission,
> inaction or other event that gave rise to such claim, or
> demand.

[Docket Item 74-1.] The revised lease agreement no longer requires

a plaintiff to interpose a defense within twelve months of the date

of the act giving rise to the claim. The Severability Clause has also

been deleted entirely. Paragraph 7 of the Lease Agreement now reads:

> LIMITATION OF OWNER'S LIABILITY; INDEMNITY. Occupant
> hereby releases and holds Owner and Owner's Agents harmless
> from any loss, liability, claim, expense, damage to
> property, or injury to persons, from any cause, including
> without limitation, Owner's and Owner's Agents active or
> passive negligence, or otherwise, to the fullest extent
> permitted by New Jersey law, while Occupant is in, upon,
> or about the Premises or the Property or using any of Owner's
> facilities, services or equipment. Occupant also hereby
> agrees to indemnify Owner and Owner's Agents from any loss
> incurred by Owner or Owner's Agents in any way arising out
> of Occupant's use of the Premises or the Property including,
> but not limited to, claims of injury or loss by Occupant's
> visitors or invitees, or claims of injury or loss caused
> by the negligence of Owner or Owner's Agents, to the fullest
> extent permitted by New Jersey law.

Id. Where the Exculpatory Clause previously held Defendant

harmless for damages caused by Defendant's own negligence, the new

version now holds Defendant harmless for damages caused by Defendant's own negligence "*to the fullest extent permitted by New Jersey law*" (emphasis added). And, where the Indemnity Clause previously did not specify that the occupant must indemnify Defendant for losses caused by Defendant's negligence, the new provision now explicitly includes "negligence of Owner or Owner's Agents" in the list.

With regard to leases signed after October 21, 2014, Plaintiff has not demonstrated that the commonality requirement is met. When Public Storage modified its form of lease with regard to each of the contested clauses, it made changes with Plaintiff concedes were substantial. While Plaintiff has not conceded that the post-October 21, 2014 period be excluded from this class definition, neither has Plaintiff suggested why the new lease provisions stand on common ground with the contested clauses of Plaintiff's 2012 lease. They are in fact sufficiently distinct, and aimed at obviating the Plaintiff's objections, that one cannot find that the issues, if any, that the 2014 revision presents, are even similar to the allegedly "more egregious" revisions from 2007 through October 21, 2014. Since Plaintiff's lease is typical of those from 2007 until the 2014 revision, but decidedly different from the allegedly curative revisions of October 21, 2014,[13] the commonality of the class extends

_____

[13] The Court expresses no opinion on whether the post-October 21, 2014

only until a final class cut-off of October 21, 2014.

**F. Typicality**

Typicality requires that the named plaintiff's claims or defenses be "typical of the claims or defenses of the class." Fed. R. Civ. P.  23(a)(3). The requirement aims to ensure that the class representatives are "sufficiently similar" to the rest of the class "in terms of their legal claims, factual circumstances, and stake in the litigation" so that "certifying those individuals to represent the class will be fair to the rest of the proposed class." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009) (citations omitted).

While the claims must be typical, the requirement "does not mandate that all putative class members share identical claims." Barnes v. Am. Tobacco Co., 161 F.3d 127, 141 (3d Cir. 1998) (citing Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994)); see also In re Schering, 589 F.3d at 598 (noting that the similarity between the claims and defenses of the plaintiff and those of the class "does not have to be perfect."). "If the claims of the named plaintiff and the putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 183-84

lease violates New Jersey law, but notes simply that the matter is not an appropriate question for this class-based litigation.

(3d Cir. 2001); see also 1 Newberg on Class Actions § 3.15, p. 3-78 ("Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.").

Martinez-Santiago's claims stem from the same course of conduct that gives rise to the claims of the class. A lease agreement may violate the TCCWNA even if the plaintiff has not suffered any actual damages because a TCCWNA violation arises simply from the language in the contact. See Barrows v. Chase Manhattan Mort. Corp., 456 F. Supp. 2d 347, 362 (D.N.J. 2006). Thus, the claims of the class all stem from the same factual circumstance – entering into a lease for storage space with Public Storage.[14] Like the individual class members who "entered into lease agreements with Defendant in the State of New Jersey" between September 7, 2007 and October 21, 2014, Plaintiff's claims arise from the lease agreement she signed with Defendant on February 7, 2012, for a storage space at Defendant's Sicklerville, New Jersey location. Moreover, the claims are based

---

[14] In fact, a remedy under TCCWNA is not limited to individuals who have entered into unlawful consumer contracts. TCCWNA may be violated even when a defendant merely *presents* a consumer with a contract that "contains terms contrary to any established state or federal right of the consumer." Shelton v. Restaurant.com, Inc., 70 A.3d 544, 558 (N.J. 2013). Plaintiff, however, has chosen to narrow the scope of the class to only those individuals who actually entered into lease agreements with Defendant. (Pl. Br. at 9.)

24

upon the same legal theory, because each lease agreement contains TCCWNA violations of the kind described above.[15]

Martinez-Santiago also has a similar stake in the litigation as the proposed class members, as she, like each individual class member, claims $100 in damages. Finally, Public Storage has not specified any unique defense that would be inapplicable to the other class members. Rather, the defenses raised by Public Storage – for example, that the provisions in the lease agreements must be construed in a way that does not render them unlawful – apply uniformly to all class members.

As noted above, several versions of the lease agreement have been used throughout the class period. The versions present common issues under TCCWNA. Indeed, an examination of the different lease agreements reveals that, at least with respect to the four challenged provisions, they contain substantially similar language, which Plaintiff alleges all violate TCCWNA in the same manner. (See Lease Agreements, 2007-2015, Def. Opp'n Exs. 3-15 [Docket Items 118-4 to 118-16]; Pl. Br. 12-17.)

---

[15] The Court rejects Defendant's argument that the Indemnity Clause violates TCCWNA only as applied in Martinez-Santiago's case. Because the Clause is written broadly and indemnifies Public Storage "from any loss incurred" "in any way," it may on its face require the lessee to indemnify Public Storage from losses arising out of Public Storage's own negligence, in violation of clearly established law. See Azurak v. Corporate Property Investors, 814 A.2d 600, 601 (N.J. 2003).

"Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." <u>Baby Neal</u>, 43 F.3d at 58. Here, Plaintiff has identified four clauses that allegedly violate the TCCWNA which exist in all of the lease agreements entered into during the putative class period. Any incidental difference that may exist among the lease agreements does not render the named Plaintiff's claims atypical, particularly in light of the nearly identical factual circumstances, stake in the litigation, and legal claims she shares with the class. (<u>In re CEDC</u> Pl.'s Br. [Docket Item 149], 31.)  Accordingly, the Court finds the typicality requirement satisfied.

**G. Adequacy of Representation**

The final Rule 23(a) consideration "serves to uncover conflicts of interest between named parties and the class they seek to represent." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 625 (1997). It requires the Court to carefully examine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The named plaintiff must "be part of the class and 'possess the same interest and suffer the same injury' as the class members." <u>Id.</u> (quoting <u>East Tex. Motor Freight Sys., Inc. v. Rodriguez</u>, 431 U.S. 395, 403 (1977)).

Under this prong, the Court considers whether "the putative named plaintiff has the ability and the incentive to represent the claims

26

of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988). The adequate representation inquiry has two components to ensure that the absentees' interests are fully pursued: "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 247 (3d Cir. 1975).

Upon review of Plaintiff's certifications submitted in connection with her motion for class certification, the Court finds that both factors are satisfied. Class counsel have extensive experience in federal court and have been lead counsel or co-lead counsel in numerous class actions, including those involving claims for consumer fraud and commercial law. (See CV of Michael Galpern, Esq., CV of Andrew Bell, Esq., and CV of Charles Riley, Esq., Pl. Br. Exs. U, V, and W [Docket Items 99-25, 99-26, 99-27].) In addition, no party has identified any interests of the named plaintiff that are antagonistic to those of the proposed class, and Martinez-Santiago has certified that that she is committed to vigorously prosecuting the case and representing the interests of the class. (Martinez-Santiago Aff., Pl. Br. Ex. T [Docket Item 99-24].) The Court therefore finds the adequacy and fairness requirement satisfied.

27

**H. Superiority**

Superiority requires that the class action mechanism be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court must examine: (1) the interest of individual members of the class in controlling the prosecution of the action; (2) the extent of litigation commenced elsewhere by class members; (3) the desirability of concentrating claims in a given forum; and (4) the management of difficulties likely to be encountered in pursuing the class action. Danvers Motor Co. v. Ford Motor Co., 543 F. 3d 141, 149-50 (3d Cir. 2008).

The Court finds that this class action is the superior method for adjudicating the claims of the class members. There is no indication that prospective plaintiffs would prefer to prosecute this action independently, nor is the Court aware of extensive litigation that is ongoing in another forum in New Jersey. The Court finds it desirable to concentrate these claims in one forum, and does not anticipate any special difficulties that will arise in managing the claims in this case. The proof in this case does not appear to be complex, and the calculation of damages is straightforward because Plaintiff claims only statutory damages.

Defendant argues that "[r]esolving the class claims here would require this Court to issue broad, categorical pronouncements about

the scope and enforceability of contractual exculpatory, indemnity, and limitations provisions under New Jersey common law – an approach contrary to the case-by-case, fact-specific analysis that New Jersey courts actually employ." (Def. Opp'n at 22.) The Court does not agree. On the contrary, because the questions that must be resolved are whether certain provisions of Defendant's lease agreements *on their face* violate the TCCWNA, a fact-bound analysis is not required and a case-by-case inquiry is unnecessary.

In fact, various courts have stated that claims involving the interpretation and validity of form contracts are well-suited for class treatment. See Kolbe v. BAC Home Loans Serv., LP, 738 F.3d 432, 441 (1st Cir. 2013) (noting that courts have certified classes for contract disputes over form contracts "because the form contracts are interpreted uniformly across members of the class, and thus the outcome does not depend on extrinsic evidence that would be different for each putative class member."); Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc., 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."); Robinson v. Countrywide Credit Indust., No. 97-2747, 1997 WL 634502, at *3 (E.D. Pa. Oct. 8, 1997) ("cases which involve allegations arising from form contracts or documents 'present the classic case for treatment as a class action.'" (quoting Kleiner v. First Nat. Bank

29

of Atlanta, 97 F.R.D. 683, 692 (N.D. Ga. 1983))).[16]

Accordingly, the Court finds that the superiority element has been satisfied.

## IV. CONCLUSION

The Court concludes that the proposed class meets the standard for class certification under Rule 23(a) & (b)(3) and will grant Plaintiff's motion to certify the class. The accompanying Order will be entered defining the class, identifying common questions of law and fact, appointing class counsel, and specifying a deadline for submitting a motion for class notification.

**November 16, 2015**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         Chief U.S. District Judge

---

[16] Defendant also argues that a class action is not the superior method for resolving the validity of the Severability Clause under the TCCWNA because "the Severability Clause is not the type of clause that TCCWNA forbids." (Def. Opp'n at 23.) Although couched as a superiority argument, Defendant's contention is actually that the Severability Clause does not violate the TCCWNA. (See Def. Opp'n at 23-24.) The Court has already held that Plaintiff has stated a claim that the Severability Clause violates the TCCWNA because it fails to specify which specific provisions of the lease agreement are enforceable and which are not under New Jersey Law (see Op. Denying Mot. to Dismiss at 21-23), and finds no need to revisit the merits of its decision at this time. For purposes of superiority, it is sufficient that the considerations noted above have been addressed.