# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JACKELINE MARTINEZ-SANTIAGO, on behalf of herself and other person similarly situated, | Case No. 1:14-cv-00302-JBS-AMD |
| Plaintiffs, | ORAL ARGUMENT REQUESTED |
| v. |  |
| PUBLIC STORAGE, |  |
| Defendant. |  |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PUBLIC STORAGE'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................1

II.   UNDISPUTED FACTS ...............................................................3

     A.    Plaintiff's former boyfriend sued Public Storage after he allegedly slipped on ice in front of her storage unit. ...........................3

     B.    Following the State Court Action, plaintiff sued Public Storage. .........4

     C.    Plaintiff refiled her TCCWNA class claim, seeking to represent tens of thousands of consumers. .............................................5

     D.    The Court certified a class through October 2014 but recognized Public Storage's ability to challenge plaintiff's class claims on the merits. ...................................................................8

III.   LEGAL STANDARD .................................................................8

IV.   ARGUMENT ...........................................................................9

     A.    The Court should grant summary judgment that the Severability Clause does not violate TCCWNA. ......................................9

     B.    The Court should grant summary judgment that the Limitations Clause is more generous than the underlying rules and thus does not violate TCCWNA. .................................................. 12

     C.    The Court should grant summary judgment that TCCWNA's "clearly established legal right" standard is unconstitutionally vague as applied to rights established by judicial rulings rather than by statutes. ...................................................... 14

     D.    The Court should grant summary judgment that the Exculpatory and Indemnity Clauses do not violate a clearly established legal right of New Jersey consumers, and did not do so over the six-year class period. ...................................................... 21

         1.    The Exculpatory Clause. .............................................. 21

         2.    The Indemnity Clause. ................................................ 23

E.     The Court should grant summary judgment limiting base statutory penalties in this case to $100 for each contract................... 24

F.     The Court should grant summary judgment that any base statutory penalties awarded in this case cannot be enhanced for "egregiousness" or for any other reason............................................ 29

    1.    TCCWNA's statutory penalty provision is facially invalid because it imposes potentially unlimited liability for punitive purposes without articulating any constraining legal standard....................................................... 30

    2.    It would violate due process to enhance TCCWNA's base statutory penalty based on the undisputed facts of this case. ................................................................................. 33

V.    CONCLUSION............................................................................ 37

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arizona v. ASARCO LLC*
   773 F.3d 1050 (9th Cir. 2014) ........................................................................... 32

*BMW of N. Am., Inc. v. Gore*
   517 U.S. 559 (1996) ................................................................................. *passim*

*Bouie v. City of Columbia*
   378 U.S. 347 (1964) ........................................................................................... 31

*Boyko v. American International Group, Inc.*
   No. CIV. 08-2214 RBK/JS, 2012 WL 2132390 (D.N.J. Aug. 2, 2013) ............. 28

*Chicago v. Morales*
   527 U.S. 41 (1999) ............................................................................................. 15

*Conoshenti v. Pub. Serv. Elec. & Gas Co.*
   364 F.3d 135 (3d Cir. 2004) ................................................................................. 9

*Deitrick v. Costa*
   No. 4:06-CV-01556, 2014 WL 5642264 (M.D. Pa. Oct. 28, 2014) ...................... 9

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades*
   *Council*
   485 U.S. 568 (1988) ........................................................................................... 33

*Gomes v. Extra Space Storage, Inc.*
   No. 13-0929 (KSH) (CLW), 2015 WL 1472263 (D.N.J. Mar. 31, 2015) ......... 17

*In re SemCrude, L.P.*
   407 B.R. 140 (Bankr. D. Del. 2009) ................................................................... 26

*In re SemCrude, L.P.*
   No. 08-11525 (BLS), 2012 WL 694505 (Bankr. D. Del. Mar. 1, 2012) ............... 9

*James v. Price*
   602 F. Supp. 843 (D.N.J. 1985) ......................................................................... 17

*Johnson v. United States*
   135 S. Ct. 2551 (2015)................................................................. 19, 33

*Katz v. Live Nation, Inc.*
   No. 09-3740 (MLC), 2010 WL 3522792 (D.N.J. Sept. 2, 2010)........................ 28

*Kolender v. Lawson*
   461 U.S. 352 (1983)..................................................................... 18

*Lankford v. Idaho*
   500 U.S. 110 (1991)..................................................................... 31

*Leff v. Belfor USA Grp., Inc.*
   No. 15-2275 (SRC), 2015 WL 3486883 (D.N.J. June 2, 2015)......................... 27

*Mathews v. Eldridge*
   424 U.S. 319 (1976)..................................................................... 18

*McGarvey v. Penske Auto. Grp., Inc.*
   486 F. App'x 276 (3d Cir. 2012)...................................... 6, 15, 18, 22

*McGarvey v. Penske Auto. Grp.,Inc.*
   No. 08-5610, 2011 WL 1325210 (D.N.J. Mar. 3, 2011).......................... 17, 22

*Miller v. Florida*
   482 U.S. 423 (1987)..................................................................... 31

*People of Three Mile Island ex rel. Three Mile Island Alert, Inc. v. Nuclear*
   *Regulatory Comm'rs*
   747 F.2d 139 (3d Cir. 1984) .......................................................... 17

*Pharm. Sales Consulting Corp. v. Accucorp Packaging, Inc.*
   231 F. App'x 110 (3d Cir. 2007) .................................................... 11

*Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*
   931 F. Supp. 328 (D.N.J. 1996)....................................................... 9

*Shah v. Am. Express. Co.*
   No. 09-00622 (JAP), 2009 WL 3234594 (D.N.J. Sept. 30, 2009) ............... 17, 27

*Smith v. Fid. Consumer Disc. Co.*
   898 F.2d 907 (3d Cir. 1990) .......................................................... 25

*Spence v. ESAB Grp., Inc.*
    623 F.3d 212 (3d Cir. 2010) ......................................................... 19, 20

*State Farm Mut. Auto. Ins. Co. v. Campbell*
    538 U.S. 408 (2003)........................................................... 30, 31, 34, 35

*United Rentals Nw., Inc. v. Yearout Mech., Inc.*
    573 F.3d 997 (10th Cir. 2009) ............................................................ 26

*United States v. E.I. Dupont De Nemours & Co. Inc.*
    432 F.3d 161 (3d Cir. 2005) ............................................................... 30

*Venditto v. Vivint, Inc.*
    No. 14-4357 (JLL)(JAD), 2014 WL 5702901 (D.N.J. Nov. 5, 2014) ............... 17

*Venditto v. Vivint, Inc.*
    No. 14-4357 (JLL) (JAD), 2015 WL 926203 (D.N.J. Mar. 2, 2015)................. 28

*Wash. State Grange v. Wash. State Republican Party*
    552 U.S. 442 (2008)..................................................................... 33, 34

*Watkins v. DineEquity, Inc.*
    591 F. App'x 132 (3d Cir. 2014) ....................................................... 6, 17

*Watkins v. DineEquity, Inc.*
    No. 11-7182, 2012 WL 3776350 (D.N.J. Aug. 29, 2012)................................ 17

*Williams v. Taylor*
    529 U.S. 362 (2000)........................................................................ 19

**State Cases**

*A.J. Tenwood Assocs. v. Orange Senior Citizens Hous. Co.*
    491 A.2d 1280 (N.J. Super. App. Div. 1985)......................................... 12

*Ballinger v. Del. River Port Auth.*
    800 A.2d 97 (N.J. 2002) .................................................................. 16

*DiProspero v. Penn*
    874 A.2d 1039 (N.J. 2005) ............................................................... 27

*Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*
    678 A.2d 699 (N.J. 1996) ...................................... 10, 12, 25, 30, 35

*Hopatcong Fuel On You, LLC v. Hopatcong Borough*
25 N.J. Tax 389 (2010) ................................................................ 26, 27

*Hopkins v. Fox & Lazo Realtors*
625 A.2d 1110 (N.J. 1993) ................................................................ 16

*Hubbard ex rel. Hubbard v. Reed*
774 A.2d 495 (N.J. 2001) ............................................................ 12, 33

*Keenan v. Bd. of Chosen Freeholders of Essex Cty.*
244 A.2d 705 (N.J. Super. Ch. Div. 1968) ........................................ 27

*Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*
25 A.3d 1027 (N.J. 2011) ................................................................ 17

*Manahawkin Convalescent v. O'Neill*
85 A.3d 947 (N.J. 2014) ................................................................ 17

*Mirra v. Holland Am. Line*
751 A.2d 138 (N.J. Super. App. Div. 2000) ...................................... 13

*Muhammad v. Cty. Bank of Rehoboth Beach, Del.*
912 A.2d 88 (N.J. 2006) ................................................................ 11

*N.J. Bank v. Palladino*
339 A.2d 454 (N.J. 1978) ................................................................ 14

*Ribeira & Lourenco Concrete Constr., Inc. v. Jackson Health Care Assocs.*
554 A.2d 1350 (N.J. Super. App. Div. 1989) .................................... 13

*Rodriguez v. Raymours Furniture Co.*
93 A.3d 760 (N.J. Super. App. Div.) ................................................ 13

*Shelton v. Restaurant.com, Inc.*
70 A.3d 544 (N.J. 2013) .............................................................. 6, 27

*State v. Culver*
129 A.2d 715 (N.J. 1957) ................................................................ 16

*State v. Munafo*
120 A.3d 170 (N.J. 2015) ................................................................ 26

*Stelluti v. Casapenn Enters., LLC*
  1 A.3d 678 (N.J. 2010) ................................................................ 21, 22

*United Consumer Financial Services Co. v. Cabo*
  982 A.2d 7 (N.J. Super. App. Div. 2009).................................... 19, 28

*W. Caldwell v. Caldwell*
  138 A.2d 402 (N.J. 1958) .................................................................. 23

*Walters v. YMCA*
  96 A.3d 323 ................................................................................ 21, 22

**Federal Statutes**

28 U.S.C. § 2254(d)(1)......................................................................... 19

**State Statutes**

N.J.S.A. § 2A:14-1 ............................................................................... 12

N.J.S.A. § 56:12–15 .................................................................... *passim*

N.J.S.A. § 56:12–16 ................................................................... 9, 10, 11

N.J.S.A. § 56:12–17 ................................................................... 2, 25, 30

Punitive Damages Liability Act, N.J.S.A. 2A:15-5.9 *et seq*................... 32

**Federal Rules**

FED. R. CIV. P. 12(a)(1)(A)(i)............................................................... 14

Civil Local Rule 56.1 .............................................................................2

**State Rules**

N.J. CT. R. 4:6-1(a).............................................................................. 14

**Treatises**

5 WILLISTON ON CONTRACTS § 12:3, at 690–94 (4th ed. 1998)............... 11

**Other Authorities**

EDWARD BRUNET, JOHN PARRY & MARTIN REDISH, SUMMARY JUDGMENT:
FEDERAL LAW AND PRACTICE § 3:2 (2016) ...........................................................9

Hiroko Tabuchi, "As Takata Costs Soar in Airbag Recall, Files Show Early
Worries on Financial Toll," N.Y. TIMES, April 13, 2016, *available at*
http://www.nytimes.com/2016/04/14/business/as-takata-costs-soar-in-
airbag-recall-files-show-early-worries-on-financial-toll.html?_r=0 ................... 36

New Jersey Model Civil Jury Charge 8.60, *available at*
http://www.judiciary.state.nj.us/civil/charges/8.60.pdf........................................ 32

Merriam-Webster Dictionary, *available at*
http://www.merriam-webster.com/dictionary/emerge ......................................... 16

## I.   INTRODUCTION

The Court observed, in certifying a class and at that stage declining to probe the merits, that Public Storage "is, of course, free to challenge the class members' TCCWNA[1] claims on the merits at summary judgment . . . ."[2] Public Storage now does so. Plaintiff's TCCWNA claims suffer from several dispositive infirmities:

- **Two of the challenged clauses in Public Storage's lease agreement do not violate the statute or court rules upon which plaintiff's challenges are based.** Plaintiff challenges four clauses in Public Storage's form consumer rental agreement. Plaintiff alleges that two of those clauses—the Severability and Limitations Clauses—violate a statute and court rules, respectively. Both challenges fail as a matter of law. The Severability Clause merely provides an interpretive rule that New Jersey court apply to nearly every contract, and thus cannot as a matter of law violate TCCWNA. This Court's motion-to-dismiss ruling otherwise was, respectfully, mistaken. The Limitations Clause is more generous than the animating court rules on which it is founded, and thus logically cannot violate TCCWNA. *See* Parts IV.A., B., below.

- **TCCWNA's "clearly established legal right or duty" standard is unconstitutionally vague as applied to rights established by judicial rulings.** The Third Circuit has held that—even as applied to rights spelled out by statute—TCCWNA's "clearly established legal right" test is "not clear and unambiguous." This acknowledged lack of clarity is magnified where the allegedly infringed right is grounded in judicial decisions, because ascertaining whether and when such a right became "clearly established" is far more complex. The resulting vagueness is especially unacceptable in a statute that facially appears to impose unlimited civil penalties even where the challenged conduct caused no one any actual harm. *See* Part IV.C., below. And substantively, plaintiff's challenges to the Exculpatory and Indemnity Clauses fail. *See* Part IV.D., below.

---

[1] "TCCWNA" refers to the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act.

[2] Docket Entry ("D.E.") 133 at 19.

1

- **On the undisputed facts, base statutory penalties[3] in this case are limited to $100 for each violative *contract* entered into by a class member—not each violative *provision* within such a contract.** TCCWNA does not authorize courts to enhance the base statutory penalty of $100 by adopting a "per-provision" penalty theory. *See* Part IV.E., below.

- **On the undisputed facts, any base statutory penalties awarded in this case cannot be enhanced for "egregiousness" or for any other reason.** To the extent that TCCWNA authorizes such enhancements, its statutory penalty provision is facially invalid because it appears to impose potentially unlimited liability for punitive purposes without articulating any constraining legal standard. Moreover, on the undisputed facts of this case— where Public Storage did nothing to meet the constitutional standard for "reprehensible" conduct and almost no one suffered any actual harm—it would violate due process to enhance TCCWNA's base statutory penalty. *See* Part IV.F., below.

By omitting any claim for actual damages as to the class members, plaintiff Jackeline Martinez-Santiago has conceded (as she must) that virtually no class member was harmed by the four contract clauses she targets. Yet plaintiff could recover up to $64 million in statutory penalties, and possibly much more, on behalf of approximately 160,000 class members, nearly all of whom suffered no harm and rented their storage units without incident or complaint. UMF ¶¶ 1, 2.[4]

---

[3] "Base statutory penalty" refers to the $100 statutory penalty authorized by N.J.S.A. § 56:12–17 before enhancement for "egregiousness" or for any other reason. *See* Part IV.B., below (discussing purported "egregiousness" enhancements).

[4] "UMF" refers to an Undisputed Material Fact in the accompanying Statement of Material Facts submitted pursuant to Civil Local Rule 56.1. In December 2015, Public Storage produced a class list comprising 154,760 class members. UMF ¶¶ 1, 2. The class list is Bates-stamped as PS001495. UMF ¶ 1. Then in February 2016,

There are too many things wrong with this picture. The Court should grant Public Storage summary judgment.

## II.     UNDISPUTED FACTS

### A.     Plaintiff's former boyfriend sued Public Storage after he allegedly slipped on ice in front of her storage unit.

Public Storage develops, owns, and operates self-storage facilities in 38 states, including New Jersey. It leases storage space to individuals and businesses for a monthly fee. Public Storage customers are responsible for moving their own items into and out of their storage units. Once a customer has signed a rental agreement, the customer may access his or her storage unit—unsupervised—at any time during working hours. UMF ¶¶ 4, 5, 6.

On February 7, 2012, plaintiff signed a rental agreement with Public Storage to rent a storage unit in Sicklerville, New Jersey. UMF ¶ 7. She listed her then-boyfriend, Orlando Colon, as an "Alternate Contact" on the rental agreement. UMF ¶ 8. Five days later, Mr. Colon allegedly slipped and fell on a patch of ice directly in front of plaintiff's storage unit while he was there to move heavy objects into the unit. UMF ¶ 9.

---

the Court ordered the class administrator to send a class-action notice, using the class list for class members' mailing addresses. UMF ¶ 3.

Mr. Colon, represented by the same lawyers representing plaintiff in this case, subsequently filed a Superior Court complaint in which he alleged that Public Storage caused his injuries by negligently failing to maintain the driveway in front of plaintiff's storage unit ("the State Court Action"). UMF ¶ 10.

Public Storage had reason to question Mr. Colon's claim, because Mr. Colon was later seen riding a bicycle onsite at Public Storage (even though he claimed to have suffered "serious and debilitating injuries" from the fall). UMF ¶ 12.

Based in part on its suspicions regarding Mr. Colon's claims, Public Storage responded to his personal-injury complaint by asserting a litany of affirmative defenses. Attempting to preserve all defenses it might have, Public Storage also filed a third-party complaint for indemnification against plaintiff because she had invited Mr. Colon to the unit and he was injured in front of it. UMF ¶ 13. Plaintiff did not respond to the third-party complaint and Public Storage obtained a default judgment against her that it never enforced. UMF ¶¶ 14, 15. Public Storage later settled the underlying lawsuit brought by Mr. Colon. UMF ¶ 16.

## B.     Following the State Court Action, plaintiff sued Public Storage.

Public Storage's third-party complaint in the State Court Action spawned the TCCWNA class claim that plaintiff asserts here. Shortly after Public Storage settled the underlying dispute with Mr. Colon, plaintiff appeared for the first time in the State Court Action, where she moved to vacate the default judgment,

4

answered Public Storage's third-party complaint, and asserted a class-action counterclaim under TCCWNA challenging the same provisions of the Public Storage rental agreement that she challenges here. UMF ¶ 17. Public Storage, having resolved the dispute with Mr. Colon, voluntarily dismissed its third-party complaint against plaintiff instead of litigating it. UMF ¶ 18.

### C. Plaintiff refiled her TCCWNA class claim, seeking to represent tens of thousands of consumers.

A few months after Public Storage dismissed its third-party complaint against plaintiff, this action began when plaintiff re-filed her TCCWNA in state court. Public Storage removed this action thereafter. UMF ¶¶ 19, 21. Plaintiff then sought certification of a statewide class of "all natural persons who since September 7, 2007 entered into lease agreements with Defendant in the State of New Jersey." UMF ¶ 22.

Plaintiff alleged that four provisions of the Public Storage rental agreements in effect during the class period violated TCCWNA.[5] TCCWNA provides redress for individual lessees who prove that a lessor violated a clearly established legal right as established by State or Federal law:

---

[5] In addition to her individual and class claims under TCCWNA, plaintiff also pleaded an individual claim under the New Jersey Consumer Fraud Act ("CFA") and an individual claim for "Declaratory and Injunctive Relief." UMF ¶ 20. But she did not move to certify a class asserting either of those claims, and she later dismissed her CFA claim. UMF ¶ 23.

> No . . . lessor . . . shall in the course of his business . . . enter into any written consumer contract . . . which includes any provision that violates any *clearly established legal right* of a consumer or responsibility of a . . . lessor . . . as established by State or Federal law at the time . . . [that] the consumer contract is signed . . . . Consumer means any individual who . . . leases . . . any . . . property . . . which is primarily for personal, family or household purposes.

N.J.S.A. § 56:12–15 (emphases added).

TCCWNA itself does not establish any substantive rights or responsibilities; it merely provides a private right of action for enforcing violations of "clearly established" legal rights set forth in other laws. *Shelton v. Restaurant.com, Inc.*, 70 A.3d 544, 549 (N.J. 2013); *Watkins v. DineEquity, Inc.*, 591 F. App'x 132, 134 (3d Cir. 2014). As the Third Circuit has observed, the statute "does not indicate in what circumstances a consumer's legal right is established, nor does it define what it means for the right to be *clearly* established." *McGarvey v. Penske Auto. Grp., Inc.*, 486 F. App'x 276, 280 (3d Cir. 2012) (emphasis in original).

Plaintiff challenges the following provisions found in her 2012 rental agreement:

- **"The Exculpatory Clause."** Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ('Loss') from any cause, including without limitation, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law. UMF ¶¶ 24, 25.

6

- **"The Indemnity Clause."** Occupant shall indemnify and hold Owner and Owner's Agents harmless from any loss incurred by Owner and Owner's Agents in any way arising out of Occupant's use of the Premises or the Property including, but not limited to, claims of injury or loss by Occupant's visitors or invitees. UMF ¶¶ 24, 26.

- **"The Limitations Clause."** Any claim, demand, or right of Occupant, and any defense to a suit against Occupant, that arises out of this Lease/Rental Agreement, or the storage of property hereunder (including, without limitation, claims for loss or damage to stored property) shall be barred unless Occupant commences an action (or, in the case of a defense, interposes such defense in a legal proceeding) within twelve (12) months after the date of the act, omission, inaction or other event that gave rise to such claim, demand, right or defense. UMF ¶¶ 24, 27.

- **"The Severability Clause."** This Lease/Rental Agreement shall be governed and construed in accordance with the laws of the state in which the Premises are located. If any provision of this Lease/Rental Agreement shall be invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement. UMF ¶¶ 24, 28.

Plaintiff alleges that the Exculpatory Clause and the Indemnity Clause violate TCCWNA because they are unenforceable under New Jersey common law. She alleges that the Limitations Clause, as applied to defenses only, violates the Federal Rules of Civil Procedure and the New Jersey Court Rules. And she alleges that the Severability Clause violates a provision of TCCWNA providing that no contract "shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey."

Plaintiff seeks a statutory penalty of "at least $100" for every one of the approximately 160,000 New Jersey consumers who rented storage space from Public Storage during the class period. UMF ¶ 29.

> ### D. The Court certified a class through October 2014 but recognized Public Storage's ability to challenge plaintiff's class claims on the merits.

On November 16, 2015, the Court certified a class of "[a]ll natural persons who on or after September 24, 2007 through October 21, 2014 entered into lease agreements with Defendant in the State of New Jersey." UMF ¶ 30. The Court thus limited the class to tenants who contracted with Public Storage before October 21, 2014, the date on which Public Storage amended its standard-form lease. UMF ¶¶ 30, 31. The Court identified the class claims as being whether the four contract provisions quoted above violate TCCWNA. UMF ¶ 32. The Court's accompanying opinion also noted that "Defendant is, of course, free to challenge the class members' TCCWNA claims on the merits at summary judgment." UMF ¶ 33.

## III.   LEGAL STANDARD

Public Storage seeks summary judgment as to plaintiff's entire TCCWNA claim, but in doing so, mounts separate arguments against liability and the statutory penalty. The first sentence of Rule 56(a) states that "[a] party may move for summary judgment, identifying each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought." FED. R. CIV. P. 56(a)

(emphases added). This sentence was added as part of the 2010 amendments to the Rule; and ever since, "the argument that summary judgment is not proper for a portion of a single claim has lost its pluck." *In re SemCrude, L.P.*, No. 08-11525 (BLS), 2012 WL 694505, at *3 (Bankr. D. Del. Mar. 1, 2012). Partial summary judgment therefore is available on both the availability and the amount of statutory penalties, as well as of course liability.[6]

## IV.   ARGUMENT

### A.   The Court should grant summary judgment that the Severability Clause does not violate TCCWNA.

As her basis for attacking the Severability Clause, plaintiff mistakenly invokes N.J.S.A. § 56:12–16. That provision states in part that "[n]o consumer contract, notice or sign *shall **state** that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions* without specifying which

---

[6] *See, e.g., Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (discussing the standard for summary judgment generally); *Deitrick v. Costa*, No. 4:06-CV-01556, 2014 WL 5642264, at *4 (M.D. Pa. Oct. 28, 2014) (entertaining motion for partial summary judgment as to repair or replacement value of jewelry), *report and recommendation adopted*, No. 4:06-CV-01556, 2015 WL 1605702 (M.D. Pa. Apr. 9, 2015); *Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*, 931 F. Supp. 328, 336, 338 (D.N.J. 1996) (granting partial summary judgment barring recovery of bad faith damages and punitive damages). Even if the court denies partial summary judgment, it still may "advance efficient resolution of the case" by entering an order under Rule 56(f) stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and then treating the fact as established in the case. EDWARD BRUNET, JOHN PARRY & MARTIN REDISH, SUMMARY JUDGMENT: FEDERAL LAW AND PRACTICE § 3:2 (2016). If the Court denies partial summary judgment, we ask that it enter an order establishing Public Storage's Statement of Material Facts Not in Dispute, ¶¶ 1–33.

provisions are or are not void, unenforceable or inapplicable within the State of New Jersey . . . ." *Id.* (emphases added). That claim fails for three reasons.

**First**, TCCWNA § 56:12–16 has nothing to do with severability clauses because a severability clause does not do what § 56:12–16 prohibits. That is, a severability clause does not "***state***" that any contract provision "is or may be void, unenforceable or inapplicable in some jurisdictions." Instead, a severability clause specifies *what will happen to the rest of the contract **if*** any of its provisions are judicially invalidated in the future. By way of analogy, a will does not *state* that the testator is dead (of course—how could he sign the will if he were?); rather, it specifies what *will happen* to the testator's estate when he ***has*** died. A fire-insurance policy does not ***state*** that the insured home has burned down (of course—how could you insure an already-burned home against fire?); rather, it specifies what *will happen **if*** that home burns down. Public Storage's Severability Clause likewise provides that, "***[i]f*** any provision of this Lease/Rental Agreement shall be [found] invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement." UMF ¶ 28. TCCWNA § 56:12–16 thus regulates a type of *statement* that a severability clause, by its very nature, *never makes* (just as a will never states

10

that the testator is dead). Section 56:12–16 says nothing whatsoever about severability clauses in general, or about the Severability Clause in particular.

**Second**, the Severability Clause cannot violate TCCWNA because the Clause merely describes a default rule of severability that New Jersey courts would supply *even if there were no Severability Clause*. Under New Jersey law, "if a contract contains an illegal provision [that] is severable, courts will enforce the remainder of the contract after excising the illegal portion, so long as the prohibited and valid provisions are severable." *Muhammad v. Cty. Bank of Rehoboth Beach, Del.*, 912 A.2d 88, 103 (N.J. 2006) (quoting *Schuran, Inc. v. Walnut Hill Assocs.*, 606 A.2d 885, 888 (N.J. Super. Law Div. 1991)); *see also Pharm. Sales Consulting Corp. v. Accucorp Packaging, Inc.*, 231 F. App'x 110, 116 (3d Cir. 2007); 5 WILLISTON ON CONTRACTS § 12:3, at 690–94 (4th ed. 1998). A provision that merely restates existing law cannot violate anyone's clearly established legal rights.

**Third**, from a consumer-protection standpoint, it would be nonsensical for a Legislature to outlaw severability clauses. The very point of such clauses is to preserve whenever possible a beneficial contractual relationship *in the interest of both parties*, even if the contract is partially invalidated. Severability clauses are *good*. That is why New Jersey courts read them into every contract. There is no

reason to suppose that the Legislature intended to overrule the decisions of those courts by enacting TCCWNA.

Statutes should be read to carry out the Legislature's intent and to prevent absurdity. *See Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 498 (N.J. 2001). Those interpretative canons will be violated if the Court fails to grant summary judgment against plaintiff's attack on the Severability Clause.

### B. The Court should grant summary judgment that the Limitations Clause is more generous than the underlying rules and thus does not violate TCCWNA.

The Federal Rules of Civil Procedure and the New Jersey Court Rules "dictate the timing to interpose and waive defenses," but neither of them prohibits a contractually shortened limitations period on defenses (or even claims). Indeed, New Jersey courts enforce "reasonable" contractually shortened limitations periods for bringing affirmative claims. *See Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 678 A.2d 699, 704 (N.J. 1996) (upholding surety-bond clause shortening limitations period from six years to one); *A.J. Tenwood Assocs. v. Orange Senior Citizens Hous. Co.*, 491 A.2d 1280, 1284 (N.J. Super. App. Div. 1985) (upholding a one-year limitation provision and stating that six-year limitations period in N.J.S.A. § 2A:14-1 "may be waived by express agreement of the parties").

12

Case law provides no uniform definition of "reasonable" and instead analyzes the validity of a contractually shortened limitations period by "considering the factual circumstances in a particular case." *Rodriguez v. Raymours Furniture Co.*, 93 A.3d 760, 769 (N.J. Super. App. Div.), *granting cert.*, 103 A.3d 267 (N.J. 2014).[7] Plaintiff cannot simply presume that the Limitations Clause violates an unidentified clearly established legal right. She must identify what that right is and when it came into existence, and must prove that all class members may invoke it.

But plaintiff has not shown how the Limitations Clause violates that right, the Federal Rules of Civil Procedure, or the New Jersey Court Rules. This Court has held that it is "plainly unreasonable" to interpret the Limitations Clause to mean that the one-year period begins on the date the rental agreement is signed. D.E. 24 at 12. If so, the only reasonable way to read the clause is to find that the one-year limitation on defenses is triggered by the filing of a complaint or amended complaint that gives rise to the defense to be asserted. This *reasonable* interpretation would not conflict with the federal or New Jersey rules because

---

[7] New Jersey courts have upheld contractually shortened limitations period in a variety of circumstances. *See, e.g., Ribeira & Lourenco Concrete Constr., Inc. v. Jackson Health Care Assocs.*, 554 A.2d 1350, 1353 (N.J. Super. App. Div. 1989), *aff'd*, 571 A.2d 1311 (N.J. 1990) (upholding one-year period in bond contract); *Rodriguez*, 93 A.3d at 769 (upholding six-month period in employment contract); *Mirra v. Holland Am. Line*, 751 A.2d 138, 140 (N.J. Super. App. Div. 2000) (upholding 180-day period in cruise-ticket contract).

13

those rules require a defendant to respond to a complaint or amended complaint long before the Limitations Clause would expire. *See* FED. R. CIV. P. 12(a)(1)(A)(i) (requiring that responsive pleading be filed within 21 days of service of summons and complaint); N.J. CT. R. 4:6-1(a) (requiring same within 35 days of service). And this reasonable interpretation is consistent with New Jersey precedent requiring that, whenever possible, contract provisions be interpreted so as to render them legal. *See N.J. Bank v. Palladino*, 339 A.2d 454, 461 (N.J. 1978).

The Court therefore should grant summary judgment that the Limitations Clause is more generous than the underlying rules and cannot violate TCCWNA.

**C.   The Court should grant summary judgment that TCCWNA's "clearly established legal right" standard is unconstitutionally vague as applied to rights established by judicial rulings rather than by statutes.**

As discussed below, TCCWNA provides defendants no notice of "the severity of the penalty that [the] State may impose." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 560 (1996). But that is not TCCWNA's only, or even its worst, due-process flaw. More fundamentally, TCCWNA provides no adequate notice of "the *conduct* to be punished" in cases where the challenged contract provision is said to violate a right "clearly established" *by judicial rulings* rather than by statutes. TCCWNA thus flouts the most "[e]lementary notions of fairness enshrined in our constitutional jurisprudence . . . ." *Id*.

14

Due process is violated when a statute "fails to give the ordinary citizen adequate notice of what is forbidden and what is permitted." *Chicago v. Morales*, 527 U.S. 41, 42 (1999). TCCWNA's drafters evidently thought they had licked that problem by limiting liability to contracts that violate a "clearly established legal right of a consumer . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed." N.J.S.A. § 56:12–15.

But the Third Circuit has held that, even as applied to consumers' *statutory* rights, TCCWNA's "'clearly established legal right' [test] is not clear and unambiguous. The phrase does not indicate in what circumstances a consumer's legal right is established, nor does it define what it means for the right to be *clearly* established." *McGarvey*, 486 F. App'x at 280 (emphasis in original) (holding that allegedly infringed right was not "clearly established" under the Magnuson-Moss Warranty Act).[8]

As applied to rights established by judicial decisions rather than by statutes, TCCWNA's "clearly established legal right" test is even *less* "clear and unambiguous." *McGarvey*, 486 F. App'x at 280. This Court attempted to supply

---

[8] In *McGarvey*, the Third Circuit was able to conclude that the allegedly infringed right was not clearly established under the Magnuson-Moss Warranty Act "[e]ven without [judicially] defining the specific definition of 'clearly established legal right.'" *Id.* But the *McGarvey* court never considered the due-process implications of imposing—without guidance from any definition of "clearly established legal right"—potentially limitless civil liability for violating a right *established by case law.*

some clarity by positing that a judicially created legal right becomes clearly established when those rights "emerged." D.E. 133 at 18–19 n.11. We respectfully disagree. A judicially created right may "emerge"—meaning "become known or apparent" or "come out into view"[9]—long before it becomes "clearly established." To hold otherwise would ignore the modifier "clearly." And without an anchor in statutory language, judge-made law is simply harder to pin down. *See* Part IV.D.1., below. Unlike a statute that becomes effective on a date certain and categorically prohibits certain conduct, the common law develops over time to address different factual scenarios as they arise. Thus, "[t]he common law, unlike statutory law, is 'flexible' and 'adapts itself to varying conditions.'" *Ballinger v. Del. River Port Auth.*, 800 A.2d 97, 104 (N.J. 2002) (quoting *Funk v. United States*, 290 U.S. 371, 383 (1933)); *see also Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1114 (N.J. 1993). Indeed, one of the great virtues of the common law is "its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court." *State v. Culver*, 129 A.2d 715, 721 (N.J. 1957).

Applying common-law precedent from one case to another is difficult because it necessarily "involves the determination of how close a factual correspondence is required between applicable precedents and the case at issue," as the Third Circuit explained in analyzing the phrase "clearly established" in other

---

[9] *See* http://www.merriam-webster.com/dictionary/emerge.

contexts. *People of Three Mile Island ex rel. Three Mile Island Alert, Inc. v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144 (3d Cir. 1984). The inherent flexibility and fact-specific nature of the common law has led courts to conclude that "[p]recisely what is meant by 'clearly established' is an elusive question." *James v. Price*, 602 F. Supp. 843, 846 (D.N.J. 1985) (analyzing qualified-immunity defense to claim brought under 42 U.S.C. § 1983).[10]

---

[10] Given the difficulty of determining whether and when judge-made rights become "clearly established," it is unsurprising that all prior TCCWNA cases have involved contract provisions that allegedly violated a New Jersey or federal *statute*. *See, e.g., Shah v. Am. Express. Co.*, No. 09-00622 (JAP), 2009 WL 3234594, at *2 (D.N.J. Sept. 30, 2009) (alleged violations of Truth in Lending Act); *Watkins v. DineEquity, Inc.*, No. 11-7182 (JBS/AMD), 2012 WL 3776350, at *7 (D.N.J. Aug. 29, 2012) (alleged violations of Consumer Fraud Act); *McGarvey v. Penske Auto. Grp.,Inc.*, No. 08-5610 (JBS/AMD), 2011 WL 1325210, at *4 (D.N.J. Mar. 3, 2011) *aff'd*, 486 F. App'x 276 (3d Cir. 2012) (alleged violations of Magnuson-Moss Warranty Act); *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 957–58 (N.J. 2014) (alleged violations of Nursing Home Act); *Venditto v. Vivint, Inc.*, No. 14-4357 (JLL)(JAD), 2014 WL 5702901, at *3–7 (D.N.J. Nov. 5, 2014) (alleged violations of the Retail Installment Sales Act, Door-to-Door Retail Installment Sales Act, and Home Improvement Practices Regulations). Indeed, many courts appear to assume that, to be "clearly established," the legal right or responsibility *must* be found in a New Jersey or federal statute, and that the contract must violate that statute. *See Watkins*, 591 F. App'x at 134 ("The rights and responsibilities to be enforced by TCCWNA are drawn from other *legislation*." (emphasis added)); *see also Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1044 (N.J. 2011) ("The purpose of the TCCWNA, N.J.S.A. § 56:12–15, is to prevent deceptive practices in consumer contracts by prohibiting the use of *illegal* terms or warranties in consumer contracts." (emphasis added)); *but see Gomes v. Extra Space Storage, Inc.*, No. 13-0929 (KSH) (CLW), 2015 WL 1472263, at *10 (D.N.J. Mar. 31, 2015) (stating in *dicta* that,"[w]hile [TCCWNA] may not expressly define 'clearly established legal rights,' it sufficiently informs the public that those rights are provided for by other statutory or common law.").

Thus, the lack of a clearly established definition of the phrase "clearly established legal right" is no small problem when the allegedly infringed right arose from judicial decisions. And that problem is exacerbated by the unconstrained nature of TCCWNA's statutory penalty. *See* Part XX.B.1. below. TCCWNA appears to authorize unlimited statutory penalties even when a plaintiff cannot prove that she suffered any actual damages. Yet TCCWNA provides no meaningful guidance as to the *conduct* that may trigger those penalties. The higher the potential stakes, the more due-process protections the law should provide. Courts normally consider the magnitude of the potential deprivation of rights when identifying what due process requires. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, the magnitude of the potential statutory penalties is unlimited, yet the relevant due-process safeguard—statutory language clearly defining the prohibited conduct—is, in the Third Circuit's view, completely absent. *See McGarvey*, 486 F. App'x at 280. From a due-process perspective, that is unacceptable.[11]

---

[11] It is no longer the law that a statute "should not be held unconstitutionally vague on its face unless it is vague in all of its possible applications." *Kolender v. Lawson*, 461 U.S. 352, 370–71 (1983). The Supreme Court recently explained:

> [A]lthough statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp. For instance, we have deemed a law prohibiting grocers from charging an "unjust or unreasonable rate" void for vagueness—even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. We have similarly deemed void for

By contrast, the federal Anti-Terrorism and Effective Death Penalty Act ("AEDPA") avoids TCCWNA's infirmities by "limiting the source of doctrine on which a . . . court may rely" when determining whether a "clearly established" right was violated. *Williams v. Taylor*, 529 U.S. 362, 381 (2000). AEDPA thus requires a habeas petitioner challenging a state court's legal ruling to establish that the ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphases added).

Likewise, when determining the content of state law, federal courts exercising diversity jurisdiction are instructed to employ a methodology that specifies a hierarchy of sources, with controlling decisions from the state's highest court representing "the authoritative source." *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 216–17 (3d Cir. 2010). Absent such controlling precedent, a federal court must *predict* how the state's highest court would rule if faced with the same issue.

---

vagueness a law prohibiting people on sidewalks from "conduct[ing] themselves in a manner annoying to persons passing by"—even though spitting in someone's face would surely be annoying.

*Johnson v. United States*, 135 S. Ct. 2551, 2560–61 (2015) (emphasis in original) (citations omitted). At a minimum, *Johnson* casts doubt on *United Consumer Financial Services Co. v. Cabo*, 982 A.2d 7 (N.J. Super. App. Div. 2009), which had reasoned that "because TCCWNA can be applied in this circumstance, it is not unconstitutionally vague in all of its applications." *Id.* at 23. *Johnson* rejects that reasoning, and to the extent that any doubt exists on this point, it only goes to illustrate the difficulty inherent in ascertaining judge-made rights.

In making that prediction, the court must "look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue, as well as to analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Id.* (internal quotations omitted).

Thus, it *is* possible to devise reasonably clear and unambiguous tests for determining when a legal right grounded in judicial decisions is "clearly established"; but TCCWNA's drafters didn't come close. In terms of clarity and precision, TCCWNA's sweeping reference to "State or Federal law at the time the offer is made or the consumer contract is signed"[12] falls far short of the standards articulated in AEDPA and in diversity-jurisdiction cases. TCCWNA thus leaves courts and juries rudderless and denies citizens of fair notice as to how to conform their conduct to law.

The Court therefore should grant summary judgment that TCCWNA's "clearly established legal right" standard is unconstitutionally vague as applied to rights that are established by judicial rulings rather than by statutes.

---

[12] N.J.S.A. § 56:12–15.

**D.    The Court should grant summary judgment that the Exculpatory and Indemnity Clauses do not violate a clearly established legal right of New Jersey consumers, and did not do so over the six-year class period.**

**1.    The Exculpatory Clause.**

The Exculpatory Clause does not violate a "clearly established legal right" of the class. No New Jersey or Federal statute prohibits exculpatory clauses in consumer contracts. Thus, plaintiff alleges only that the Exculpatory Clause violates public policy, as expressed in the common law, because Public Storage was under an alleged duty to maintain the premises for its business invitees. *See, e.g.*, D.E. 16-6 at 16. But "[t]he mere existence of a common law duty does not mean that there is no room for an exculpatory agreement." *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 690–91 (N.J. 2010). Thus, the issue in this case is *not* whether there exists a default duty under the common law for businesses to maintain their premises for invitees, but, rather, whether the Exculpatory Clause in Public Storage's contracts violated a "clearly established legal right" of the class. *See* N.J.S.A. § 56:12–15.

Plaintiff has identified no judicial decision categorically prohibiting exculpatory clauses in consumer contracts. Nor could she, because the New Jersey Supreme Court made plain in its *Stelluti* decision that there was no "clearly established legal right" prohibiting exculpatory clauses. *See* 1 A.3d 678; *see also Walters v. YMCA*, 96 A.3d 323, 328 n.2 (N.J. Super. App. Div. 2014) ("Every case

in which one party seeks to enforce contractually bargained-for exculpatory protection from a certain kind of liability must be examined and decided based on the particular circumstances of the case."). As this Court has noted in another TCCWNA case, "[t]he distinction between violating a legal right and violating a clearly established legal right must lie in [] how apparent the existence of the right is to the parties. An ambiguous statute no more clearly establishes a legal right than does a single thread of disputed precedent." *McGarvey v. Penske Auto. Grp., Inc.*, No. CIV. 08-5610 JBS/AMD, 2011 WL 1325210, *4 (D.N.J. Mar. 31, 2011).

In this case, the common-law right in question is even less clearly established than the *statutory* right at issue in *McGarvey*. The enforceability of exculpatory clauses in consumer contracts is a difficult question that depends on the facts and circumstances of the individual against whom enforcement is sought. *See Walters*, 96 A.3d at 328 n.2. The *Stelluti* Court in 2010 expressly declined to address whether the exculpatory clause at issue in that case could extend beyond a health club's facilities and exercise equipment to injuries "that occur on the club's sidewalks or parking lot that are common to any commercial enterprise that has business invitees." 1 A.3d at 695. And, this Court has noted that *Stelluti* and other New Jersey cases "*do not answer the question* of whether the standard duty of care owed to business invitees may be waived in consumer contracts." D.E. 24 at 27–28

(emphases added). Accordingly, plaintiff has not shown and cannot show that the Exculpatory Clause violates a "clearly established legal right" of the class.

### 2. The Indemnity Clause.

Plaintiff's TCCWNA challenge to the Indemnity Clause fails for the same reasons as does her challenge to the Exculpatory Clause: she has failed to prove the existence of a "clearly established legal right" that the Indemnity Clause violates.

Plaintiff has suggested that the Indemnity Clause violates public policy as expressed in judicial decisions because, according to her, that Clause requires a consumer to indemnify Public Storage for injuries or losses caused by Public Storage's alleged recklessness, intentional act, or even fraud. But Plaintiff's interpretation of the Indemnity Clause is incorrect because it reads that Clause in isolation and divorces it from the limiting language of the Exculpatory Clause, which appears in the same paragraph as and immediately precedes the Indemnity Clause. UMF ¶ 28. Specific clauses or terms in a contract must be read together with the entire contract and interpreted in light of its "general purpose." *W. Caldwell v. Caldwell*, 138 A.2d 402, 410 (N.J. 1958). "Disproportionate emphasis upon a word or clause or a single provision does not serve the object of interpretation." *Id.*

Accordingly, the Indemnity Clause must be read in conjunction with the Exculpatory Clause, which expressly excludes from its coverage losses caused by Public Storage's "fraud, willful injury or willful violation of law." UMF ¶ 25. When read together with the Exculpatory Clause's exclusions, the Indemnity Clause does *not* extent do cover Public Storage's recklessness, intentional acts, or fraud, as plaintiff incorrectly has asserted. And there is no evidence that Public Storage has ever interpreted the Indemnity Clause that way.

For those reasons, the Court should grant summary judgment that the exculpatory and indemnity clauses do not violate a clearly established legal right of New Jersey consumers, and did not do so over the six-year class period.

### E.   The Court should grant summary judgment limiting base statutory penalties in this case to $100 for each contract.

Plaintiff claims only statutory TCCWNA penalties, not actual damages, on behalf of the class.[13] But to the extent that she seeks to inflate those penalties by contending that TCCWNA sets a base penalty of $100 *per violative contract provision*, she must fail.[14] Indeed, if the factfinder agrees that each contract contains four violative provisions, a "per-provision" theory would result in

---

[13] D.E. 10 ¶ 60; *see also* D.E. 133 at 28.

[14] At the October 23, 2014 scheduling conference, plaintiff's counsel represented to the Court that "based on the group, the egregious nature of the language of the release . . . that an appropriate award of $500 per lease was appropriate." D.E. 50 at 24:20–25:5. At the time, Plaintiff alleged that five separate clauses violated TCCWNA.

approximately 160,000 class members' receiving at least $400 each, for a class-wide minimum of nearly $64 million in statutory penalties.

The Court should reject such a novel per-provision theory for at least three reasons.

*First*, and most important, TCCWNA does not authorize a base statutory penalty of $100 per violative *contract provision*. *See* N.J.S.A. § 56:12–17. TCCWNA's language provides "the starting point" for discerning legislative intent. *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 907, 909–10 (3d Cir. 1990). There is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *Id.* at 910.

Here, the critical language is that of N.J.S.A. § 56:12–17, which states that "[a]ny person who violates the provisions of [TCCWNA] shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." This language imposes a base statutory penalty of $100 on "any person" who violates TCCWNA. But there is no basis to *multiply* that base penalty by the number of provisions in the contract that have been found to violate the consumer's clearly established legal rights. That language is simply not there. If TCCWNA's drafters had wanted to enact a *per-provision* base penalty instead, they could have written the following:

25

> Any person who violates[15] this act shall be liable to the aggrieved consumer for a civil penalty of not less than $100.00 *for each provision found to be prohibited by N.J.S.A. § 56:12–15 or § 56:12–16* or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs.

But the drafters did not employ that language or anything like it. Under New Jersey law,[16] the Court's "function is not to 'rewrite a plainly-written enactment of the Legislature or [to] presume that the Legislature intended something other than that expressed by way of the plain language.'" *State ex rel. J.S.*, 998 A.2d 409, 418 (N.J. 2010) (court's alterations and citation omitted). Rather, "[i]t is a general rule that *what the Legislature omits the courts will not supply*. Courts may supply terms omitted by the Legislature only where it is abundantly clear that the addition is necessary to manifest the Legislature's intent. But where the path is not clear, then the courts should refrain from usurping the legislative function." *Hopatcong Fuel On You, LLC v. Hopatcong Borough*, 25 N.J. Tax 389, 394–95 (2010) (emphases added) (citations and internal quotation marks omitted); *see also State v. Munafo*,

---

[15] We omit the superfluous phrase "provisions of [this act]," which invites confusion with the contractual "provisions" that TCCWNA prohibits.

[16] "When interpreting a state statute in a diversity case, [federal] court[s] must apply state rules of statutory construction." *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 573 F.3d 997, 1001 (10th Cir. 2009). Likewise, "[w]hen there are no reported decisions by a state court interpreting a state statute, a federal court must look to principles of statutory construction under state law and make a reasonable determination how the state's highest court would construe the statute." *In re SemCrude, L.P.*, 407 B.R. 140, 150 (Bankr. D. Del. 2009).

26

120 A.3d 170, 175 (N.J. 2015); *DiProspero v. Penn*, 874 A.2d 1039, 1048 (N.J.

2005); *Keenan v. Bd. of Chosen Freeholders of Essex Cty.*, 244 A.2d 705, 713

(N.J. Super. Ch. Div. 1968), *aff'd*, 255 A.2d 786 (N.J. Super. App. Div. 1969).

There is no evidence, either intrinsic or extrinsic to N.J.S.A. § 56:12–15, that

reading in "per-provision" language is "necessary to manifest the Legislature's

intent."[17] *Hopatcong Fuel*, 25 N.J. Tax at 394. Accordingly, the Court should

"refrain from usurping the legislative function." *Id.*; *see also Shah v. Am. Express

Co.*, No. 09-00622 (JAP), 2009 WL 3234594, at *3 (D.N.J. Sept. 30, 2009)

(strictly interpreting "aggrieved consumer" under TCCWNA based on the statute's

plain language).

***Second***, and relatedly, no court has ever found that TCCWNA authorizes

base statutory penalties on a per-provision basis. Typically, plaintiffs seek $100 per

contract under TCCWNA. *See Leff v. Belfor USA Grp., Inc.*, No. 15-2275 (SRC),

2015 WL 3486883, at *1 (D.N.J. June 2, 2015). In *Shelton v. Restaurant.com, Inc.*,

70 A.3d 544, 548 (N.J. 2013), for example, the plaintiffs alleged TCCWNA

violations based on several provisions of a restaurant certificate, but sought only

---

[17] TCCWNA's legislative history makes no mention of a per-provision theory; nor does it in any way suggest that inferring per-provision language judicially is "necessary to manifest the Legislature's intent." *Hopatcong Fuel*, 25 N.J. Tax at 394; *see* Assemb. B. 1660, 199th Leg., 1st Sess. (N.J.) (as reported by Assemb. Commerce, Indus. & Professions Comm., June 9, 1980); Assemb. B. 1660, 199th Leg., 1st Sess. (N.J.) (as reported by Assemb. Commerce, Indus. & Professions Comm., May 1, 1980); *cf. Shah*, 2009 WL 3234594, at *3 (finding no legislative intent to support broad interpretation of TCCWNA term "aggrieved consumer").

$100 for each class member as to statutory penalties.[18] Other TCCWNA cases also involved plaintiffs either seeking or being awarded $100 in statutory penalties on a per-contract basis. *See Venditto v. Vivint, Inc.*, No. 14-4357 (JLL) (JAD), 2015 WL 926203, at *7 (D.N.J. Mar. 2, 2015); *Katz v. Live Nation, Inc.*, No. 09-3740 (MLC), 2010 WL 3522792, at *1–2 (D.N.J. Sept. 2, 2010); *United Consumer Fin. Servs. Co. v. Carbo*, 982 A.2d 7, 14 (N.J. Super. App. Div. 2009).

***Third***, TCCWNA class settlements likewise suggest that base statutory damages are limited to $100 per violative contract. For instance, in *Boyko v. American International Group, Inc.*, No. CIV. 08-2214 RBK/JS, 2012 WL 2132390, at *1 (D.N.J. Aug. 2, 2013), the plaintiffs settled on behalf of the class so that each class member received $100 in statutory damages. Likewise in *Katz*, 2010 WL 3522792, at *1–2, the currently pending class settlement provides approximately $100 per class member through a combination of ticket vouchers and coupon codes.

Accordingly, the Court should grant summary judgment limiting base statutory penalties in this case to $100 per violative contract.

---

[18] Even plaintiff's operative complaint does not explicitly claim more than $100 in base statutory penalties per contract. At most, her complaint contends that Public Storage "is liable to Plaintiff and each class member for a minimum statutory penalty of $100.00 . . . ." D.E. 10 at ¶ 61. Her class notice likewise explains to the class that she "is only seeking 'a civil penalty of not less than $100.00' for each Class Member." D.E. 165-1 at 9.

**F.      The Court should grant summary judgment that any base statutory penalties awarded in this case cannot be enhanced for "egregiousness" or for any other reason.**

In discovery-related discussions with Public Storage, plaintiff's counsel have asserted that class members should receive enhanced statutory penalties based on the supposed "egregiousness" of Public Storage's conduct.[19] TCCWNA does not mention egregiousness or provide any other standard for determining when or how much to enhance the base statutory penalty of $100. Nor does any judicial decision provide such guidance.

Plaintiff's proposed "egregiousness"-based enhancements are functionally indistinguishable from punitive damages and are therefore subject to the due-process limitations that the Supreme Court has imposed on such damages. Under those limitations, any base statutory penalties awarded in this case cannot be enhanced for "egregiousness" or for any other reason.

---

[19] *See, e.g.,* the March 6, 2015 Transcript (D.E. 120) at 7:8–8:2 ("[T]he [TCCWNA] provides for a minimum of $100 and/or actual damages. Now, we want to assert, based on common evidence, that we should get—that plaintiff and the class should get more than the minimum $100 damages, we could assert that defendants did this knowingly. And therefore, the class deserves a penalty greater than the $100 minimum . . . .").

1.   **TCCWNA's statutory penalty provision is facially invalid because it imposes potentially unlimited liability for punitive purposes without articulating any constraining legal standard.**

The statutory penalty provision set forth in N.J.S.A. § 56:12–17 is unusual in two respects. *First*, the penalty that may be imposed is literally limitless—that is, the statute sets no upper quantitative limit on the penalty. *Second*, statutory penalties may be awarded *in addition to* actual damages, indicating that those penalties are not merely a means of providing a compensatory award when actual damages are too difficult to calculate. These twin anomalies confirm that TCCWNA statutory penalties are punitive in nature—and that their magnitude is impossible for a defendant to predict when deciding how to conform its conduct to law.

In *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), the Supreme Court observed that "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the *conduct* that will subject him to punishment, but also of the *severity of the penalty* that a State may impose." *Gore*, 517 U.S. at 574 (emphases added); *accord State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). These "[p]rinciples of fundamental fairness and due process require that those who violate the law know of their potential exposure." *United States v. E.I. Dupont De*

30

*Nemours & Co. Inc.*, 432 F.3d 161, 192 (3d Cir. 2005) (Rendell, J., dissenting on other grounds).

Examples abound in which the Supreme Court has found due-process violations based on lack of adequate notice as to a potential criminal penalty;[20] and as the *Gore* court noted, while "[t]he strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases, . . . the basic protection against 'judgments without notice' afforded by the Due Process Clause . . . is implicated by civil *penalties*." *See Gore*, 517 U.S. at 575 n.22 (emphasis in original) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 217 (1977) (Stevens, J., concurring in judgment)). Where civil penalties are at issue, "adequate notice" is critical because civil defendants don't receive the protections available in criminal proceedings, triggering "concerns over the imprecise manner in which punitive damages systems are administered" and the possibility that such damages "pose an acute danger of arbitrary deprivation of [a defendant's] property." *State Farm*, 538 U.S. at 417.

---

[20] For example, footnote 22 of *Gore* cited the following: *Miller v. Florida,* 482 U.S. 423 (1987) (*Ex Post Facto* Clause violated by retroactive imposition of revised sentencing guidelines that provided longer sentence for defendant's crime); *Bouie v. City of Columbia,* 378 U.S. 347 (1964) (retroactive application of new construction of statute violated due process); *id.,* at 350–355 (citing cases); *Lankford v. Idaho,* 500 U.S. 110 (1991) (due process violated because defendant and his counsel did not have adequate notice that judge might impose death sentence).

TCCWNA's penalty provision doesn't just fail to furnish "adequate" notice as to "the severity of the penalty that a State may impose"[21]—it furnishes *no notice at all* as to the potential extent of exposure. Statutory penalties can range from $100 per violative contract to, literally, infinity—*in addition to* actual damages. This lack of notice as to potential penalties does not occur in *some* TCCWNA cases: it occurs in *every* case. There is *no case* in which TCCWNA provides a defendant *any* guidance whatsoever as to the extent of that defendant's possible exposure to statutory penalties. And TCCWNA's penalty provision features none of the safeguards associated with traditional punitive damages, which typically are constrained by jury instructions requiring the jury to find that the defendant acted "maliciously" or "in wanton and willful disregard of plaintiff's rights" (with attendant definitions of those terms).[22] By contrast, TCCWNA on its face provides no guidance at all to a jury or court that is attempting to decide whether and how much to enhance the base statutory penalty.

---

[21] *Gore*, 517 U.S. at 574.

[22] *See, e.g.,* New Jersey Model Civil Jury Charge 8.60, pp. 3-4, *available at* http://www.judiciary.state.nj.us/civil/charges/8.60.pdf. We have found no equivalent model jury instruction for TCCWNA's statutory penalty. TCCWNA's unconstrained statutory penalty contrasts sharply with New Jersey's tight regulation of traditional punitive damages under the Punitive Damages Liability Act, N.J.S.A. 2A:15-5.9 *et seq. Cf. Arizona v. ASARCO LLC*, 773 F.3d 1050, 1056–57 (9th Cir. 2014) (holding that explicit constraints in Title VII's damages provision fully addressed *Gore*'s concern "that defendants be on notice of what conduct might make them liable for punitive damages and the extent to which they might be held liable.").

TCCWNA's penalty provision therefore is that rare statute that meets the most stringent criterion for finding facial invalidity—namely, that "no set of circumstances exists under which the Act would be valid, *i.e.,* that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotation marks omitted).[23] Under "[e]lementary notions of fairness enshrined in our constitutional jurisprudence,"[24] TCCWNA's penalty provision is facially unconstitutional and should be struck down.[25]

### 2. It would violate due process to enhance TCCWNA's base statutory penalty based on the undisputed facts of this case.

Even if TCCWNA's statutory penalty provision is not facially invalid, due process precludes enhancement of TCCWNA's base statutory penalty on the undisputed facts of this case.

---

[23] As previously mentioned, proving unconstitutionality in all applications is no longer the prerequisite for mounting a facial challenge. *See Johnson v. United States*, 135 S. Ct. at 2560–61.

[24] *Gore*, 517 U.S. at 574.

[25] Alternatively, the Court could opt to save the provision by construing the phrase "not less than $100" as either setting a floor of $100 or as meaning "neither more nor less than $100" and then choosing the latter construction under the doctrine of constitutional avoidance. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988). And courts may adopt nonliteral statutory interpretations where doing so would avoid absurdity. *See Hubbard ex rel. Hubbard v. Reed*, 774 A.2d 495, 498 (N.J. 2001). Here the absurdity to be avoided would be the threat of potentially limitless liability for including an unlawful contract provision that caused almost no one any actual harm.

33

In *Gore*, the Supreme Court formulated three "guideposts" for determining when punitive damages are unconstitutionally excessive: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive-damages award; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases. *Id.* at 574–75.

The Supreme Court has further instructed that those guideposts "be implemented with care, to ensure both reasonableness and proportionality." *State Farm*, 538 U.S. at 428. Indeed, "[p]erhaps the most important indicium" of unconstitutionally excessive damages is "the degree of reprehensibility of the defendant's conduct," and there must be a "reasonable relationship" between the punitive damages at issue and the harm actually inflicted upon a plaintiff, if any. *Gore*, 517 U.S. at 575, 589.

*Gore* and its progeny also identified considerations that are *not* material to a due-process analysis of punitive damages. For example, the fact that a defendant is a large corporation rather than an individual "does not diminish its entitlement to fair notice of the demands that the several States impose on the conduct of its business." *Gore*, 517 U.S. at 585. If anything, a corporation is "an active participant in the national economy," which "implicates the federal interest in preventing individual States from imposing undue burdens on interstate

34

commerce." *Id.* And a defendant should not be punished for conduct that did not actually harm the plaintiff. *See State Farm*, 538 U.S. at 423.

Based on the undisputed facts of this case, all three *Gore* guideposts point away from enhancing TCCWNA's base statutory penalty.

***First***, there is no evidence that Public Storage's conduct was at all "reprehensible," let alone sufficiently reprehensible to justify enhancing the base statutory penalty. The Supreme Court has instructed courts to determine reprehensibility based on whether (1) the harm caused was physical as opposed to economic; (2) the conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm*, 538 U.S. at 419. The existence of any one of these factors "may not be sufficient to sustain" a punitive-damages award. *Id.*

Here, plaintiff has no evidence that Public Storage acted reprehensibly towards her or the class. To begin with, almost no class members suffered any harm whatsoever—and no class member suffered harm as to his or her physical health or safety—due to the alleged TCCWNA violations. Nearly all of the class members rented their storage units without incident or complaint and thus without having any of the challenged contractual clauses invoked against them. Indeed,

35

Public Storage's investigations have revealed that the number of cases in which the clauses actually were invoked against a tenant is vanishingly small.

Moreover, there was nothing comparable to the pattern of "indifference or reckless disregard" for consumer wellbeing that is the hallmark of truly reprehensible corporate conduct. For example, there was nothing equivalent to the Takata Corporation's denials, cover-ups, and inaction in the face of mounting evidence that its airbags spew shrapnel when they deploy.[26] There is no comparable evidence of misconduct by Public Storage. Rather, the undisputed facts show that Public Storage entered into form contracts to lease self-storage units to thousands of New Jersey customers, the vast majority of whom were satisfied with the units and suffered no physical or other actual harm as a result of those contracts.

**Second**, because the alleged TCCWNA violations caused the vast majority of class members no harm at all, the ratio of punitive penalties to actual harm is literally *infinite* with respect to most members. It is hard to imagine a case in which *Gore's* "disparity" guidepost leans more lopsidedly against punitive penalties than it does in this case. Enhancement of base statutory penalties therefore would violate due process—especially when imposed in conjunction with a per-provision

---

[26] *See* Hiroko Tabuchi, "As Takata Costs Soar in Airbag Recall, Files Show Early Worries on Financial Toll," N.Y. Times, April 13, 2016, *available at* http://www.nytimes.com/2016/04/14/business/as-takata-costs-soar-in-airbag-recall-files-show-early-worries-on-financial-toll.html?_r=0

theory (*see* Part IV.A., above), which would multiply each $100 base penalty by a factor of four *before* "egregiousness" is even considered.

**Third**, to the extent that base statutory penalties are enhanced in this case, it would represent a total departure from the class awards in other TCCWNA cases. As discussed above at Part IV.B., TCCWNA cases and settlements either assume or suggest that a class member will claim $100 per allegedly violative contract; and we know of no TCCWNA case or settlement that has imposed enhanced TCCWNA base penalties, whether on a per-provision basis or otherwise.

Accordingly, the Court should grant summary judgment that any base statutory penalties awarded in this case cannot be enhanced for "egregiousness" or for any other reason.

## V.    CONCLUSION

This is an unprecedented case, as the several arguments above collectively demonstrate. Penalizing Public Storage up to $64 million, and possibly much more, on behalf of approximately 160,000 class members, nearly all of whom suffered no harm and rented their storage units without incident or complaint, would constitute error. The Court should enter summary judgment for Public Storage.

Respectfully submitted,

BALLARD SPAHR LLP

Dated: June 10, 2016

By:   */s/ John B. Kearney*

John B. Kearney
kearneyj@ballardspahr.com
Christopher Tomlin
tomlinc@ballardspahr.com
BALLARD SPAHR LLP
210 Lake Drive East, Ste. 200
Cherry Hill, NJ 08002

Tel: (856) 761-3400
Fax: (856) 761-1020

*Attorneys for Defendant*
*Public Storage*

Of counsel:
KEKER & VAN NEST LLP

JOHN W. KEKER – CSB# 49092
jkeker@kvn.com
ASHOK RAMANI – CSB# 200020
aramani@kvn.com
QUYEN L. TA – CSB# 229956
qta@kvn.com

REID P. MULLEN – CSB# 270671
rmullen@kvn.com
633 Battery Street
San Francisco, CA 94111-1809

Tel: (415) 391 5400
Fax: (415) 397 7188

*Attorneys for Defendant*
*PUBLIC STORAGE*

38