# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

JACKELINE MARTINEZ-SANTIAGO,
on behalf of herself and other persons
similarly situated,

Civil Action No. 1:14-cv-00302-JBS-AMD

Plaintiff,

v.

PUBLIC STORAGE

---

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Michael A. Galpern, Esq.
Andrew P. Bell, Esq.
James A. Barry, Esq.
LOCKS LAW FIRM, LLC
801 N. Kings Highway
Cherry Hill, New Jersey 08034

Charles N. Riley, Esq.
LAW OFFICES OF CHARLES N. RILEY, LLC
900 N. Kings Highway
Suite 308
Cherry Hill, New Jersey 08034

*Attorneys for Plaintiff and the Certified Class*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ...............................................................................1

STATEMENT OF FACTS ........................................................................................2

    1.  The Indemnity Clauses ..................................................................................3

    2.  The Exculpatory Clauses ...............................................................................4

    3.  Limitations on Raising Defenses Clauses .....................................................5

    4.  Lack of Specificity Provisions ......................................................................5

STATEMENT OF PROCEDURAL HISTORY .........................................................6

LEGAL ARGUMENT ..............................................................................................8

    I.        THE STANDARD FOR SUMMARY JUDGMENT ...........................................8

    II.       DEFENDANT VIOLATED THE TRUTH-IN-CONSUMER
            CONTRACT WARRANTY & NOTICE ACT ....................................................9

          A.  The TCCWNA's Purpose Is to Prevent the Use of Illegal
              Consumer Contract Provisions ...................................................................10

          B.  The Undisputed Facts Conclusively Establish Defendant's
              Liability under the TCCWNA ....................................................................13

              1.  Defendant's Indemnity Provisions Violates TCCWNA .........................15

              2.  Defendant's Exculpatory Provisions Violate TCCWNA .......................18

                  a.  When read together in context, the real purpose of
                      Public Storage's indemnity and exculpatory clauses is to
                      ensure that it will avoid all losses .......................................................23

i

3.  Defendant's Limitations of Raising Defenses Provisions
    Violate TCCWNA ...................................................................26

4.  The Form Lease Agreements' Lack of Specificity Violates TCCWNA ...28

CONCLUSION ...........................................................................................31

## <u>TABLE OF AUTHORITIES</u>

<u>Case</u>                                                                                          <u>Page</u>

*Amchem Prod's, Inc. v. Windsor*
521 U.S. 591 (1997) ........................................................................................26

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*
133 S. Ct. 1184 (2013) ...................................................................................26

*Baby Neal v. Casey*
43 F. 3d 48 (3d Cir. 1994) .......................................................................20, 22

*Barrows v. Chase Manhattan Mortg. Corp.*
465 F. Supp. 2d 347 (D.N.J.) .........................................................................27

*Beck v. Maximus, Inc.*
457 F.3d 291 (3d Cir. 2006) ...........................................................................22

*Carnegie v. Household Int'l, Inc.*
376 F. 3d 656 (7th Cir. 2004) .........................................................................29

*Carrera v. Bayer Corp.*
727 F.3d 300 (3d Cir. 2013) ...........................................................................17

*Colon v. Public Storage*
CAM-L-3353-12 ...............................................................................................9

*Dupler v.Costco Wholesale Corp.*
249 F.R.D. 29 (E.D.N.Y. 2008) .................................................................16, 27

*Eisenberg v. Gagnon*
766 F.2d 770 (3d Cir. 1985) ...........................................................................23

*Flanagan v. Allstate Ins. Co.*
242 F.R.D. 421 (N.D.Ill. 2007)........................................................................16

*Flores v. Anjost Corp.*
284 F.R.D. 112 (S.D.N.Y. 2012) .....................................................................17

*General Telephone Co. of Southwest v. Falcon*
457 U.S. 147(1982) ............................................................................................22

*Haroco, Inc. v. Am. Nat'l Bank & Trust Co.,*
121 F.R.D. 664 (N.D.Ill. 1988) ..........................................................................17

*Hayes v. Wal-Mart Stores*
725 F.3d 349 (3d Cir. 2013) ...............................................................................17

*Hoxworth v. Blinder, Robinson & Co.*
980 F.2d 912 (3d Cir. 1992) ...............................................................................23

*In re Community Bank of No. Va.*
418 F.3d 277 (3d Cir. 2005) ...............................................................................26

*In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*
174 F.R.D. 332 (D.N.J. 1997) .............................................................................28

*In re Hydrogen Peroxide Antitrust Litig.*
552 F.3d 305 (3rd Cir. 2008) ..............................................................................26

*In re Lucent Techs., Inc. Sec. Litig.*
307 F. Supp 2d 633 (D.N.J. 2004) ......................................................................19

*In re Prudential Ins. Co. of Am. Sales Pract's Litig.*
148 F.3d 283 (3d Cir. 1998) ...............................................................................22

*In re universal Serv. Fund Tel. Billing Practices Litig.*
219 F.R.D. 661 (D.Kan. 2004) ...........................................................................16

*In re Tri-State Crematory Litig.*
215 F.R.D. 660 (N.D.Ga. 2003) 17

*In re Warfarin Sodium Antitrust Litig.*
391 F.3d 516 (3d Cir. 2004) ...............................................................................28

*Jones v. Am. Gen. Life & Acc. Ins. Co.*
213 F.R.D. 689 (S.D.Ga. 2002) ..........................................................................17

*Kleiner v. First Nat'l Bank of Atlanta*
97 F.R.D. 683 (N.D. Ga. 1983) ..........................................................................27

*Korrow v. Aaron's Inc.*
2013 U.S. Dist. LEXIS 157272, at *17 (D.N.J. 2013) ................................................. 19

*Lewis v. Curtis*
671 F. 2d 779 (3d Cir. 1982) ....................................................................................... 25

*Maldonado v. Houstoun*
177 F.R.D. 311 (E.D.Pa. 1997) ................................................................................... 19

*Marcus v. BMW of North America, LLC*
687 F.3d 583 (3d Cir. 2012) .................................................................................. 17, 26

*Neale v. Volvo Cars of North America, LLC*
2013 U.S. Dist. LEXIS 43235 (D.N.J., Mar. 26, 2013) ............................................. 20

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797 (1985) .................................................................................................... 28

*Ramos v. Browning Ferris Indus. Of S. Jersey, Inc.,*
103 N.J. 177 (1986) .................................................................................................... 15

*Rodriguez v. Nat'l City Bank*
726 F.3d 372 (3d Cir. 2013) ................................................................................... `23

*Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*
601 F.3d 1159 (11th Cir. 2010) .................................................................................. 27

*Sanneman v. Chrysler Corp.*
191 F.R.D. 441 (E.D. Pa. 2000) ................................................................................. 20

*Schering Plough*
589 F.3d at 597 .......................................................................................................... 23

*Shelton v. Restaruants.com, Inc.* ............................................................................ 19

*Steinberg v. Nationwide Mut. Ins. Co.*
224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................................. 16

*Stewart v. Abraham*
275 F.3d 220 (3d Cir. 2001) ....................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*
131 S.Ct. 2541 (2011) ................................................................................................20

*Warfarin Sodium, Supra*
391 F.3d at 534 ...........................................................................................................28

*Watkins v. DineEquity, Inc.*
2012 U.S. Dist. LEXIS 122677 (D.N.J. 2012) ..........................................................12

*Weiss v. York Hosp., supra*
745 F.2d 786, 809 n. 36 (3d Cir. 1984) .....................................................................23

*Wetzel v. Liberty Mut. Ins. Co.*
508 F. 2d 239 (3d Cir. 1975) ......................................................................................25

## RULES

Fed. R. Civ. P. 23(a) ....................................................................................................2
Fed. R. Civ. P. 23(a)(1) ...........................................................................................3, 19
Fed. R. Civ. P. 23(a)(2)............................................................................................3, 20
Fed. R. Civ. P. 23(a)(3) ...........................................................................................4, 22
Fed. R. Civ. P. 23(a)(4) ...........................................................................................4, 24
Fed. R. Civ. P. 23(b)(3) ...............................................................................2, 4, 25, 28

## STATUTES

*N.J.S.A.* 56:12-15 .......................................................................3, 12, 13, 19, 20, 21
*N.J.S.A.* 56:12-16 ...........................................................................................3, 14, 21
*N.J.S.A.* 56:12-17 ...........................................................................................3, 16, 22

## OTHER AUTHORITIES

*Sponsor's Statement*, Statement to Assembly Bill No. 1660 (May 1, 1980)................................13

## PRELIMINARY STATEMENT

Plaintiff Jackeline Martinez-Santiago respectfully requests this Court to grant the Class, pursuant to Fed. R. Civ. P. 56, partial summary judgment with respect to liability on the Class' claims that Defendant Public Storage's lease agreements in New Jersey violated the Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14, *et seq.*

On November 16, 2015, this Court certified this Class and defined the Class as follows:

> All natural persons who on or after September 24, 2007 through October 21, 2014 entered into lease agreements with Defendant in the State of New Jersey. Excluded from the Class are Defendant, each of its parents, subsidiaries, authorized distributors and affiliates, and its legal representatives, officers, board members and the heirs, successors, and assigns of any excluded person. [D.E.134].

The Class claims are as follows: Whether Defendant's lease agreements in New Jersey since September 24, 2007 [1] until October 21, 2014 (1) violate section N.J.S.A. 56:12-15 by requiring the occupant to indemnify Defendant for any loss arising out of consumers' or their invitees' use of the facility, including losses caused by Public Storage's own negligence; (2) violate section N.J.S.A. 56:12-15 by requiring consumers to hold Defendant harmless for injuries or damage to property for any reason, including but not limited to Defendant's own negligence, gross negligence, or recklessness; (3) violate section N.J.S.A. 56:12-15 by limiting consumers' rights to raise defenses in lawsuits arising from the lease agreement to one year from the date of the occurrence giving rise to the claim; and (4) violate N.J.S.A. 56:12-16 by failing to list the specific provisions in the contract that are unenforceable under New Jersey law. [D.E. 134].

---

[1] While this Court's Order specified "February 7, 2007" as the relevant date, the body of its Opinion and the definition of the Class itself make clear that the relevant date was "September 24, 2007", and that the relevant time period is September 24, 2007 to October 21, 2014 (hereinafter the "Class Period"). *See, e.g., Martinez-Santiago v. Public Storage*, 312 F.R.D. 380, 386 (D.N.J. 2015) ("Class Cert. Opinion") ("The challenged provisions in the lease agreements used by Public Storage from September 24, 2007 to October 21, 2014 have nearly identical language.")

Plaintiff and the Class are entitled to partial summary judgment as demonstrated below.

## **STATEMENT OF FACTS**[2]

FILED UNDER SEAL PURSUANT TO L. CIV. R. 15.3(c)

---

[2] A full recitation of the relevant, material facts is set forth in Plaintiff's Statement of Facts, filed herewith.

FILED UNDER SEAL PURSUANT TO L. CIV. R. 15.3(c)

FILED UNDER SEAL PURSUANT TO L. CIV. R. 15.3(c)

FILED UNDER SEAL PURSUANT TO L. CIV. R. 15.3(c)

FILED UNDER SEAL PURSUANT TO L. CIV. R. 15.3(c)

## STATEMENT OF PROCEDURAL HISTORY

On February 12, 2012, Mr. Colon slipped on a patch of ice on a walkway directly in front

of Plaintiff's storage unit.  *Statement of Facts*, ¶ 12.  On or about July 31, 20-12, Colon filed suit

in New Jersey Superior Court against Public St orage alleging Public Storage was negligent and caused his injuries. *Id.* ¶ 13.  On October 1, 2012, Defenda nt sued Ms. Martinez-Santiago, as a third party defendant in the m atter of *Colon v. Public Storage*  in the Superior Court of Ne w Jersey, Camden County under Docket Num ber CAM-L-3353-12.   *Id.* ¶ 14.  The Third Party Complaint a gainst Ms. Martinez -Santiago sough t indemnification from  Ms. Martinez-Santiago. *Id.*  ¶ 16.  On February 8, 2013, upo n motion by Public Storage a  final judgment by default was entered against Ms. Martinez-Santiago in the *Colon v. Public Storage* matter. *Id.* ¶ 17.

On September 24, 2013, after retaining counsel, Plaintiff moved to vacate the default, and requested permission from the New Jers ey Superior Court to file an  Answer and  Class Actio n Counterclaim.  *Id..* ¶ 18.  After being served with Plai ntiff's motion, Defenda nt dism issed its Third Party Complaint prior to Ms. Martinez-Santiago's motion being heard.  *Id.* ¶ 19.

The present action filed on Decem ber 3, 2012 in  the Superior Court of New Jersey and removed by Defendant on January 15, 2014. [Doc. 1]  .  Defendant filed a m otion to dism iss the initial complaint on February 5, 2014.  [Doc. 7].     In response, Plaintiff filed a First Am ended Complaint on February 21, 2014. [Doc. 10].  On   February 27, 2014 the Court entered an Order Denying Defendant's motion to dismiss as moot. [Doc. 7]  Defendant moved again to dismiss the complaint pursuant to F ed. R. Civ. P. 12(b)(6 ) on March 21, 2014. [Doc  13].  Plaintiff opposed that motion and after oral argument on July 8, 2014 and considering supplemental briefs supplied by both parties, on August 14, 2014 this Court denied    in part and granted in part Defendant's Motion to Dismiss. [Doc. 25].  The Court found that Plaintiff had st ated a claim for violations of both the TCCWNA and New Jersey CFA. [Doc. 24]

On September 24, 2014 Plaintiff f iled a m otion for class certif ication in response to an offer to Ms. Martine z-Santiago to  settle her claim   individually whic h Plaintif f believ ed was

designed to m oot the class action. ³ [Doc. 35]. On Nove mber 24, 2014 the Court granted

Defendant's motion to comm unicate with the putati ve class, and change the lease term s which

form the basis of Plaintiff's complaint. [Doc. 64]. On the same date, the Court stayed the matter

for m ediation. [Doc. 65]     On Decem ber 23, 2014 the Court ad     ministratively term inated

Plaintiff's original motion for class certification. [Doc. 73]. The parties unsuccessfully mediated

this matter on January 26,  2015 and Plaintiff requested that the   Court lift the stay. [Doc. 76].

Plaintiff's request was granted on January 30, 2015 [Doc. 77]. On April 28, 2015, Plaintiff filed

an Amended Motion to Certify the Class. [D   oc. 99]. Aft er hearing argum ent on October 26,

2015 the Court granted Plaintiff's motion to    certify, certifying a Class as defined,   *supra*, at 1

[Doc. 134], and certified the four Class claims, as set forth, *supra*, at 1.

On February 4, 2016 the Court approved the f   orm of Clas s Notice to be sent to Class

Members and appointed Angeion Gr oup as Class Administrator. [Doc. 167]   Notice was sent to

the Class, and only 100 valid and tim   ely opt-outs were received out of over 133,000 m    ailed

postcards, which represents approxim ately 0.07% of the Class. Declaration of Brian S. Devery,

Bell Cert., Ex. J, ¶ 16. Expert discovery in this matter concluded on May 20, 2016. [Doc. 180].

## LEGAL ARGUMENT

## I.     THE STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper when

"the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Todaro v.*

*Bowman*, 872 F.2d 43, 46 (3d Cir. 1989); *Chipollini v.  Spencer Gifts, Inc.*, 814 F.2d 893, 896

---

³ Plaintiff rejected Defendant's offer to settle her claim individually.

(3d Cir. 1987).  After "the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to set forth specific facts showing the existence of such an issue for trial." *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).   An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The substantive law will identify which facts are "material." *Anderson*, 477 U.S. at 247-48.  A fact is material if it influences the outcome under the governing law.  *Id.* at 248; *see also Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).   Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, at 248.  Although the non-moving party is to be given the benefit of all reasonable doubts and inferences, evidence that is immaterial or merely speculative in nature is not sufficient to defeat a motion for summary judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 249 ("Factual disputes that are irrelevant or unnecessary will not be counted.")

"Summary judgment procedure is properly regarded . . . as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U. S. 317, 327 (1986) (internal citations omitted).

## II.    DEFENDANT VIOLATED THE TRUTH-IN-CONSUMER CONTRACT WARRANTY & NOTICE ACT

The Class' TCCCWNA claims arise from Defendant's practice of entering into the form lease agreements with New Jersey  consumers which (1) violate section N.J.S.A. 56:12-15 by requiring the occupant to indemnify Defendant for  any loss arising out of  consumers' or their invitees' use of the facility, including losses caused by Public   Storage's own negligence; (2)

violate section N.J.S.A. 56:12-15 by requiring consumers to hold Defendant harmless for injuries or damage to property for any reason, including but not limited to Defendant's own negligence, gross negligence, or recklessness; (3) violate section N.J.S.A. 56:12-15 by limiting consumers' rights to raise defenses in lawsuits arising from the lease agreement to one year from the date of the occurrence giving rise to the claim; and (4) violate N.J.S.A. 56:12-16 by failing to list the specific provisions in the contract that are unenforceable under New Jersey law. [D.E. 134].

**A.    The TCCWNA's Purpose Is to Prevent the Use of Illegal Consumer Contract Provisions.**

The TCCWNA prohibits businesses from offering or entering into contracts in consumer transactions which contain provisions that violate any clearly established legal right of a consumer or responsibility of a seller or lessor:

> No seller, lessor,… shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty,… which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, … as established by State or Federal law at the time the offer is made or the consumer contract is signed…. Consumer means any individual who buys, leases,… any money, property or service which is primarily for personal, family or household purposes.

*N.J.S.A.* 56:12-15. A person who violates the TCCWNA "shall be liable for a civil penalty or not less than $100.00 or for actual damages, or both at the election of the consumer, together with reasonable attorney's fees and court costs." N.J.S.A. 56:12-17.

As a consumer protection statute under Title 56 (which contains New Jersey's consumer protection laws), the TCCWNA should be broadly construed in favor of consumers. *See Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 748 (N.J. 2009) (summarizing history of "constant expansion" of consumer protections) (*quoting Thiedemann v. Mercedes-Benz, U.S.A., L.L.C.*, 872 A.2d 783 (N.J. 2005)). In addition, "[t]he rights, remedies and prohibitions conferred by the

TCCWNA are 'in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State.'" *Shelton v. Resturant.com, Inc.*, 214 N.J. 419, 428, 70 A.3d 544 (2013) (quoting *N.J.S.A.* 56:12-18). "The TCCWNA also prohibits any provision in a consumer contract requiring a consumer to waive his or her rights under the Act." *Id.* (citing N.J.S.A. 56:12-16).

In enacting the TCCWNA in 1980, the New Jersey legislature was reacting to a growing problem in the consumer marketplace of businesses including provisions in consumer contracts as a means to discourage and minimize any challenges to the business' conduct when performing the contract:

> Far too many consumer contracts, warranties notices and signs contain provisions which clearly violate the rights of consumers. Even though these provisions are legally invalid or unenforceable, their very inclusion in a contract, warranty, notice or sign deceives a consumer into thinking that they are enforceable and for this reason the consumer often fails to enforce his rights.
>
> *Examples of such provisions are those that deceptively claim that a sellor or lessor is not responsible for any damages caused to a consumer, even when such damages are the result of the seller's or lessor's negligence.* These provisions provide that the consumer assumes all risks and responsibilities, and even agrees to defend, indemnify and hold harmless the seller from all liability…

*McGarvey v. Penske Auto Grp., Inc.*, 486 F. App'x 276, 280 (3d Cir. 2012) (*citing* Sponsor's Statement, Statement to Assembly Bill No. A1660, 1981 N.J. Laws, Ch. 454, Assembly No. 1660, at 2-3). The example of an exculpatory and indemnity clause prohibited by the TCCWNA set forth in the Sponsor's Statement cited in *McGarvey*, 486 F. App'x at 280 are exactly like Public Storage's exculpatory and indemnification provisions used in *all* of its form lease agreements during the entire Class Period from September 24, 2007 through October 21, 2014. This Court similarly found that exculpatory clause and indemnification clause claims "go to the heart of the TCCWNA", and after analyzing the exculpatory and indemnity clauses at

issue, held that the "Plaintiff has stated a violation of a clearly established legal right." *Castro v. Sovran Self Storage, Inc.,* 114 F. Supp. 3d 204, 215-16 (D.N.J. 2015). *See* Dismissal Order at 31; *see also* discussion of Public Storage's exculpatory clause, *infra*, at subparagraph C, and of Public Storage's indemnification provision, *infra*, at subparagraph D.

Accordingly, the TCCWNA's purpose is to *prevent* the use of unenforceable contractual terms, such as overly broad exculpatory and indemnity clauses, in consumer contracts:

> The TCCWNA… prohibits a seller from entering into a contract with a consumer that includes any provision that violates a federal or state law. [*Bosland v. Warnock Dodge, Inc.*, 396 N.J. 267, 278 (App. Div. 2009)]; *see also Kent Motor Cars, Inc. v. Reynolds and Reynolds Co.*, 207 N.J. 428, 457, [] (2011) ("The purpose of the TCCWNA… is to *prevent deceptive practices* in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts.").

*Watkins v. DineEquity, Inc.*, 2012 U.S. Dist. LEXIS 122677, at *5 (D.N.J. 2012) (Emphasis added). In fact, New Jersey courts have held that the mere act of *offering* a consumer contract that violates a legal right of the consumer under the law is sufficient to establish a violation of the TCCWNA. *United Consumer Financial Services Co. v. Carbo*, 410 N.J. Super. 280, 306-07 (App. Div. 2009); *see also Bosland*, at 278.

In order to prevent the inclusion of such illegal provisions in consumer contracts, the legislature mandated that liability under the TCCWNA arise whenever a seller or lessor *presents* a consumer with a covered writing that "contains terms contrary to any established state or federal right of the consumer." *Shelton*, 214 N.J. at 443 (emphasis added); *see also Bosland v. Warnock Dodge, Inc.*, 396 N.J. Super 267, 278 (App. Div. 2007) ("…the TCCWNA establishes liability whenever a seller *offers* a consumer a contract, the provisions of which violate any legal right of a consumer.") (Emphasis added); *Barrows v. Chase Manhattan Mortg. Corp.*, 456 F. Supp. 2d 347, 362 (D.N.J. 2006) (the TCCWNA "can be violated if a contract or [warranty]

simply contains a provision prohibited by state or federal law, and it provides a remedy even if a plaintiff has not suffered any actual damages.").

In order to bolster its preventive purpose, the New Jersey legislature also imposed a civil penalty even if a consumer has suffered no actual damages:

> In passing the NJTCCWNA, the New Jersey Legislature was concerned with contracts … that include illegal provisions intended to "deceive[] a consumer into thinking that they are enforceable" and to result in the consumer failing to enforce his rights. Additionally, "the [TCCWNA] can be violated if a contract … simply contains a provision prohibited by state or federal law, and it provides a remedy even if the plaintiff has not suffered actual damages."

*Watkins v. DineEquity, Inc.*, Civ. No. 11-7182, 2013 U.S. Dist. LEXIS 12922, at *15-16 (D.N.J. Jan. 30, 2013) (citations omitted).

### B. The Undisputed Facts Conclusively Establish Defendant's Liability under the TCCWNA.

In order to prove a claim under the TCCWNA, a person must show that: (1) the plaintiff is a consumer within the statute's definition; (2) the defendant is a seller or lessor; (3) the defendant (a) offers or enters into a written consumer contract, or (b) gives or displays any written consumer warranty, notice, or sign; and (4) the offer or written contract, warranty, notice or sign included a provision that violates any clearly established legal right of a consumer or responsibility of a seller. *See N.J.S.A.* 56:12-15; *see also Watkins v. DineEquity, Inc.*, 2012 U.S. Dist. LEXIS 122677, *6-7 (D.N.J. Aug. 28, 2012); *Smith v. Vanguard Dealer Servs.*, LLC., 2010 N.J. Super. Unpub. LEXIS 3052, at *5-6 (App. Div. 2010).

First, members of the Class were indisputably "consumers" under the TCCWNA. The term "consumer" is defined as "any individual who buys, leases, borrows, or bails any money, property or service which is primarily for personal, family or household purposes." *N.J.S.A.* 56:12-15. Here, Public Storage's form lease agreements *by their very terms* and Class members'

acknowledgement of those terms indicate that that they all are "consumers" under the TCCWNA and will "store only personal property." *See Statement of Facts*, ¶¶ 41-43. The 2007 and 2008 form lease agreements contain provisions which provide that the individual "will store only personal property." (Bell Cert. Exs. L & M, ¶ 3). The 2009 and 2010 form lease agreements expressly provide that "unless  Occupant is identified above  as a business Occupant is a consumer…" (Bell Cert., Exs. N & O, unnumbered paragraph above ¶ 1). The 2011, 2012, 2013 and 2014 form lease agreements provide that "unless Occupant is identified above as a business, Occupant is an individual…" and that "occupant shall store only personal property…." (Bell Cert. Exs. P, Q & R, ¶ 5).

Moreover, even Defendant's Annual Reports issued during the entire Class Period admit that the type of goods stored by the Class members are "for personal, family or household purposes." *Statement of Facts*, ¶¶ 4-6. Thus, it cannot be honestly disputed that the Class members' lease agreements of storage units from Public Storage in this case are "consumer contract[s]" under this definition. "The TCCWNA does not require individualized investigation into the particular use of products purchased for each individual consumer. In *Shelton []*, the New Jersey Supreme Court determined that as long as the products or services bargained for are 'primarily for personal, family, or household purposes,' individualized inquiry is unnecessary." *Korrow v. Aarons, Inc.*, 2013 U.S. Dist. LEXIS 157272 *17 (D.N.J. 2013) (*citing Shelton v. Restaurant.com, Inc.*, 214 N.J. 419, 70 A.3d 544, 2013 WL 3387866, at *8-9 (N.J. 2013)).

Second, the form lease agreements are "consumer contract[s]" pursuant to the TCCWNA." A "consumer contract" is not defined in the TCCWNA, but the New Jersey Supreme Court has adopted the definition of "consumer contract" which is contained in the Plain Language Act, *N.J.SA.* 56:12-1 to -13 (*see Shelton*, *supra*, at 438), which provides in relevant part as follows:

14

"Consumer contract" means a written agreement in which an individual:

    b.   Leases or licenses real or personal property;

    \* \* \*

    f.   Contracts for services including professi onal services, for cash or on credit and the m oney, property or services are obtained for personal, fam ily or household purposes. "Consum er contract " includes writings required to complete the consumer transaction….

*N.J.S.A.* 56:12-1. Public Storage's form lease agreements are indisputably "consumer contracts" under this definition as the face of the contracts indicate that Public Storage is leasing "real property." *See Statement of Facts*, ¶¶ 23-24; *see also* Bell Cert., Exs. L-R, T and exhibits attached thereto, par. 1 ("**1. Rental of Real Property.** Occupant understands that this is a Rental Agreement of real property…").

Third, Public Storag e h as adm itted to leas ing to Pla intiff and the Cla ss m embers the storage units at issue through execution of th e for m lease agreem ents, which include the complained of provisions. *Statement of Undisputed Material Facts* , ¶ 40 . By adm itting that it leased storage units in New Jersey, Def endant has adm itted that it is a "lesser" who "of fered" and "entered" into the form lease agreements with Class members.

Fourth and finally, there are four provisions, as set forth, *supra*, at page 1 that "violate[] any clearly established legal right of a consumer or responsibility of a seller, lessor" or that "state that any of its prov isions is or m ay be void, une nforceable or inapplicable in som e jurisdiction without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey." N.J.S.A. 56:12-15 and 12-16.

### 1. Defendant's Indemnity Provisions Violate TCCWNA.

The evidence and law d emonstrate that the first Class claim , that Defend ant's Indemnity Provisions violate section N.J. S.A. 56:12-15 by requiring the occ upant to indem nify Defendant

for any loss arising out of consumers' or their invitees' use of the facility, including losses caused by Public Storage's own negligence, is established.

All the indemnity provisions in the form lease agreements used by Public Storage during the Class Period are unenforceable because, as this Court previously held, "it is clearly established that 'a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.'" *Martinez-Santiago*, 38 F. Supp. 3d 500, 516 (D.N.J. 2014) (*quoting Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986) and *Azurak v. Corporate Prop. Investors*, 175 N.J. 110, 112-13, 814 A.2d 600 (2003)). This Court reiterated that "New Jersey law does not permit a party to indemnify against losses resulting from its own negligence 'unless such an intention is expressed in unequivocal terms,' and [that] the provision here [in Plaintiff's agreement] does not unequivocally express an intention for such indemnification,…" 38 F. Supp. 3d at 516-17 (citation omitted); *see also* ; *see also Castro v. Sovran Self Storage, Inc.*, 114 F. Supp. 3d 204, 215-16 (D.N.J. 2015) ("Because a plaintiff's right to bring a personal injury suit based on premises liability is clearly established, and Defendant's Indemnification and Insurance provisions purport to preclude such a suit in violation of that right, Defendant's motion to dismiss Plaintiff's TCCWNA claim will be denied as it pertains to these two provisions.").

In *Azurak*, a 2003 New Jersey Supreme Court decision, a janitorial services company entered into a contract with a mall which contained an indemnification clause which provided:

> Contractor [PBS] shall indemnify, defend and hold harmless each Indemnitee [the mall] from and against any claim (including any claim brought by employees of Contractor), liability, damage or expense (including attorneys' fees) that such Indemnitee may incur relating to, arising out of or existing by reason of (i) Contractor's performance of this Agreement or the conditions created thereby (including the use, misuse or failure of any equipment used by Contractor or its subcontractors, servants or employees) or (ii) Contractor's breach of this

> Agreement or the in adequate o r impr oper perform ance of this Agre ement by Contractor or its subcontractors, servants or employees.

*Id.* at 111. A custom er was subsequently injured in a slip and fall type injury and instituted suit against both the janitor ial se rvices com pany and the m all. *Id.* The m all f iled a m otion f or summary judgment based on the indem nification clause. *Id.* The trial c ourt granted the mall's motion, finding the indemnification clause was a valid "broad for m" indemnification agreement. *Id.* Subsequently, a jury trial re ndered a verdict finding the plai ntiff 30 % negligent; the mall 30 % negligent, and the janitorial services company 40% negligent. *Id.*

On appeal, the janitorial services compa ny argued that the grant of summary judgm ent was improper as the ind emnification clause did not encom pass the m all's negligence. *Id.* The Appellate Division agreed that th e clause cou ld not encompass the m all's negligence, as the clause was "neith er exp licit no r unequivocal on the subject of th e ind emnitee's ne gligence[.]" *Id.* The Supreme Court agreed, stating "in order to allay even the slightest doubt on the issue of what is req uired to bring a negligent indem nitee within an indem nification agreem ent, we reiterate th at the agreem ent m ust specificall y reference the negligence or fault of the indemnitee." *Id.* at 112-13.

In addition, even before the enactm ent of the TCCWNA in 1982, New Jersey law was also em phatic in denouncing indemnification ag reements which inclu de indem nification f or intentional a cts, as Public Storage' s indemnity clauses seeks to include here, disallowing even insurance companies from entering into such agr eements. As stated by the New Jersey Supreme Court, "[w]ere a person able to insure him self against the econom ic consequences of his intentional wrongdoing, the deterrence attributable to financial res ponsibility would be m issing. Further, as a matter of moral principle no person should be permitted to allege his own turpitude as a ground for recovery. Accordingly, we have accepted the general prin ciple that an insurer

may not contract to indemnify an insured against the civil consequences of his own willful criminal act." *Ambassador Ins. Co. v. Montes,* 76 N.J. 477, 483 (1977).

Accordingly, this Court's finding of what was "clearly established" was correct when it denied dismissal of Plaintiff's individual claim in 2014, and is still correct today and on this basis, should grant summary judgment on this claim on behalf of the Class for *all* the form lease agreements, which similarly violating the "clearly established right" that "'a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." First, all the 2011-2014 form lease agreements contain indemnity language identical to that in Plaintiff's agreement, and therefore, those agreements' indemnity provisions are similarly unenforceable, as this Court found, and violate the TCCWNA. The other form lease agreements, whose indemnity provisions are almost identical, fare no better. Both the 2007-2008 and the 2009-2010 groups of form lease agreements' indemnity provisions also do not mention "negligence" at all, but only purport to exclude from indemnification conduct where the Defendant "intentionally and in bad faith causes such damage…" *Statement of Facts* ¶¶ 27, 28. As all the form lease agreement contain no explicit mention of "negligence" and in fact attempt to obtain indemnification for certain "intentional" acts, they are unenforceable as violating a "clearly established right", and accordingly, violate the TCCWNA,[4] and entitled the Class to summary judgment on this claim.

**2.      Defendant's Exculpatory Provisions Violate TCCWNA.**

The evidence and law demonstrate that the second Class claim, the Defendant's Exculpatory Provisions violate section N.J.S.A. 56:12-15 by requiring consumers to hold

---

[4] It is worth noting that it was under this provision that Defendant originally sued Ms. Martinez-Santiago, seeking to have her indemnify it for any damages, as well as attorney's fees and costs associated with the *Colon v. Public Storage* personal injury case. *Statement of Facts* ¶¶ 14-16.

Defendant harmless for injuries or dam age to property for any reason, including but not lim ited to Defendant's own negligence, gross negligence, or recklessness, is established.

In New Jersey since at least 2004,  an exculpatory release will on ly be enforced if "(1) it does not adversely affect the public  interest; (2) the exculpated pa rty is not under a legal duty to perform; (3) it does not involve a public utility   or common c arrier; or (4) the contract does not grow out of  unequal bargaining  power or is otherwise unconscionable."   *Gershon v. Regency Diving Center, Inc.* , 368 N.J. Super 237, 248 (A  pp. Div. 2004).   If any one of these factors is present, then the exculpatory release will not be enforced.

The excul patory claus es in Pub   lic Storag  e's for  m leas e agreem ents vio lated the TCCWNA because th ey are over b road and attem pt to protect th e Defendant from  any liab ility due to its tortious conduct and   thus failed to satisfy the second   *Gershon* prong because Public Storage is under a "legal duty to maintain its premises for business invitees." *Martinez-Santiago*, 38 F. Supp. 3d at 514.  As this Court held:

> This duty  was c learly e stablished at th e tim e th at Plaintiff signed h  er lease. The exculpatory prov ision, on its f  ace, pr ovides that Pub  lic Storage is not liable for its own negligen ce, gross negligence or re cklessness, even though, under common law, Public Storage ha  s a duty to guard against any known dangerous conditions on its property or     conditions that should have been discovered. The lease agreem  ent only e xposes Public Storage to potential liability when a loss is   "directly caus ed by [Public Sto rage's] fraud, willfu l injury or willful violation of law."

*Ibid.*

This Court's decision is supporte d by long-standing case law.   It is well settled in New Jersey prior to the beginning of the Class Period , that "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe envi ronment for doing that which is in the scope of the invitation." *Nisivoccia v. Glass  Gardens, In c.*, 175 N.J.  559, 563 (2003). That is b  ecause business owners "are in the best position to control the risk of harm. Ownership or control of the

premises, for exam ple, enables a party to prevent the harm         .” *Kuzmicz v. Iv  y Hill Park Apartments, Inc.*, 147 N.J. 510, 517 (1997) (citations om itted).  It follows that in this case the risk of loss should fall on the party      best suited to avert injury.    *See Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 447 (1993) (recognizi ng “salutary effect of shifting the risk of loss . . . to those who should be able and are best able to   bear them”).  Accordingly, exculpatory provisions are disfavored by New Jersey law because they   undermine one purpose of tort law, which is to deter careless behavior by a party in the best pos       ition to  preven t in juries in the  f irst p lace. *Marcinczyk v. State of N.J. Police Training Comm'n*, 203 N.J. 586, 593, 5 A.3d 785 (2010).

The operator of a commercial enterp rise can  inspect the prem ises for unsafe conditions, train his or her employees with regard to the facility’s proper operation, and regulate the types of activities permitted to occur. Such a n operator a lso can obta in insurance and spread the costs of insurance among its custom   ers – through appr    opriate pricing, and    not through deceitful contractual clauses designed to sh ift the r esponsibility of in suring the property to  unsuspecting consumers. This was the basis for this Court decision on Defendant’s motion to dismiss:

> “‘[T]here is a public interest in holdi ng a [business] to its general common law duty to  business in vitees -- to m aintain its prem ises in a condition  safe from defects that the bus iness is ch arged with knowing or discovering . . . .’ *Stelluti [v. Casapenn Enters., LLC ]*, 203 N.J. [286,] 311 [(2010)]. Businesses are in th  e best positio  n to m  aintain the ir pr emises f or the saf  e use of customers, and enforcing the exculpatory provision would give Public Storage permission to be careles s -- neglige nt, reck less -- in th e m aintenance of its property.”

*Martinez-Santiago*, 38 F. Supp. 3d at 514.

Also, the continuing validity of the second prong of the     *Gershon*  test was dem onstrated by the New Jersey Suprem e Court in *Stelluti*, when the Cou rt specifically refused to address this type of exculpatory provision stating “we need       not add ress the  valid ity of  the  a greement’s

disclaimer of liability f or in juries that occu r o n the c lub's sidewalks or park ing lot tha t a re common to any commercial enterprise that has business invitees." *Stelluti*, 203 N.J. at 313.

All the exculpatory clauses contained in all the form lease agreements used during the Class Period violate this clearly established duty imposed on Public Storage. First, like with the indemnity clauses, all the 2011-2014 form lease agreements contain exculpatory language identical to that in Plaintiff's agreement, and seek to release Public Storage from any liability for "active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law." *Statement of Facts* ¶¶ 30, 32. Because such language violates the clearly established "legal duty to maintain its premises for business invitees", Public Storage's provisions violate the TCCWNA. The 2007-2008 and 2009-2010 form lease agreements, whose exculpatory provisions are almost identical, are even more egregious than the 2011-2014 agreements. The earlier agreements' exculpatory provisions seek to release Public Storage "for any liability, expense, damage to their personal property or injury to them unless Owner *intentionally and in bad faith* causes the liability, expense, damage or injury" or "for any liability, expense, damage to their personal property or injury to them arising out of Owner's active or passive acts, omissions, negligence or conversion unless Owner *intentionally and/or in bad faith* causes the liability, expense, damage or injury." *Id.* ¶¶ 30 & 31, respectively (Emphasis added). This requirement for "intentional" and "bad faith" before Public Storage may be liable for injuries to invitees on its property is unconscionable.

Public Storage's Exculp atory Claus e also fails the first *Gerson* test as the Third Circuit case *Kane v. U-Haul Int'l, Inc.*, 218 Fed. Appx. 163 (3d Cir. 2007) high lights. In the context of personal injury claim s, Public Storage's Exculp atory Claus es are a clear attem pt to abrogate consumer's rights and are acco rdingly against the public in terest. In *Kane,* the court considered

a self-storage lease that "provided that the customer agreed not to store more than $15,000 worth of property in the unit, that U-Haul was not a     bailee of the custom er's property, and that the customer bore the entire risk of loss or dam age to the property stored,  including loss or dam age due to U-Haul's neg ligence.  The agreem ent also offered the custom er the choice of electing insurance at an additional f ee." 218 Fed. Appx. at 165.  The   *Kane* plaintiff purchased $15,000 worth of property dam age insurance at the tim e of the contract, and     subsequently suffered damage to their property due to a roof leak,     in an am ount which the plaintiff claim ed to be $120,000.  *Id.* at 165.

In this con   text the Th  ird Circu it considered   whether the exculpatory clause was enforceable.  *Id.*   The Court noted that in New Jersey,     "[e]xculpatory clauses are disfavored because ex empting a party from   liability 'induces a want o  f care.'"  *Id.* (*quoting K uzmiak v. Brookchester, Inc.*, 33 N.J. Super 575, 580 (App. Div. 1975)).     The Court noted however that "exculpatory clauses in private   agreement that do not adversely    affect the public interest are generally sustained."  *Id.* (*citing Abel Holding Inc. v. American Dist. Tel. Co.*  , 138 N.J. Super 137 (Law Div. 1975)).  In determ ining whether the  public interest was affected the court noted that plaintif fs were provided    with "the op  tion of purchasing in   surance to p  rotect again st negligence for an additional f ee.  The public in terest is no t affected in light of  the f act that the opportunity to elect insurance for an additional reasonable fee existed."  *Id.*  (*citing Abel,* 138 N.J. Super. at 151).  Conversely,    in the present case, the oppo   rtunity to elect insurance   *was not* provided, as Defendant Public Storage adm    its in its Answ  er ( *Statement of Facts*  , ¶ 9), and therefore the present cause *does adversely affect* the public interest.  *See Castro*, 114 F. Supp. 3d at 216 ("D   efendant's provision s broadly release Defendant      from liability … while on" Defendant's property and provide for inde   mnification for "any and all m   anner of claim s for

22

damages or lost property or personal injury[.]"   Moreover, Plaintiff was given no opportunity to elect insurance for personal injuries. Consequently, *Kane* is inapposite on the  facts, and Plaintiff has stated a violation of a clearly established legal right.").

With regard to the third  and fourth factors, while it is cle ar that Public Storage is n ot a public utility or common carrier,    Plaintiff respectf ully su bmits that in light of    the rela tive sophistication and bargai ning power between the pa rties, as well as the  importance of the rights affected and one-sided   ness of the Lease Agreem     ents, the Exculpatory Clauses are also unconscionable in the consumer setting, and thus, the fourth *Gerson* prong is implicated.

As such, Public Storage's exculp    atory clau ses violate "clearly    established right" or Defendant's "responsibilities under law" and acco rdingly, violate the T CCWNA and entitle the Class to summary judgment on this claim.

### a. When read together in context, the    real purpose of Public Storage's indemnity and exculpatory clauses is   to ens ure that it w ill avoid all losses.

When read as a whole, the effect of the exculpatory and indemnity clauses is to ensure Public Storage will *never* be financially responsible for any damages it causes, regardless of the its culpability in causing them.  Indeed, the following hypothetical illustrates the true effect of both clauses is revealed:  If an invitee (like Plaintiff's invitee Mr. Colon) was intentionally shot dead by Defendant's employee upon arriving at a storage facility, the lease signatory would have still been responsible under the Indemnity Clause to Public Storage for any damages Public Storage may have to pay as a result of a wrongful death suit for the murder of the invitee brought by third-parties or by the lease signatory.  While the Exculpatory Clause would not apply because it excludes "Loss [] directly caused by Owner's fraud, willful injury or willful violation of law", any *damages* Public Storage may have to pay would be still subject to the sweeping

23

Indemnity Clause, which contains no restrictions of any kind and obligates the signatory of the lease to pay Defendant's losses, even though Defendant's employee murdered the invitee. Clearly the absurdity of this result demonstrates the illegal breadth of the exculpatory and indemnity clauses.

<span style="color:red">FILED UNDER SEAL PURSUANT TO L. CIV. R. 15.3(c)</span>

Again, exculpatory and indemnity clauses of this type were specifically contemplated by the legislature as violating the TCCWNA at the time that the TCCWNA was passed in 1980 – over twenty years before the first form lease agreements were signed that are the subject of this litigation. The Third Circuit in *McGarvey v. Penske Auto Group, Inc.*, 486 Fed. Appx. 276 (3d Cir. 2012) considered the question of what constituted a "clearly established legal right" under the TCCWNA, and held that because the statutory terms were "not clear and unambiguous", a court must "look to extrinsic aides, like the statute's legislative history and State case law…" 486 Fed. Appx. at 278-79 (emphasis added). The Court continued:

> the Assembly Statement in support of the [TCCWNA]'s passage lists provisions that the Le gislature co nsidered to 'cle arly vio late righ ts o f consum ers'…these listed provisions, including a consum er's complete wa iver of dam ages resulting from a seller's liab ility inf ringed on ri ghts that had been long-recognized in common law. *See, e.g.*, *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 115 75 S.Ct. 629, 99 L.Ed. 911 (1955)(acknowledgi ng 'a longstanding adm iralty rule, based on public policy, [tha t] invalidate[es] con tracts releas ing towers from all liability f or their neglig ence.'); *Northwest Air lines, Inc. v. Alaska Airlines, Inc.*

351 F.3d 253, 256 9th Cir. 1965),   *cert denied*, 383 U.S. 936, 86   S. Ct 1068, 15
L.Ed. 2d 853 (1966)(holding indem nity contract provision relie ving party of any
damages, even in case of its own neg   ligence, to be unen   forceable b ecause it
would be contrary to public policy.)

486 Fed. Appx. at 281.   Moreover,  "[t]he law doe s not favor excul patory agreem ents becau se

they encourage a lack o f care."  *Gershon v. Regency Diving Ctr., Inc.* , 368 N.J. Super 237, 247

(App. Div. 2004) (citation om itted). "For that reason,  courts closely scrutinize liability releases

and invalidate them if they violate public policy.  It is well settled that to contract in advance to

release tort liab ility  resulting fro m intention al or reck  less conduct violates pu   blic po licy."

*Hojnowski v. Vans Skate Park*, 187 N.J. 323, 333 (2006).

These rights were clearly established at the time that the TCCWNA was passed, and were

expressly referenced in the Sponsor's Statem ent accompanying the TCCWNA when the statu te

was passed.  Sponsor's Statem ent, Statement to Assembly Bill No. A1660, 1981 N.J. Laws, Ch.

454, Assembly No. 1660, at 2-3.  T he fact that exculpatory and i ndemnification provisions, like

present in this case, violated   the T CCWNA was recognized by   Judge Irenas, who noted that

Plaintiff's claims with regard to the exculpatory clause and indemnification agreement "go to the

heart of the TCCWNA."  *Castro v. Sovran,* 114 F. Supp. 3d at 214.  Judge Irenas continued:

> Defendant's Indemnity of Owner provisi on and Exculpatory Clause discourage
> suits, whether or not the provisions enfo     rceable, and th  erefore fall directly
> within th e TCCW NA's am bit.  Because a  plaintiff's right to bring a personal
> injury su it based on pr  emises liability is cle  arly establishe d, and Def endant's
> Indemnification and Insurance provisions   pu rport to p  reclude such a  suit in
> violation of  that right,   Defendant's m otion to dism  iss Plaintiff's TCCWN  A
> claim will be denied as it pertains to these two provisions.

*Id.*

Accordingly, all of Defendant's indem    nity and exculpato  ry claus es violate "clearly

established rights " and  violate the TCCWNA as    they are exactly  the type of un  enforceable

provisions which the TCCWNA was designed to prevent.

25

### 3. Defendant's Limitations of Rais ing Defenses Provisions Violate TCCWNA.

The evidence and law demonstrate that the third Class claim, the Defendant's Limitations on Raising Defenses provisions violate secti on N.J.S.A. 56: 12-15 by lim iting consumers' rights to raise def enses in lawsuits a rising from the lea se agreement to one yea r from the date of the occurrence giving rise to the claim.

The Limitations on Raising Defenses Clauses are only present in the third group of form lease agreements used from 2011-2014 and provide as follows:

> Any claim, demand, or right of Occupa nt, and any defense to a suit against Occupant, that arises o ut of this L ease/Rental Agreem ent, or the s torage of property hereunder (including, without limitation, claims for loss or damage to stored property) shall be barred unless Occupant commences an action (or, in the case of a defense, interposes su ch defense in a legal proceeding ) within twelve (12) months after the date of the act, om ission, inaction or other event that gave rise to such claim, demand, right or defense.

*Statement of Facts* ¶¶ 34, 35.

Courts have held that the unreasonable time limits contained in a provision of a consumer contract is a violation of the TC CWNA. With regard to th e time limits contained in Paragraph 4 of the Plain tiff's Lease Agreem ent, this Court held that the lim its were "overbro ad and would violate a clearly established le gal right of a consum er" and P ublic S torage's responsibilities under both federal and state law, explaining as follows:

> The Federal Rules of Civil P rocedure and the New Jersey Court Rules clearly establish legal rights and re sponsibilities of litigants and dictate the tim ing to interpose or waive defenses. These rule s continue to govern civil litigation even beyond 12 months from the incident gi ving rise to the cause of action or the defense. An action might not even be brought within one year of "the date of the act, om ission, inaction or other event that gave ri se to such . . . defense," (Lease Agreem ent ¶ 4), a nd thus this provision, on its face, would appear to block the right to raise de fenses beyond 12 months. It is further plausible th at a com plaint filed within one yea r of the ac t giving r ise to the cause of action or defen se could be amended multiple tim es, and, after one

26

year, defenses to the am ended complaint would appear to be barred by the
limitation provision.

*Martinez-Santiago*, 38 F. Supp. 3d at 510.

The court rules establishing Plaintiff and Clas s Members' legal rights and responsibilities
as litigants were ef fective since before the Class Period.  T he Federal Rules of Civil Pro cedure
12 governs the am ount of time a civil litigant has to  interpose or waive af firmative defenses to a
claim in federal court.  *See* Fed. R. Civ. P. 12(a), (b), (h).  Fe d. R. Civ. P. 12 has been effective
since 1948, and while amended since then, was not amended during the Class Period with regard
to the responsibilities w ith interposing or waiving of defens es.  *See* Fed. R. Civ. P. 12 historical
data, Bell Cert., Ex. X.  Si milarly, the Ne w Jersey Court Rules, R. 4:6-1 and 4:6-7  govern the
amount of tim e a civil litigant has  to interpose or waive affirm ative defenses to a claim  in Ne w
Jersey state court.  The New Jersey Court Rules  at issue have been in place since 1977 and were
last amended (to merely correct a reference) in 2006.  *See* R. 4:6-1 and 4:6-7 historical data, Bell
Cert., Ex. Y.

Because these litigation  rights  are clearly estab lished well b efore the start of the Class
Period, Defendant's limitations on  raising defenses, which purport to bar Class m  embers from
asserting valid defense despite bein g allowed to assert such defens es under either the Federal or
State court rules, these provisions violate the TCCWNA.

The standard for determining whether a cont ract provision limiting the time" parties may
asserts claims is whether th e clause is "reasonable."  *Eagle Fire Prot. Corp. v. First Indem. Of
Am. Ins. Co.* , 145 N.J. 345, 354 (1996).  In     discussing this standard  the court noted "'[t]he
boundaries of what is reas onable under the general rule require  that the claim ant have sufficient
opportunity to investigate  and file an action, that  the time not be so short  as to work a practical
abrogation of the right of action, and that the ac tion not be barred before the loss or dam age can

27

be ascertained." *Id.* at 359 (quoting *Camelot Excavating Co. Inc. v. St. Paul Fire and Marine Insurance Co.*, 410 Mich. 118, 301 N.W.2d 275, 277 (Mich. 1981))(emphasis added).

The time limitation in paragraph 4 of Defendant's Limitations on Raising Defenses purports to prevent consumers from asserting defenses to claims brought against them by Public Storage. In effect, this means that defenses validly available to consumers under the contract are barred before the necessity of those defenses could be ascertained in any case where Defendant sued the consumer more than one year after the contract was signed. Such a clause simply cannot be considered reasonable, particularly in light of the fact that Public Storage has sued consumers, like the Plaintiff under the indemnity clause and has tried to defeat Plaintiff's statutory claims that the time limitations provisions is unreasonable and unenforceable.

Accordingly, the Class members are entitled to summary judgment on this claim.

### 4. The Form Lease Agreements' Lack of Specificity Violates TCCWNA

The evidence and law demonstrate that the fourth Class claim, the Defendant's form lease agreements lack of specificity violate N.J.S.A. 56:12-16 by failing to list the specific provisions in the contract that are unenforceable under New Jersey law.

N.J.S.A. 56:12-16 provides as follows:

> No consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or in applicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey[.]

N.J.S.A. 56:12-16. The New Jersey Supreme Court has held that Section 56:12-16 means "a contract or notice cannot simply state in a general, nonparticularized fashion that some of the provisions of the contract or notice may be void, inapplicable, or unenforceable in some states." *Shelton v. Restaurant.com, Inc.* 214 N.J. 419, 428 (2013).

All the lack of specificity provisions in the form lease agreements used by Public Storage

during the Class Period violate N.J.S.A. 56:12-16 because, as this Court held:

> The Court also disagrees with Defendant that the savings clause here does not
> use the magic words of *N.J.S.A.* 56:12-16. The provision in the lease
> agreement plainly communicates that some terms of the agreement may be
> invalid or prohibited in the state in which the premises are located, in which
> case the enforceable provisions of the agreement will remain in force.
> Although Defendant is technically correct that the language does not expressly
> state, in a simple, declarative sentence, that some provisions may be invalid
> under state law, the savings clause necessarily implies that assertion by
> describing the consequences of that reality. Defendant cannot escape the
> dictates of *N.J.S.A.* 56:12-16 by drafting a conditional sentence rather than a
> declarative one about the validity or enforceability of certain terms and
> proceeding directly to the implications of that circumstance. *See Vaz v. Sweet
> Ventures, Inc.*, No. UNN-L-004619-10, 2011 N.J. Super. Unpub. LEXIS 3189
> (Super. Ct. Law Div. July 14, 2011) (denying a motion to dismiss a claim
> based on *N.J.S.A.* 56:12-16 because the contract contained an unenforceable
> limitation on the defendant's liability and did not state which provisions are or
> are not void).

> If *N.J.S.A.* 56:12-16 means anything, it must mean that the lease agreement
> needs to specify which provisions are unenforceable under New Jersey law.
> Because Plaintiff alleges that a provision of the lease agreement is
> unenforceable under the TCCWNA -- as explained above, Plaintiff states a
> claim that a provision of the agreement violates federal and/or state law --
> Plaintiff also has stated a claim under *N.J.S.A.* 56:12-16 in the absence of any
> indication of which provisions are enforceable and which are not under New
> Jersey law.

*Martinez-Santiago v. Public Storage*, 2014 U.S. Dist LEXIS 112710, *25-26 (D.N.J. 2014); *see

also Gomes v. Extra Space Storage, Inc.*, 2015 U.S. Dist. LEXIS 41512, *20 (D.N.J. 2015).

All the lack of specificity clauses contained in all the form lease agreements used during

the Class Period violate N.J.S.A. 56:12-16. First, like with the indemnity and exculpatory

clauses, all the 2011-2014 form lease agreements contain lack of specificity language identical to

that in Plaintiff's agreement (*Statement of Facts* ¶¶ 36, 39) and accordingly, violate the

TCCWNA provision for the reasons set forth by this Court, *supra*:

> Lease/Rental Agreements shall be governed and construed in accordance with the laws of the state in which the Premises are located. If any provision of this Lease/Rental Agreement shall be invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement.

*Id.* ¶ 39. The 2007 and 2008 form lease agreements contained a similar lease provision:

> This Rental Agreement shall be governed by New Jersey law. If any part of this Rental Agreement is declared invalid, the rest of the Rental Agreement shall remain in effect. If any part of the Rental Agreement is inconsistent with New Jersey law, the applicable provisions of New Jersey law shall be considered to be substituted for the inconsistent provisions.

*Id.* ¶ 37. While the form agreement in use in 2007 and 2008 does not use the same language as the 2011 agreement, it violates the TCCWNA in the same way by failing to indicate which portions of the contract are invalid or inapplicable within the State of New Jersey. The 2009 and 2010 lease agreements provided in relevant part:

> This Lease/Rental Agreement shall be interpreted according to the laws of the state of where the Property is located. If any provision is not enforceable in that state, the balance of the agreement will be enforced as if the unenforceable provision was not part of the Lease/Rental Agreement.

*Id.* ¶ 38.

   All these provisions violate N.J.S.A. 56:12-16 because they lack the specificity or use of the "magic words" of 56:12-16 and accordingly are a *per se* violation of the TCCWNA. *Gomes*, at *20 ("three clauses are unenforceable in New Jersey, and they do not contain N.J.S.A. 56:12-16's "magic words."). Accordingly, the Class is entitled to summary judgment on this claim.

30

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfu lly reque sts that this Court, pursua nt to

Fed. R. Civ. P. 56, grant this m otion for partial su mmary judgment in its en tirety, together with

such other and further relief as this Court may deem just and proper.

Dated: June 10, 2016     Respectfully                          submitted,

LOCKS LAW FIRM, LLC


  s/ Andrew P. Bell

Michael                         A. Galpern, Esq.
Andrew                          P. Bell, Esq.
                        James A. Barry, Esq.
800                         N. Kings Highway
Cherry                          Hill, NJ 08034
Tel.:                        (856) 663-8200
Andrew P. Bell
James A. Barry

*On the Brief*
  Charles                       N. Riley, Esq.
  LAW                         OFFICE OF CHARLES N. RILEY, LLC
  900                        N. Kings Highway, Suite 308
  Cherry                         Hill, New Jersey 08034

*Attorneys for Plaintiff and the Class*

31