IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JACKELINE MARTINEZ-SANTIAGO,
on behalf of herself and other
persons similarly situated,

       Plaintiff,

   v.

PUBLIC STORAGE,

       Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 14-cv-302 (JBS-AMD)

**OPINION**

APPEARANCES:

Michael A. Galpern, Esq.
Andrew P. Bell, Esq.
James A. Barry, Esq.
LOCKS LAW FIRM, LLC
801 N. Kings Highway
Cherry Hill, NJ 08034
    -and-
Charles N. Riley, Esq.
LAW OFFICES OF CHARLES N. RILEY, LLC
900 N. Kings Highway, Suite 308
Cherry Hill, NJ 08034
    Attorneys for the Plaintiff

William Patrick Reiley, Esq.
Casey Gene Watkins, Esq.
BALLARD SPAHR, LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
    -and-
John Keker, Esq. (pro hac vice)
Reid P. Mullen, Esq. (pro hac vice)
Simona A. Agnolucci, Esq. (pro hac vice)
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
    -and-

Lauren R. Goldman, Esq. (pro hac vice)
MAYER BROWN LLP
1221 Avenue of Americas
New York, New York 10020
    Attorneys for Defendant

**SIMANDLE**, District Judge:

## I.    INTRODUCTION

This is a certified class action lawsuit concerning alleged violations of New Jersey's Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J.S.A. 56:12-15 et seq. Plaintiff Jackeline Martinez-Santiago (hereinafter, "Plaintiff" or "Martinez-Santiago"), on behalf of herself and all similarly situated individuals, generally alleges that Defendant Public Storage (hereinafter, "Defendant") violated TCCWNA with respect to four provisions within the rental agreements that were previously used in its lease of private storage spaces to consumers in New Jersey. The class, as certified, consists of approximately 160,000 members defined as follows:

> All natural persons who since September 7, 2007 entered into lease agreements with Defendant in the State of New Jersey. Excluded from the Cass are Defendant, each of its parents, subsidiaries, authorized distributors and affiliates, and its legal representatives, officers, board members and the heirs, successors, and assigns of any excluded person.

Martinez-Santiago v. Pub. Storage, 312 F.R.D. 380, 386 (D.N.J. 2015). Plaintiff seeks at least the minimum $100 statutory penalty under TCCWNA for each class member. See N.J.S.A. § 56:12-17.

Currently pending before the Court are Defendant's motions to decertify the class [Docket Item 206] and for summary judgment [Docket Item 182], as well as Plaintiff's cross-motion for partial summary judgment [Docket Item 187] and motion to preclude testimony of Ronald Schaible [Docket Item 184.] The Court heard oral argument on these motions on September 6, 2017. [Docket Item 244.] Shortly thereafter, however, the Court was persuaded to temporarily stay this action pending judgment of the Third Circuit in two consolidated TCCWNA consumer contract cases, Spade v. Select Comfort Corp., No. 16-1558 (3d Cir.) and Wenger v. Bob's Discount Furniture, No.16-1558 (3d Cir.), wherein the Third Circuit certified the following question of state law to the New Jersey Supreme Court: "Is a consumer who receives a contract that does not comply with the Furniture Delivery Regulations, but has not suffered any adverse consequences from the noncompliance, an 'aggrieved consumer' under the TCCWNA?" The New Jersey Supreme Court has since answered that question with a resounding "no," holding that "[i]n the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is not an 'aggrieved consumer' for purposes of the TCCWNA." Spade v. Select Comfort Corp., 181 A.3d 969, 978-981 (N.J. 2018).

The principal issues to be determined at this stage are whether Plaintiff and this class can satisfy Article III's standing

requirements and, if so, whether the class should remain certified following the New Jersey Supreme Court's decision in Spade. For reasons discussed below, the Court concludes that named Plaintiff, who undoubtedly suffered a "concrete" injury, has standing under Article III to bring suit on behalf of absent class members, but nevertheless finds that the certified class no longer satisfies the requirements of Rule 23, FED. R. CIV. P., in light of the New Jersey Supreme Court's holding in Spade which, when applied here, determines that at least 99.98% of the class will be unable to state a TCCWNA claim, as a matter of New Jersey law. Accordingly, the Court will grant Defendant's motion for decertification and dismiss the remaining motions without prejudice because the entire basis and premise of this case has essentially disappeared.

## II. FACTUAL BACKGROUND AND PROCEDURAL BACKGROUND

The Court incorporates by reference the factual background and procedural history of this case as described in its earlier opinions, including Martinez-Santiago v. Pub. Storage, 38 F. Supp. 3d 500 (D.N.J. 2014) and Martinez-Santiago v. Pub. Storage, 312 F.R.D. 380 (D.N.J. 2015), and recounts only those facts necessary for resolution of the pending motions.

Ms. Martinez-Santiago, a resident of New Jersey at all relevant times, entered into a month-to-month rental agreement with Defendant for a storage space located in Sicklerville, New Jersey on February 7, 2012. [Docket Item 182-9 at ¶¶ 5 & 7.] She

listed her boyfriend, Mr. Orlando Colon, as an "Alternate Contact" on her lease agreement. [Id. at ¶ 8.] Mr. Colon subsequently injured himself after he slipped on ice in front of Plaintiff's storage unit [id. at ¶ 9], and he sued Defendant for his injuries in New Jersey Superior Court, alleging negligence. [Docket Item 188-1 at ¶ 13.]

In the Superior Court action, Defendant filed an amended answer and third-party complaint naming Ms. Martinez-Santiago as a third-party defendant in Colon's lawsuit. [Id. at ¶ 14.] Defendant sought indemnification from Martinez-Santiago because of a provision in the storage facility lease agreement which required Martinez-Santiago to indemnify Defendant from any loss incurred by Defendant arising out of Martinez-Santiago's use of the facility [id. at ¶ 16], including "claims of injury or loss by Occupant's visitors or invitees." [Docket Item 182-9 at ¶ 26.] Ultimately, Defendant settled Colon's suit and voluntarily dismissed the third-party complaint against Martinez-Santiago. [Id. at ¶¶ 16 & 18] On December 3, 2013, Martinez-Santiago filed this putative class-action in the Superior Court of New Jersey, Camden County [id. at ¶ 19], and Defendants removed the action to this Court. [Docket Item 1.]

At issue in this case are four provisions that were in Defendant's rental agreement between September 2007 and October 2014:

- Owner and Owner's Agents will have no responsibility to Occupant or to any other person for any loss, liability, claim, expense, damage to property or injury to persons ("Loss") from any cause, including without limitation, Owner's and Owner's Agents active or passive acts, omissions, negligence or conversion, unless the Loss is directly caused by Owner's fraud, willful injury or willful violation of law ("Exculpatory Clause");

- Occupant shall indemnify and hold Owner and Owner's Agents harmless from any loss incurred by Owner and Owner's Agents in any way arising out of Occupant's use of the Premises or the Property including, but not limited to claims of injury or loss by Occupant's visitors or invitees ("Indemnity Clause");

- Any claim, demand, or right of Occupant, and any defense to a suit against Occupant, that arises out of this Lease/Rental Agreement, or the storage of property hereunder (including, without limitation, claims for loss or damage to stored property) shall be barred unless Occupant commences an action (or, in the case of a defense, interposes such defense in a legal proceeding) within twelve (12) months after the date of the act, omission, inaction or other event that gave rise to such claim, demand, right or defense ("Limitations Clause");

- This Lease/Rental Agreement shall be governed and construed in accordance with the laws of the state in which the Premises are located. If any provision of this Lease/Rental Agreement shall be invalid or prohibited under such law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Lease/Rental Agreement ("Severability Clause").

[Docket Item 187-8.] Plaintiff argues that each provision violates TCCWNA, which makes it unlawful for a lessor to offer or enter into a written contract that "includes any provision that violates any clearly established legal right of a consumer or responsibility

of a . . . lessor," as established by state or federal law at the time the contract is signed. N.J.S.A. § 56:12-15.[1]

For the reasons explained in the opinion published on November 17, 2015, the Court granted class certification pursuant to Rule 23(b)(3), FED. R. CIV. P., to a class defined as all individuals since September 24, 2007 and until October 21, 2014 who signed a storage lease agreement with Public Storage. Martinez-Santiago, 312 F.R.D. at 394. Subsequent discovery process revealed that, unlike the named Plaintiff, the vast majority of class members apparently cannot claim to have suffered any actual harm or damages from receiving the allegedly-TCCWNA-violative provisions of the lease agreements they signed. [Docket Item 206-1 at 7-8.] In fact, after extensive discovery, the parties have identified only 29 individuals (.02% of the current class) who may be able to claim they have suffered harm from the application of one or more of the subject clauses in their lease storage agreements. [Docket Item 279-1.]

In due course, Defendant moved for summary judgment [Docket Item 182] and Plaintiff filed a cross-motion for partial summary judgment [Docket Item 187] centering on issues of whether the four relevant provisions in the lease agreements violated 56:12-15 and

---

[1]     In 2014, this Court held that Plaintiff stated a claim that the Indemnity Clause is unenforceable as against her. Martinez-Santiago, 38 F. Supp. 3d at 516-17.

56:12-16 of TCCWNA. Plaintiff also filed a motion to preclude the testimony of Ronald Schaible. [Docket Item 184.] Thereafter, Defendant moved to decertify the class in light of the U.S. Supreme Court's then-recent decision in Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016). [Docket Item 206.] These four motions were fully briefed, and the Court heard oral argument. [Docket Item 249.]

As noted, this Court then awaited the New Jersey Supreme Court's decision in the consolidated cases of Spade v. Select Comfort Corp., No. 16-1558 (3d Cir.), and Wenger v. Bob's Discount Furniture, LLC, No. 16-1572 (3d Cir.), upon the certified question: "Is a consumer who receives a contract that does not comply with the Furniture Delivery Regulations, but has not suffered any adverse consequences from the noncompliance, an 'aggrieved consumer' under the TCCWNA?" [Docket Item 256 at 4.] As described in more detail below, the New Jersey Supreme Court answered that question in the negative. Spade, 181 A.3d at 978-981. With the Court's permission [Docket Item 262], the parties filed supplemental briefs addressing the impact of Spade on the pending motions [Docket Items 265, 266, 267 & 268], which the Court discusses in Section III.B, infra.

On March 6, 2019, the Court notified the parties, pursuant to Rule 56(f)(2), FED. R. CIV. P., that it was considering granting summary judgment on a ground not originally squarely raised by

Defendant[2] - that 99.98% of class members who are not "aggrieved consumers" as defined in Spade cannot prevail on the merits of their TCCWNA claims - and permitted the parties to file supplemental briefs "specifically addressing which class members, if any, 'suffered adverse consequences as a result of' the form leases they entered into with Defendant sufficient to withstand summary judgment." [Docket Item 272 at 2] (quoting Spade, 232 N.J. at 524). Plaintiff filed a supplemental brief [Docket Items 273 & 274], and Defendant filed opposition preferring to emphasize its arguments for lack of Article III standing and for decertification, rather than summary judgment. [Docket Items 278 & 279.]

All pending matters are now fully briefed and ripe for disposition.

## III. DISCUSSION

### A.    Article III Standing

The Court first addresses standing under Article III of the U.S. Constitution, as it is well settled that this is a "threshold" issue. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990). Because Plaintiff, as the class representative, has suffered a "concrete" injury, the requirements of Article III are satisfied

---

[2]    This basis for summary judgment had been discussed at the September 6, 2017 hearing [see Docket Item 249 at 16-24] and alluded to in footnotes to Defendant's briefing. [See Docket Items 265 at 10 n.5 & 267 & 2 n.1.]

and the Court need not, and therefore does not, decide whether each absent class member has Article III standing.

In order to establish that it has standing under Article III, a plaintiff must demonstrate: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." Finkelman v. Nat'l Football League, 810 F.3d 187, 193 (3d Cir. 2016) (internal quotations omitted). These elements of constitutional standing may be referred to as injury (or injury-in-fact), traceability, and redressability, respectively. See Toll Bros., Inc. v. Township of Readington, 555 F.3d 131, 137-42 (3d Cir. 2009).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)); see also In re Horizon Healthcare Serv. Inc. Data Breach Litig., 846 F.3d 625, 638 (3d Cir. 2017) ("In the absence of any indication to the contrary, we understand that the Spokeo Court meant to reiterate traditional notions of standing, rather than erect any new barriers that might prevent Congress from identifying new causes of action though they may be based on intangible harms.").

In _Neale_, the Third Circuit stated: "In the context of a class action, Article III must be satisfied 'by at least one named plaintiff.'" _Neale v. Volvo Cars of N. Am._, 794 F.3d 353, 359 (3d Cir. 2015) (quoting _McNair v. Synapse Group Inc._, 672 F.3d 213, 223 (3d Cir. 2012)). "[A]bsentee class members are not required to make a [showing of Article III standing] because once the named parties have demonstrated that they are properly before the court, the issue becomes one of compliance with the provisions or Rule 23, not one of Article III standing." _Neale_, 794 F.3d at 361. Thus, the _Neale_ Court "squarely h[e]ld that unnamed, putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class." _Id._ at 362. If there is a question of Article III standing of absent class members, in other words, the issue is to be addressed in the determination of class certification (or here, decertification) under Rule 23.

Defendant argues that this Court should not apply _Neale_ because that case pre-dated _Spokeo_ and/or was wrongly decided. [Docket Item 206-1 at 18-28.] But as the Third Circuit recently reiterated in a post-_Spokeo_ decision, _Neale_'s holding continues to apply in the circumstances presented in this case:

> In the class action context, our standing inquiry focuses solely on the class representative(s). As we squarely held in _Neale_ . . . , putative class members

need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class.

Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 478 (3d Cir. 2018) (internal citation and quotation marks omitted); see also Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1049 (2016) (declining to address whether a class may be certified if it contains "members who were not injured and have no legal right to any damages"). This Court is bound to apply the law as the Third Circuit has determined.

Defendant has, as it must, conceded that Martinez-Santiago, the named Plaintiff and sole class representative, has standing under Article III because her injuries, including Defendant's invocation of the Indemnity Clause against her, are sufficiently "concrete." (See, e.g., Oral Arg. Tr. at 7:17-8:1) (Ms. Goldman: "And in the post Spokeo time frame . . . there has been an unbroken line of cases . . . all holding that a plaintiff cannot get into federal court on a TCCWNA claim unless she alleges that she has a real dispute with the company that was affected by those contract terms." The Court: "Isn't that what this plaintiff Martinez-Santiago has been able to allege?" Ms. Goldman: "Absolutely, your Honor, and she has standing.").

Given the precedents described above, this Court is hard-pressed to see how the presence of class members who allegedly

lack Article III standing (even if they greatly outnumber those who do) renders this action neither a "case" nor "controversy" within the meaning of Article III, § 2 of the U.S. Constitution, where the named Plaintiff, Martinez-Santiago, undisputedly has Article III standing. As the Third Circuit has made clear, "once the named parties have demonstrated that they are properly before the court, the issue becomes one of compliance with the provisions of Rule 23, not one of Article III standing." Neale, 794 F.3d at 361. Therefore, the Court next considers whether, in light of Spokeo and Spade, the class still satisfies Rule 23's requirements and should remain certified.

### B. Defendant's Motion to Decertify the Class

Upon careful review of the evidentiary record and recent case law developments, the Court has determined that, in light of the New Jersey Supreme Court's decision in Spade, the certified class no longer satisfies Rule 23's requirements. Accordingly, the class will, as it must, be decertified.

### 1. The Rule 23 Factors

Class actions constitute an exception to the "usual rule" that litigation can be "conducted by and on behalf of the individual named parties only," Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590 (3d Cir. 2012) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011)), and federal class actions are governed by FED. R. CIV. P. 23.

13

Rule 23(a) contains four threshold requirements applicable to all class actions, and it is the plaintiff's burden to establish each element by a preponderance of the evidence. Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). To that end, the plaintiff must demonstrate:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 209 n.6 (3d Cir. 2008) (citing Fed. R. Civ. P. 23(a)).

If these requirements are met, the class certification analysis proceeds to the type of class; the Court certified this class under Rule 23(b)(3). In addition to the four Rule 23(a) prerequisites previously listed, Rule 23(b)(3) requires that: "(i) common questions of law or fact predominate [predominance], and (ii) the class action is the superior method for adjudication [superiority]." Marcus, 687 F.3d at 591 (citing Fed. R. Civ. P. 23(b)(3)). A third and final "essential prerequisite" to class certification, "at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria [ascertainability]." Marcus, 687 F.3d at 592-93.

In sum, there are seven requirements that a plaintiff must satisfy to certify, or maintain certification of, a Rule 23(b)(3) class: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; (6) superiority; and (7) ascertainaibility.

## 2. Class Decertification Standard

"An order that grants or denies class certification may be altered or amended before final judgment." FED. R. CIV. P. 23(c)(1)(C). "Pursuant to this rule, district courts may decertify a class where appropriate after the case develops." Bayshore Ford Truck v. Ford Motor Co., 2010 WL 415329, at *2 (D.N.J. Jan. 29, 2010) (citing Barnes v. Am. Tobacco Co., Ins., 161 F.3d 127, 140 (3d Cir. 1998) ("Under Rule 23(c)(1), District Courts are required to reassess their class rulings as the case develops.")); see also Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 171 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in litigation."). "If, upon considering the record, the court finds that the criteria for and goals of class certification are no longer being met, [a] motion for class decertification should be granted." Barkouras v. Hecker, 2007 WL 4545896, at *1 (D.N.J. Dec. 19, 2007) (internal citation and quotation marks omitted). Decertification is particularly warranted where "[c]hanges in the substantive or procedural law," Alberton v. Commonwealth Land Title Ins. Co., 299

F.R.D. 109, 113 (E.D. Pa. 2014), or "subsequent facts call into question whether continued class action treatment is proper," Bayshore Ford Truck v. Ford Motor Co., 2010 WL 415329, at *2 (D.N.J. Jan. 29, 2010). A new controlling determination of applicable state law by the state's highest court, as in this circumstance, presents an obvious occasion to reexamine certification of the class under Rule 23(c)(1)(C).

### 3. Parties' Arguments

In its initial motion to decertify the class [Docket Item 206], Defendant argued that this class action should be decertified because, once the U.S. Supreme Court decided Spokeo, it apparently became clear that 99.98% of the class lack Article III standing and, according to Defendant, Rule 23's requirements of "typicality" and "superiority" are no longer met if the vast majority of absent class members suffered no concrete injury. [Docket Item 206-1 at 18-38.] In response, Plaintiff argued that, because all class members suffered an "informational injury," they each have Article III standing under Spokeo, and because Defendant's Rule 23 arguments lack merit, the class should remain certified. [Docket Item 213-6 at 17-34.]

After Defendant's motion to decertify was fully briefed and oral argument was held, the Court stayed this action for the purpose of having the benefit of the New Jersey Supreme Court's decision in Spade. [Docket Item 256.] As the Court then-noted:

16

> It is beyond question that the determination of [Spade]
> will materially affect the determination of several
> questions of law presented in the motions presently
> before the Court, and that, as a result, each motion
> currently pending before the Court would be affected by
> the court's decision in that case.

[Id. at ¶ 10.] This certainly proved to be the case, as discussed in the next Section.

Defendant subsequently filed a supplemental brief in support of its motion for decertification [Docket Item 265], while Plaintiff filed a brief in opposition to Defendant's supplemental brief. [Docket Item 268.] Defendant generally argues that Spade requires decertification because: (1) under Spade, TCCWNA's injury requirement is inherently individualized and, therefore, defeats Rule 23(b)(3) predominance; and (2) Martinez-Santiago is not a typical class representative since she is actually an "aggrieved consumer" under TCCWNA, as defined in Spade, while 99.98% of the absent class members are not.[3] [Docket Item 265 at 9-14.] Plaintiff, meanwhile, argues that decertification is not warranted because, according to Plaintiff, the definition of an "aggrieved

---

[3]    The Court notes that Defendant has filed, under seal, a Declaration of Nathaniel A. Vitan, which details with specificity, how Defendant identified the approximately .02% of class members who may have made a formal or informal claim against Defendant regarding one of the four Clauses at issue in this case. [Docket Item 279-1.] Despite the Court's invitation to provide her own evidence addressing which class members, if any, "suffered adverse consequences as a result of" the form leases they entered into with Defendant [Docket Item 272 at 2] (quoting Spade, 232 N.J. at 524), Plaintiff has provided no such evidence.

consumer" set forth in Spade is "broad" and all class members suffered "forms of harm" or "adverse consequences" that make them "aggrieved consumers." [Docket Item 268 at 7-14.]

      4.    The New Jersey Supreme Court's Decision in Spade and its Progeny

In answering the Third Circuit's question, above, in the negative, a unanimous New Jersey Supreme Court first determined that "aggrieved consumer," as that term is used in TCWNNA, "denotes a consumer who has suffered some form of harm as a result of defendant's conduct." Spade, 181 A.3d at 980. Such harm may extend beyond monetary damages, but to qualify as an "aggrieved consumer," a plaintiff must put forth some "evidence that [she] suffered **adverse consequences as a result of** the defendant's regulatory violation." Id. at 981 (emphasis added). The New Jersey Supreme Court gave the following example and guidance:

> If, for example, a furniture seller fails to timely deliver a consumer's furniture, and the consumer would have sought a refund had he or she not been deterred by the "no refunds" language prohibited by N.J.A.C. 13:45A-5.3, that consumer may be an "aggrieved consumer" entitled to a civil penalty under N.J.S.A. 56:12-17. If an untimely delivery and misleading "no refunds" language leave a consumer without furniture needed for a family gathering, the consumer may be an "aggrieved consumer" for purposes of N.J.S.A. 56:12-17. Proof of harm resulting from contract language prohibited by N.J.S.A. 56:12-15 may warrant a civil penalty under N.J.S.A. 56:12-17, even if the harm is not compensable by damages.
>
> In the absence of evidence that the consumer suffered adverse consequences as a result of the defendant's regulatory violation, a consumer is not an "aggrieved

18

consumer" for purposes of the TCCWNA. In the setting of
these appeals, if a consumer has entered into a sales
contract containing a provision that violated N.J.A.C.
13:45A-5.3, but his or her furniture was delivered
conforming and on schedule, and he or she has incurred
no monetary damages or adverse consequences, that
consumer has suffered no harm. Such a consumer is not an
"aggrieved consumer" under N.J.S.A. 56:12-17.

Id. Clearly then, by including the term "aggrieved consumer" in
the statute, the New Jersey Legislature elevated the type of
"injury" a TCCWNA plaintiff must suffer above that which Article
III of the U.S. Constitution requires for standing.

Several courts have since held that the New Jersey Supreme
Court's decision in Spade forecloses a plaintiff's TCCWNA claim
where there was insufficient evidence that the plaintiff "suffered
adverse consequences as a result of" the defendant's conduct. See
Truglio v. Planet Fitness, Inc., 2018 WL 6716080, at *4 (D.N.J.
Dec. 21, 2018) (dismissing plaintiff's TCCWNA claims where only
alleged harm was having entered into a gym membership contract
containing an allegedly unlawful cancellation provision and where
it was undisputed that plaintiff had not suffered any monetary
harm); Patterson v. Forever 21, Inc., 2018 WL 5313920, at *5
(D.N.J. Oct. 26, 2018) (dismissing plaintiff's and proposed class
members' TCCWNA claims where only harm alleged was having "entered
into a sales contract that contained a provision allegedly
violating [TCCWNA], but received timely delivery of conforming
goods"); Wright v. Bank of America, N.A., 194 A.3d 101, 104 (N.J.

19

Super. Ct. App. Div. 2018) (dismissing plaintiff's TCCWNA claims where the only harm alleged was the absence of statutorily-required language on notices of intention to foreclose, a foreclosure action was never commenced against the plaintiff, and no discernable damage was otherwise alleged in the complaint); <u>Sharp v. Sears Home Appliance Showroom, LLC</u>, 2018 WL 3059773, at *5-6 (N.J. Super. Ct. App. Div. June 21, 2018) (dismissing plaintiff's TCCWNA claims where plaintiff did not "show[] that she was in any way aggrieved by the absence of the specific language required" by regulation); <u>see also</u> <u>Luca v. Wyndham Worldwide Corp.</u>, 2019 WL 211098, at *3-5 (W.D. Pa. Jan 16, 2019). So too here.

### 5. Application of the Relevant Rule 23 Factors

As noted above, under Rule 23(c)(1), the Court has an ongoing duty "to reassess [its] class rulings as the case develops." <u>Barnes</u>, 161 F.3d at 140. "The requirements set out in Rule 23 are not mere pleading rules," and "[c]lass certification requires a finding that each of the requirements of Rule 23 has been met." <u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d at 316, 320.

"To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and arguments put forth." <u>Marcus</u>, 687 F.3d at 591 (quoting <u>Falcon</u>, 457 U.S. at 161). In making such a determination, "the court cannot be bashful. It must resolve all factual or legal disputes relevant to class certification, even if they overlap

with the merits—including disputes touching on elements of the cause of action." Marcus, 687 at 591 (internal citation and quotation marks omitted); see also Dukes, 564 U.S. at 351 ("Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped.").

The Court has conducted a "rigorous analysis" of the evidence following the Spade decision and, with the benefit of the parties' supplemental briefing, has determined that the vast majority of class members in this case cannot state a claim under TCCWNA because the evidentiary record does not support the contention that they "suffered [any] harm," "monetary damages," or "adverse consequences" as a result of the allegedly-TCCWNA-violative leases they entered into with Defendant. As a consequence, at least three of the Rule 23 requirements are no longer satisfied – "predominance," "typicality," and "numerosity."

First, regarding "typicality,"[4] it appears that Ms. Martinez-Santiago, who actually had one of the four Clauses enforced against

---

[4]    In initially certifying the class of persons who merely entered into storage lease contracts containing clauses that violated TCCWNA, the Court found as to "typicality":

Martinez-Santiago's claims stem from the same course of conduct that gives rise to the claims of the class. A lease agreement may violate the TCCWNA even if the plaintiff has not suffered any actual damages because a TCCWNA violation arises simply from the language in the contact. See Barrows v. Chase Manhattan Mort. Corp., 465

her, may be among the relatively few customers who "suffered adverse consequences as a result of" the form leases they entered into with Defendant. Thus, Martinez-Santiago did not "suffer the same injury as the class members," Dukes, 564 U.S. at 348-49, and she is, therefore, not typical of the class.

Second, regarding "predominance,"[5] Spade requires that a TCCWNA plaintiff claiming to be an "aggrieved consumer" here show he or she had an actual dispute with Defendant based on an allegedly-unlawful contractual provision of the lease agreement. Accordingly, the questions of fact common to class members no

_____

F. Supp. 2d 347, 362 (D.N.J. 2006). Thus, the claims of the class all stem from the same factual circumstance—entering into a lease for storage space with Public Storage. Like the individual class members who "entered into lease agreements with Defendant in the State of New Jersey" between September 7, 2007 and October 21, 2014, Plaintiff's claims arise from the lease agreement she signed with Defendant on February 7, 2012, for a storage space at Defendant's Sicklerville, New Jersey location. Moreover, the claims are based upon the same legal theory, because each lease agreement contains TCCWNA violations of the kind described above.

Martinez-Santiago, 312 F.R.D. at 391-92. After Spade, that characterization is not sufficient.

[5] Similarly, in initially certifying the class, the Court found that "predominance" was satisfied because "the questions of when the law became clearly established and whether each of the four provisions violated clearly established law for purposes of the TCCWNA are common to all class members, and the proof required is also common to the class." Martinez-Santiago, 312 F.R.D. at 389. That rationale no longer suffices after Spade because mere use of a TCCWNA-offending document does not give rise to a cognizable predominating claim.

longer predominate over those questions affecting only individual members. See Comcast, 569 U.S. at 30.

Third, when the Court certified the class there were approximately 160,000 members and Defendant did not contest "numerosity." Martinez-Santiago, 312 F.R.D. at 388. As noted above, discovery has since revealed there are only 29 individuals who might be able to state a viable TCCWNA claim against Defendant. [Docket Item 279-1.] While there is "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," the Third Circuit has held "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[3][a] (Matthew Bender 3d ed. 1999)). Thus, even if all 29 of these individuals satisfied Rule 23's "typicality" and "predominance" requirements, which the Court seriously doubts, such a class would not satisfy Rule 29's "numerosity" requirement.

For these reasons, the class will be decertified. Plaintiff Jackeline Martinez-Santiago is therefore the sole named Plaintiff.

**IV. CONCLUSION**

For the foregoing reasons, the Court concludes that the certified class no longer satisfies Rule 23's requirements and will grant Defendant's motion to decertify the class. Because the

litigation landscape has changed from some 160,000 members of the class to just one Plaintiff, it would be imprudent to address remaining motions that addressed themselves to a much different set of issues. Accordingly, the remaining motions will be dismissed without prejudice. Counsel shall meet and confer and, within fourteen (14) days, file a joint-proposal regarding how they wish to proceed with the remaining claims of Martinez-Santiago, if any. An accompanying Order will be entered.


**March 29, 2019**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge